**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DEBORAH JONES-MACDONALD, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-cv-2871 |
| | § | |
| RONALDO DELGADO, JR., | § | JURY TRIAL DEMANDED |
| CHARLES RIBBE | § | |
| (in their individual capacities), | § | |
| HARRIS COUNTY, TEXAS, | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT**
**SITTING IN  THE SOUTHERN DISTRICT OF TEXAS:**

Plaintiff Deborah Jones-MacDonald ["Plaintiff"] respectfully comes before this Honorable Court complaining pursuant to 42 U.S.C. § 1983 that Defendants herein acted under color of state law and deprived her of her clearly established constitutional rights to remain free from unreasonable search and seizure, unreasonable use of excessive force, and wrongful arrest. In support thereof, Plaintiff specifically alleges the following:

### I.    <u>SUMMARY</u>

1. Plaintiff was unconstitutionally subjected to unreasonable and excessive force by Harris County Sheriff's Officer Ronaldo Delgado (hereinafter "Delgado").

2. The unreasonable excessive force was recorded on the officers' bodycam videos.

3. Plaintiff was a 65-year-old Black woman at the time of this incident.

4. Delgado used excessive and unreasonable force when he punched her twice in the face, pulled her out of a car by her arms and legs, and grabbed her hair.

5. Plaintiff was unconstitutionally subjected to unreasonable search and seizure by Delgado & Harris County Sheriff's Officer Charles Ribbe (hereinafter "Ribbe").

6. Plaintiff had a right to sit in her car with her hands on the steering wheel.

7. The officers did not have legal authority to be conducting a repossession of the vehicle, the purported reason for this interaction, and caused a breach of the peace with their actions.

8. The officers did not have reasonable suspicion to approach the Plaintiff when they a) approached her in a vehicle, b) grabbed both her hands, and c) illegally tried to pry her fingers form the steering wheel.

9. Plaintiff was unconstitutionally subjected to wrongful arrest by Delgado & Ribbe.

10. The officers lied in their offense reports about the incident.

11. Both officers involved here have a history of abusive and dishonest behavior while employed with the Harris County Sheriff's Office (hereinafter "HCSO").

12. Harris County's lack of discipline of officers and failure to train led to the unconstitutional approach with a lack of reasonable suspicion, excessive use of force, and wrongful arrest of Plaintiff.

13. Defendant Harris County is subject to *Monell* liability herein due to its policy, procedure, custom, practice, or protocol of:
   a. inadequately training, supervising, and/or disciplining its officers concerning legality of repossession of vehicles, constitutionally reasonable suspicion, de-escalation techniques, reasonable use of force techniques, drafting and preparing use of force and other incident reports, and lawful arrests;
   b. shielding its officers from the consequences of illegal and/or improper conduct;
   c. permitting its officers to perform illegal and/or improper conduct; and
   d. ratifying officers' illegal and/or improper conduct.

## II.   NATURE OF THE ACTION

14. This suit arises under the Constitution of the United States (particularly the Fourth and Fourteenth Amendments) and 42 U.S.C. § 1983.

## III.   DEMAND FOR JURY TRIAL

15. Plaintiff respectfully demands a trial by jury.

## IV.   PARTIES

16. Plaintiff Deborah Jones-MacDonald is and was at all time relevant hereto a resident of

Harris County, Texas.

17. Defendant Ronaldo Delgado, an officer with the HCSO, is being sued in his individual capacity and may be served at his place of work at 1200 Baker Street, Houston, Texas 77002 or wherever he may be found.

18. Defendant Charles Ribbe, an officer with the HCSO, is being sued in his individual capacity and may be served at his place of work at 1200 Baker Street, Houston, Texas 77002 or wherever he may be found.

19. Defendant Harris County, is being sued and may be served through County Judge Lina Hidalgo at 1001 Preston, Suite 911, Houston, Texas 77002.

## V.      JURISDICTION AND VENUE

20. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4) because Plaintiff's suit arises under 42 U.S.C. § 1983.

21. Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas, Houston Division.

22. All conditions precedent have been performed or have occurred.

## VI.      SPECIFIC FACTS

23. On August 12, 2021, the Plaintiff dropped her car off at her ex-husband's apartment.

24. He had offered to do her a favor and look at maintenance issues it was having.

25. On the morning of August 13, 2021, a private individual with no court order claimed to be trying to repossess the car at the apartment.

26. He provided no documentation of any kind to justify any repossession claim.

27. Plaintiff did not live at that apartment complex, and her car had no registration or other association with this apartment complex address.

28. As far as Plaintiff and anyone else knew, they were trying to steal her car.

29. He was turned away and asked for verification of a legal right to take the vehicle.

30. The private individual did not obtain a court order, and instead, called the HCSO.

31. The very action of requesting police involvement evidences a breach of peace had occurred, but Delgado and Ribbe decided to take action, anyway.

32. Without a court order or other legal repossession authority, Delgado and Ribbe went to the apartment and placed Plaintiff's ex-husband into custody in handcuffs in the back of a police car.

33. Plaintiff's ex-husband was never accused of or charged with any crime.

34. Delgado and Ribbe instructed a tow vehicle to hook the vehicle up in preparation to be repossessed.

35. Plaintiff arrived at the apartment complex and saw her vehicle and a tow truck.

36. Believing any potential tow to be illegal, Plaintiff got into the driver's seat of her car.

37. Ribbe saw her get in her car, and stated, "Now it's your turn."

38. Ribbe tried to pull the Plaintiff out of her car.

39. At this time, Plaintiff was not committing a crime, was not suspected of a crime, had no reasonable suspicion of committing a crime, yet was being illegally detained.

40. Delgado then approached Plaintiff and Ribbe and started pulling Plaintiff's other arm.

41. Delgado also tried to pry Plaintiff's hands from the steering wheel.

42. Plaintiff then told Delgado and Ribbe to "get off" of her 15 times.

43. Instead of de-escalating, Delgado and Ribbe ignored her requests to get off of her and continued to actively assault her.

44. At this point after the officers showed no signs of stopping their illegal behavior (despite being asked to repeatedly), Plaintiff felt threatened and defended herself by biting Ribbe's hands that he had illegally placed on her elderly Black woman's body.

45. Delgado punched Plaintiff in the face twice.

46. This excessive use of force was recorded on body camera video and a regular HCSO offense report.

47. This excessive use of force was not reported through a use of force report.

4

48. After excessively punching her, Delgado and Ribbe pulled her out of the car and grabbed her by her hair.

49. At no time did Delgado and Ribbe have a warrant to search or seize Plaintiff.

50. At no time did Delgado and Ribbe have consent to search or seize Plaintiff.

51. Delgado and Ribbe did not have probable cause to search or seize Plaintiff.

52. No legal exigent circumstances existed for Delgado and Ribbe to search or seize Plaintiff.

53. Plaintiff tried to receive medical treatment from paramedics, but Delgado and Ribbe turned the paramedics away, refusing them access to Plaintiff, despite her requests for medical care.

54. Delgado and Ribbe illegally arrested her for assaulting a peace officer.

55. Plaintiff was not charged with any other underlying accusation or crime.

56. Plaintiff has no criminal history.

57. For the first time in her 65 years, she was taken to jail – bruised, embarrassed, and beaten.

58. Defendants arrested Plaintiff without probable cause and with disproportionate force.

59. The charge of assaulting a peace officer was dismissed on April 21, 2023.

60. Delgado has a history of abusive and dishonest behavior with the HCSO, including but not limited to: neglecting an inmate as a detention officer; wrongfully assaulting, detaining, and arresting a disabled veteran; and, violating vehicle safety policies in a vehicle pursuit.

61. Plaintiff's injuries from this incident include but are not limited to: damage requiring wrist and knee surgery; torn ligaments and tendons; permanent physical appearance alteration from irreparable facial trauma and nerve damage; limb numbness; lower back disc damage; loss of employment opportunities; psychological damage requiring therapy; post-traumatic stress disorder; mental anguish; emotional distress; fear; embarrassment; humiliation; and, reputational damage.

62. Through their actions, Defendants deeply traumatized Plaintiff that affects every aspect of her life now and ongoing.

63. The policymakers of Harris County knew or should have known of all facts and circumstances giving rise to these claims, at the very least through a demand letter sent on behalf of Plaintiff on June 30, 2023.

64. As of the date of this filing, Plaintiff has received no response to her demand letter.

## VII.    CAUSES OF ACTION

### COUNT 1 – 42 U.S.C. § 1983

### Delgado Violated Plaintiff's Fourth Amendment Rights to be Free from Excessive Force

65. The foregoing paragraphs are incorporated herein as if quoted verbatim.

66. On August 13, 2021, Plaintiff's constitutional right to remain free from the use of unreasonable and/or excessive force against her person by a peace officer acting under color of state law was:

    a.  secured to her by the Fourth Amendment of the United States;

    b.  clearly established within the Southern District of Texas; and

    c.  violated by Delgado.

67. Any and all objectively reasonable peace officer would know:

    a.  punching a 65-year-old woman twice in the face carries the potential for lethal consequences;

    b.  lethal force should only be exercised when objective circumstances surrounding the exercise thereof would lead a reasonable peace officer to believe that such force was warranted; and

    c.  Plaintiff did not present a threat of any kind to anyone.

68. Any reasonable peace officer acting under the clearly established law of the Southern District of Texas and confronting the same or similar facts would know:

    a.  the Fourth Amendment to the United States Constitution prohibits objectively unreasonable uses of force in light of the facts and circumstances;

    b.  said prohibition is clearly established within the Southern District of Texas;

    c.  Plaintiff had not committed an act that would justify Delgado's assault thereon;

    d.  Delgado's punching Plaintiff twice in the face carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and,

    e.  Delgado's actions were clearly unreasonable in light of established law.

69. Delgado's use of force against Plaintiff:

    a.  was plainly incompetent;

    b.  knowingly violated the law;

    c.  intentionally violated the law;

    d.  was objectively unreasonable in light of clearly established law;

    e.  evidences an unreasonable misunderstanding of his powers and responsibilities; and,

    f.  was the moving force behind the deprivation of Plaintiff's civil rights and her injuries.

70. Plaintiff seeks punitive damages against Delgado because he:

    a.  knew at the time that the force he used to subdue Plaintiff was unreasonably excessive;

    b.  acted with conscious indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonably excessive use of force;

    c.  acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

    d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct;

    e.  was grossly negligent through his actions; and/or

    f.  fabricated evidence concerning this incident.

## COUNT 2 – 42 U.S.C. § 1983

## Delgado Violated Plaintiff's Fourth Amendment Rights to be Free from Unreasonable Search and Seizure

71. The foregoing paragraphs are incorporated herein as if quoted verbatim.

72. On August 13, 2021, Plaintiff's constitutional right to remain free from unreasonable search and seizure against her person by a peace officer acting under color of state law was:

    a.  secured to her by the Fourth Amendment of the United States;

    b.  clearly established within the Southern District of Texas; and,

    c.  violated by Delgado.

73. Any and all objectively reasonable peace officer would know:

    a. they need legal authority to repossess vehicles;

    b. they have no right to approach an elderly 65-year-old Black woman without reasonable suspicion of a crime;

    c. they have no right to pull an elderly 65-year-old Black woman's arms;

    d. they have no right to try to pry the fingers of an elderly 65-year-old Black woman off her steering wheel without reasonable suspicion of a crime; and,

    e. Plaintiff did not commit any act giving rise to reasonable suspicion.

74. Any reasonable peace officer acting under the clearly established law of the Southern District of Texas and confronting the same or similar facts would know:

    a. the Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures without consent, probable cause, or exigent circumstances in light of the facts and circumstances;

    b. said prohibition is clearly established within the Southern District of Texas;

    c. Plaintiff had not committed an act that would justify Delgado's warrantless search and seizure thereon;

    d. Delgado's actions against Plaintiff were unreasonable because he did not have consent, probable cause, or exigent circumstances to conduct a warrantless search or seizure in light of the facts and circumstances; and,

    e. Delgado's actions were clearly unreasonable in light of established law.

75. Delgado's illegal approach and search and seizure of Plaintiff:

    a. was plainly incompetent;

    b. knowingly violated the law;

    c. intentionally violated the law;

    d. was objectively unreasonable in light of clearly established law;

    e. evidences an unreasonable misunderstanding of his powers and responsibilities; and,

    f. was the moving force behind the deprivation of Plaintiff's civil rights and her injuries.

76. Plaintiff seeks punitive damages against Delgado because he:

    a. knew at the time that the search and seizure of Plaintiff was unreasonable;

b. acted with conscious, reckless, and/or callous indifference to Plaintiff's federally
protected rights;

c. recklessly trampled on Plaintiff's rights through plainly unlawful conduct;

d. was grossly negligent through his actions; and/or,

e. fabricated evidence concerning this incident.

## COUNT 3 – 42 U.S.C. § 1983

## Ribbe Violated Plaintiff's Fourth Amendment Rights to be Free from Unreasonable Search and Seizure

77. The foregoing paragraphs are incorporated herein as if quoted verbatim.

78. On August 13, 2021, Plaintiff's constitutional right to remain free from unreasonable search
and seizure against her person by a peace officer acting under color of state law was:

a. secured to her by the Fourth Amendment of the United States;

b. clearly established within the Southern District of Texas; and,

c. violated by Ribbe.

79. Any and all objectively reasonable peace officer would know:

a. they need legal authority to repossess vehicles;

b. they have no right to approach an elderly 65-year-old Black woman without
reasonable suspicion of a crime;

c. they have no right to pull an elderly 65-year-old Black woman's arms;

d. they have no right to try to pry the fingers of an elderly 65-year-old Black woman
off her steering wheel without reasonable suspicion of a crime; and,

e. Plaintiff did not commit any act giving rise to reasonable suspicion.

80. Any reasonable peace officer acting under the clearly established law of the Southern
District of Texas and confronting the same or similar facts would know:

a. the Fourth Amendment to the United States Constitution prohibits warrantless
searches and seizures without consent, probable cause, or exigent circumstances in
light of the facts and circumstances;

b. said prohibition is clearly established within the Southern District of Texas;

c. Plaintiff had not committed an act that would justify Ribbe's warrantless search and
seizure thereon;

d. Ribbe's actions against Plaintiff were unreasonable because he did not have

consent, probable cause, or exigent circumstances to conduct a warrantless search or seizure in light of the facts and circumstances; and,

 e.  Ribbe's actions were clearly unreasonable in light of established law.

81. Ribbe's illegal approach and search and seizure of Plaintiff:

 a.  was plainly incompetent;

 b.  knowingly violated the law;

 c.  intentionally violated the law;

 d.  was objectively unreasonable in light of clearly established law;

 e.  evidences an unreasonable misunderstanding of his powers and responsibilities; and,

 f.  was the moving force behind the deprivation of Plaintiff's civil rights and her injuries.

82. Plaintiff seeks punitive damages against Ribbe because he:

 a.  knew at the time that the search and seizure of Plaintiff was unreasonable;

 b.  acted with conscious, reckless, and/or callous indifference to Plaintiff's federally protected rights;

 c.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct;

 d.  was grossly negligent through his actions; and/or

 e.  fabricated evidence concerning this incident.

## COUNT 4 – 42 U.S.C. § 1983

### Delgado violated Plaintiff's constitutional right to be free from wrongful arrests.

83. The foregoing paragraphs are incorporated herein as if quoted verbatim.

84. On or about August 13, 2021, Plaintiff's constitutional right to be free from wrongful arrests by a peace officer acting under color of state law was:

 a.  secured to her by the Fourth Amendment of the United States Constitution;

 b.  clearly established within the Southern District of Texas; and,

 c.  violated by Delgado.

85. Any and all objectively reasonable peace officer would know that:

 a.  they had no legal authority to repossess the vehicle in this case;

 b.  Plaintiff had done nothing to consist of probable cause of a crime;

 c.  Plaintiff had a legal right in her actions;

d. Plaintiff should not have been arrested for Assaulting a Peace Officer.

86. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

 a. the Fourth Amendment to the United States Constitution prohibits the detention of a person in the absence of probable cause;

 b. said prohibition is clearly established within the Southern District of Texas;

 c. Plaintiff had not committed any crime to justify Delgado's arrest of Plaintiff;

 d. there was no probable cause to believe Plaintiff had committed any crime;

 e. the circumstances herein did not generate any objectively reasonable indicia of criminal activity; and,

 f. there was no objective justification behind Delgado's arrest of Plaintiff.

87. Delgado's arrest of Plaintiff:

 a. was plainly incompetent;

 b. knowingly violated the law;

 c. intentionally violated the law;

 d. was the product of unreasonably mistaken beliefs;

 e. was objectively unreasonable in light of clearly established law;

 f. was deliberately indifferent to Plaintiff and her rights;

 g. evidences an unreasonable misunderstanding of his powers and responsibilities; and,

 h. was the moving force behind the deprivation of Plaintiff's civil rights and her injuries.

88. Plaintiff seeks punitive damages against Delgado because he:

 a. knew at the time that the arrest of Plaintiff was without probable cause;

 b. acted with conscious and deliberate indifference to the possibility that Plaintiff would suffer egregious harm from the wrongful arrest;

 c. acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

 d. recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or,

 e. was grossly negligent in his investigation of or reliance on the facts presented herein.

### COUNT 5 – 42 U.S.C. § 1983

### Ribbe violated Plaintiff's constitutional right to be free from wrongful arrests.

11

89. The foregoing paragraphs are incorporated herein as if quoted verbatim.

90. On or about August 13, 2021, Plaintiff's constitutional right to be free from wrongful arrests by a peace officer acting under color of state law was:

   a.  secured to her by the Fourth Amendment of the United States Constitution;

   b.  clearly established within the Southern District of Texas; and,

   c.  violated by Ribbe.

91. Any and all objectively reasonable peace officers would know that:

   a.  they had no legal authority to repossess the vehicle in this case;

   b.  Plaintiff had done nothing to consist of probable cause of a crime;

   c.  Plaintiff had a legal right in her actions;

   d.  Plaintiff's actions of biting Ribbe were in legal self-defense in the face of illegal discharge of unofficial duties; and,

   e.  Plaintiff should not have been arrested for Assaulting a Peace Officer.

92. Any reasonable peace officer acting under clearly established law in the Southern District of Texas and confronting the same or similar facts would know:

   a.  the Fourth Amendment to the United States Constitution prohibits the detention of a person in the absence of probable cause;

   b.  said prohibition is clearly established within the Southern District of Texas;

   c.  Plaintiff had not committed any crime to justify Ribbe's arrest of Plaintiff;

   d.  there was no probable cause to believe Plaintiff had committed any crime;

   e.  the circumstances herein did not generate any objectively reasonable indicia of criminal activity; and,

   f.  there was no objective justification behind Ribbe's arrest of Plaintiff.

93. Ribbe's arrest of Plaintiff:

   a.  was plainly incompetent;

   b.  knowingly violated the law;

   c.  intentionally violated the law;

   d.  was the product of unreasonably mistaken beliefs;

   e.  was objectively unreasonable in light of clearly established law;

   f.  was deliberately indifferent to Plaintiff and her rights;

   g.  evidences an unreasonable misunderstanding of his powers and responsibilities; and,

h. was the moving force behind the deprivation of Plaintiff's civil rights and her injuries.

94. Plaintiff seeks punitive damages against Ribbe because he:

a. knew at the time that the arrest of Plaintiff was without probable cause;

b. acted with conscious and deliberate indifference to the possibility that Plaintiff would suffer egregious harm from the wrongful arrest;

c. acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

d. recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or,

e. was grossly negligent in his investigation of or reliance on the facts presented herein.

### **COUNT 6 – 42 U.S.C. § 1983**

### **Harris County has a policy, procedure, custom, practice, or protocol of inadequately training, supervising, and/or disciplining its officers which was the moving force behind Plaintiff's injuries.**

95. The foregoing paragraphs are incorporated herein as if quoted verbatim.

96. *Training regarding de-escalation techniques and reasonable use of force:*

a. HCSO's use of force policy is inadequate because it arbitrarily allows officers and their supervisors to retroactively determine if force was necessary in a written report without a proper attempt to de-escalate the situation beforehand.

b. Specifically, the policy neglects to define "de-escalation" in their definitions sections, and instead emphasizes terms such as "immediate use of force," and "planned use of force."

c. The policy has a section titled "Cool Down Period," however such a "period" is not defined and is given no details or procedure as to when and how the period may occur.

d. Despite the written language, Delgado's behavior exhibits the fact that it is normal practice of the Defendants to not engage in a cool down period or any kind of de-escalation practices in the event of an altercation with an elderly citizen and Black woman who is no threat.

e. The policy lists "qualifying use of force events," and then states that the list "is not

13

all-inclusive but given for illustrative purposes only," thus allowing officers to independently consider other means of possibly unreasonable force that is not included in the policy.

f.  The policy states that force may be used in "…any other scenario where compliance is required or authorized by HSCO policy," meaning that Defendants were free to subjectively use force when they so decide and without objection to their supervisors, such as the situation involving the Plaintiff.

g.  Delgado's actions evidence his inadequate training, supervision, and/or discipline under Harris County concerning reasonable uses of force and further demonstrates the silent adoption and implementation by its policy makers.

h.  Delgado's actions throughout his encounter with Plaintiff unnecessarily and unreasonably escalated the situation into an unreasonable use of excessive and deadly force.

i.  Despite the lack of language in any of the Defendants' policies, de-escalation techniques are widely accepted and commonly used for officers across the state of Texas.

j.  These techniques not only avoid unnecessary uses of deadly force, but can reverse an increasingly tense situation and decrease the need to use any quantum of force.

k.  Because of the lack of adequate training, Defendant Delgado's actions unreasonably escalated the situation.

l.  Other aggressive actions in his history of abusive behavior, as dictated above, show a policy, procedure, custom, practice, or protocol of inadequate training, supervision, and/or discipline in the use of de-escalation techniques.

m.  Delgado's actions evidence his plainly inadequate training, supervision, and/or discipline by Harris County in the use of de-escalation techniques for officers.

n.  After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

**97. Training regarding elements of assaulting a peace officer charge:**

a.  An assault of a peace officer charge requires that a peace officer was "lawfully discharging an official duty" Tex. Pen. Code § 22.01(b-2).

14

b. The statute does not allow a charge for actions against peace officers who are acting without legal authority – illegally discharging unofficial duties.

c. It was clear that Plaintiff believed the officers to be acting illegally, and in fact, they were.

d. Delgado and Ribbe's actions indicate Harris County's officer training, supervision, and/or discipline stretches the use of this charge beyond a reasonable meaning under the statute.

e. This inadequate training, supervision, and/or discipline results in officers unreasonably deploying deadly and disproportionately injurious force against the People.

f. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

**98. Training regarding preparation, drafting, and/or submission of offense reports:**

a. At this time, it is believed that no use of force report has been provided to Plaintiff or any counsel for Plaintiff.

b. Defendants use of force policy is inadequate due to the lack of guidance in reporting incidents of force used against an elderly citizen and Black woman who is no threat.

c. The policy states that "all employees who observed the use of force shall make a prompt report to their immediate supervisor," and "if the supervisor determines the force used was excessive or unnecessary, they shall prepare a written statement clearly identifying such concerns."

1. Despite this language, the policy fails to ensure the accurate reporting of excessive force, as evidenced by the fact that no Harris County supervisor made any statements that condemned or identified the improper force utilized by Delgado and Ribbe.

2. This supports the argument that Harris County is deliberately indifferent in to the inadequacies of the policy by actively allowing officers to not make reports or make false reports.

d. Discovery will show that Delgado and Ribbe were unreasonably inadequate and/or failed to properly prepare, draft or submit a use of force report.

e. Delgado and Ribbe's actions evidence an unreasonable lack of training,

supervision, and/or discipline by Harris County for its officers concerning the proper preparation, drafting, and/or submission of offense reports.

    f.   Other aggressive actions in Delgado's history of abusive behavior, as dictated above, show a policy, procedure, custom, practice, or protocol of inadequate training, supervision, and/or discipline regarding proper preparation, drafting, and/or submission of use of force and offense reports.

    g.   After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

99. Harris County's training, supervision, and/or discipline is inadequate as it allowed and/or facilitated its officer's fabrication of evidence.

100. Harris County has officially ratified, accepted, and approved Delgado and Ribbe's repeated actions as evidenced by its lack of response to Plaintiff's demand letter, its lack of action regarding this incident, and its lack of action concerning Delgado and Ribbe's aggressive actions in his history of abusive behavior, as dictated above.

101. Harris County's training, supervision, and/or discipline is inadequate as it lacks discipline for officers involved in wrongdoings such as Delgado's and Ribbe's action.

102. Harris County's failures were deliberately indifferent to the People's clearly established rights under the Fourth Amendment to the United States Constitution and were the moving force behind Plaintiff's injuries.

## <u>COUNT 7 – 42 U.S.C. § 1983</u>

### <u>Harris County has a policy, procedure, custom, practice, or protocol of shielding its officers from the consequences of illegal and/or improper conduct.</u>

103. The foregoing paragraphs are incorporated herein as if quoted verbatim.

104. By implementing and enforcing the inadequate policies mentioned above, Harris County is clearly aware of the improper behavior that is permitted under these policies.

105. None of the officers on scene attempted to de-escalate the situation or in the alternative call for the assistance of a de-escalation unit.

106. Additionally, such inadequate policies and improper practices that have clearly failed to prepare officers in handling an elderly citizen and Black woman who is no threat are still being used by the Defendants today.

107. At the date of this filing, it is believed that Delgado and Ribbe are still on-duty serving as peace officers in Harris County.

108. Harris County has been made aware of the truth surrounding the actions of Delgado and Ribbe.

109. Harris County knows, should know, or must know that Delgado and Ribbe fabricated evidence and has a pattern of fabricating evidence.

110. Harris County allowed Delgado and Ribbe to fabricate evidence in order to protect themselves and to permit the county to avoid having a record of their unreasonable conduct.

111. Harris County has failed to discipline or even admit the actions of Delgado and Ribbe were unreasonable.

112. Instead, Harris County ratifies, accepts, and approves the actions of Delgado and Ribbe.

113. Specifically, Harris County failed to respond to Plaintiff's demand letter, evidencing Harris County believes the actions of Delgado and Ribbe were reasonable and that they were free from any wrongdoing.

114. The actions of Delgado and Ribbe were ratified, shielded, and not adequately acted upon in other aggressive actions in the history of abusive behavior, as dictated above.

115. These failures to act show a policy, procedure, custom, practice, or protocol of Harris County shielding its officers from consequences for their unreasonable uses of force.

116. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of shielding its officers from consequences of unconstitutional searches and seizures, unreasonable uses of force, and wrongful arrests.

### **COUNT 8 – 42 U.S.C. § 1983**

### **Harris County has a policy, procedure, custom, practice, or protocol of permitting its officers to perform illegal and/or improper conduct.**

117. The foregoing paragraphs are incorporated herein as if quoted verbatim.

118. Harris County, by enacting and promulgating the above inadequate policies, has implemented a customary practice of allowing unreasonable force to be used against an elderly citizen and Black woman who is no threat, as exhibited by the actions of Delgado and Ribbe.

119. Harris County, by enacting and promulgating the above inadequate policies, has

implemented a customary practice of failing to recognize the rights of an elderly citizen and Black woman who is no threat.

120. Harris County, by enacting and promulgating the above inadequate policies, has implemented a customary practice of accepting false reports that contradict real evidence without any proper supervision.

121. Harris County, by enacting and promulgating the above inadequate policies, has implemented a customary practice of allowing officers who use unnecessary, unreasonable and excessive force to remain on-duty and thus allow for additional people in Harris County to be subject to their abuse.

122. At the date of this filing, it is believed that Delgado and Ribbe are still on-duty serving as peace officers in Harris County.

123. Harris County has been made aware of the truth of the actions of Delgado and Ribbe.

124. The video and other evidence show Delgado's use of deadly and other force was unreasonable, unlawful, wrongful, and grossly inappropriate.

125. Similar and other illegal and improper conduct from other aggressive actions in his history of abusive behavior, as dictated above, show Delgado has a pattern of engaging in such conduct against the People.

126. Harris County has refused to adequately discipline or even admit Delgado's and Ribbe's actions were unreasonable.

127. Instead, Harris County permits its officers to perform illegal and improper conduct such as Delgado's and Ribbe's actions.

128. This failure to act shows a policy, procedure, custom, practice, or protocol of permitting officers to use unjustifiable and unreasonable force without consequence.

129. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of permitting officers to use illegal and improper conduct.

## COUNT 9 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of ratifying officers' illegal and/or improper conduct.

130. The foregoing paragraphs are incorporated herein as if quoted verbatim.

131. Harris County ratifies, accepts, and approves of its officers' illegal and improper conduct

such as the actions of Delgado and Ribbe.

    a. Harris County, by enacting and promulgating the above inadequate policies, has implemented a customary practice of ignoring and failing to recognize the rights of elderly citizens and Black women who are no threat.

    b. Harris County, by enacting and promulgating the above inadequate policies, has implemented a customary practice of accepting false reports that contradict real evidence without proper supervision.

132. This ratification shows a policy, procedure, custom, practice, or protocol of approving officers to use unjustifiable and unreasonable force, commit illegal searches and seizures, and arrest the People illegally.

133. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of ratifying officers' illegal and improper conduct.

## VIII.   **DAMAGES**

134. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries and damages.

135. Plaintiff therefore seeks compensatory damages (including legal fees, lost future earnings, lost wages, and mental and emotional distress), presumed damages, nominal damages, and punitive damages.

## IX.   **ATTORNEY FEES**

136. After prevailing herein, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b).

## X.   **PRAYER**

137. For these reasons, Plaintiff asks for judgment against Defendant for the following:

    (a)     compensatory damages;

    (b)     presumed damages;

    (c)     nominal damages;

    (d)     punitive damages;

    (e)     reasonable attorney fees;

    (f)     costs of suit; and

(g)     all other relief to which Plaintiff shows herself entitled, both at law and in equity.

Respectfully submitted,

By:***/s/ Drew Willey***
      Drew Willey
      SBN: 24093371
      P.O. Box 2813
      Houston, Texas 77252
      713-739-9455 (p)
      713-510-1950 (f)
      drew@law-dw.com
      ATTORNEY FOR PLAINTIFF