# EXHIBIT A



*Department Policy*

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |
| NOTES: | SUPERSEDES: FEBRUARY 19, 2021 | EFFECTIVE DATE: AUGUST 26, 2021 |

**I. Purpose**

This policy provides guidelines on de-escalation and responding to resistance.

The Harris County Sheriff's Office (HCSO) is committed to protecting and preserving life and property without prejudice to anyone. Even so, there are times when our employees are required to use force to protect those we serve, protect themselves, and enforce the law.

No policy can cover every specific scenario our employees might face; therefore, this policy will serve as a guide when circumstances reasonably dictate the use of force. An incident involving an employee's use of force will be objectively judged in light of the specific facts and circumstances of that particular incident.

**II. Definitions**

**Bodily Injury** – Bodily injury means physical pain, illness, or any impairment of physical condition. [*Tex. Pen. Code § 1.07(a) (8)*]

**Deadly Force** – Force intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. [*Tex. Pen. Code § 9.01 (3)*]

**De-escalation** – De-escalation tactics and techniques are actions used by employees, when safe and without compromising law enforcement priorities. They seek to minimize the likelihood of the need to use force prior to or during an incident, and increase the likelihood of voluntary compliance or mitigate the continued use of force.

**Force** – Force is the application of physical techniques or tactics, or use of an object, device, or weapon against another person. It is not force when a subject allows him or herself to be searched, escorted, handcuffed, or restrained.

**Force Option** – Force options are techniques, tools, or weapons that are appropriate and objectively reasonable based on the unlawful conduct or resistance by a subject.

**Objectively Reasonable** – Those actions, based upon the known facts or circumstances at the time, which would normally be expected from a reasonable and prudent employee with similar training and experience under similar circumstances, and do not violate clearly established law.

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

**Serious Bodily Injury** – Bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. [*Tex. Pen. Code § 1.07(a) (46)*]

**Unreasonable Force** – Unreasonable force is unnecessary or excessive force given the totality of the circumstances presented to the employee at the time the force is applied.

### III. Policy

Employees will only use force when it reasonably appears necessary to protect themselves and others, accomplish a legitimate law enforcement purpose, or maintain the security of our detention facilities.

Any use of force must be objectively reasonable. Employees are responsible for effectively articulating the need for force based on the totality of the situation. In every situation, the use of force should be avoided whenever it can reasonably be avoided. Employees will be held accountable for any unreasonable force.

Employees are expected to de-escalate a situation whenever reasonably possible at all points before, during, and after an encounter.

The decision to use force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (Graham v. Connor, 490 U.S. 386, 396 (1989).)

The "reasonableness" of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (Graham v. Connor)

Whenever reasonable, employees should attempt to slow down or stabilize the situation so more time, options, and resources are available for incident resolution. Employees must understand and receive training on conduct that has been held to violate clearly established law. Employees must fully comply with federal and state constitutions and laws.

This policy applies equally to all employees unless otherwise stated.

### IV. Factors Used To Determine Reasonableness

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

The HCSO examines reasonableness using the objective standard established in Graham v. Connor, 490 U.S. 386 (1989). Additionally, when regarding inmates and pre-trial detainees, reasonableness "must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." (Kingsley v. Hendrickson, 576 U.S. (2015))

In determining whether it is reasonable to use force, and to what degree, employees must evaluate each situation in light of the facts and circumstances of each particular case. Considerations including, but not limited to, the following may bear on the reasonableness or unreasonableness of the force used:

A. Seriousness of the crime or suspected offense if any;

B. Institutional security risk posed by the subject if any;

C. Reason for contact with the subject;

D. Whether the subject is experiencing a medical emergency that rendered him or her incapable of making a rational decision;

E. The level of threat or resistance presented by the subject;

F. The relationship between the need for the use of force and the amount of any force used;

G. Potential for injury to the subject, employee, or others;

H. An attempt by the subject to escape;

I. Time available to the employee to make a decision and his or her reasonable access to de-escalation options;

J. Proximity or access of weapons to the subject if any;

K. Whether the conduct of the subject no longer reasonably appears to pose an imminent threat to the employee or others;

L. Relative factors of age, size, strength, skill level, injury, exhaustion, and the number of employees versus the number of subjects; and

M. Environmental factors and exigent circumstances.

V. **Use of Force**

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

A. **Unreasonable Force**

   Unreasonable force is prohibited.

   1. Once resistance is overcome or aggression is reduced, the employee must correspondingly and immediately reduce the degree of force he or she is applying, or the use of force is not reasonable.

   2. Connecting hand and leg restraints of a restrained subject (i.e., hog-tying) is prohibited.

   3. Using force as punishment, to interrogate, or in response to verbal provocation alone is prohibited. [*Tex. Pen. Code § 9.31(b)(1)*]

   4. Using deadly force to prevent a person from self-harm is prohibited. [*Tex. Pen. Code § 9.34(a)*]

   5. Any restraints impeding normal breathing or circulation of blood to the brain by applying pressure to a person's throat or neck, including choke holds, carotid artery holds, and other neck restraints, are prohibited, unless the restraint is necessary to prevent serious bodily injury or death to any other person.

   **NOTE:** The HCSO does not condone, or provide any training in the use of, any chokehold or neck restraint.

   Using unreasonable force will subject the employee applying such force to disciplinary action, loss of employment, and referral for possible prosecution.

B. **Directed Force**

   Directed force is force used under the immediate direction of any other person. When force is directed by another, the same policy applies both to the one directing the force and to the person applying the force.

   **NOTE:** An employee cannot defend the use of unlawful or unreasonable force by claiming he or she was directed to use that force by another person. Each employee is responsible for the force he or she uses. Employees have the duty to intervene even when directed by another to use force. See Section VII (A).

C. **Self Defense Force**

   1. **Force** is justified against another when and to the degree the employee reasonably believes the force is immediately necessary to protect the employee, or another, from the other's use, or attempted use, of unlawful force. [*Tex. Pen. Code § 9.31, 9.32, & 9.33*]

HARRIS COUNTY, TEXAS                                                                 4

HC_0004

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

A. **Unreasonable Force**

   Unreasonable force is prohibited.

   1. Once resistance is overcome or aggression is reduced, the employee must correspondingly and immediately reduce the degree of force he or she is applying, or the use of force is not reasonable.

   2. Connecting hand and leg restraints of a restrained subject (i.e., hog-tying) is prohibited.

   3. Using force as punishment, to interrogate, or in response to verbal provocation alone is prohibited. [*Tex. Pen. Code § 9.31(b)(1)*]

   4. Using deadly force to prevent a person from self-harm is prohibited. [*Tex. Pen. Code § 9.34(a)*]

   5. Any restraints impeding normal breathing or circulation of blood to the brain by applying pressure to a person's throat or neck, including choke holds, carotid artery holds, and other neck restraints, are prohibited, unless the restraint is necessary to prevent serious bodily injury or death to any other person.

   **NOTE:** The HCSO does not condone, or provide any training in the use of, any chokehold or neck restraint.

   Using unreasonable force will subject the employee applying such force to disciplinary action, loss of employment, and referral for possible prosecution.

B. **Directed Force**

   Directed force is force used under the immediate direction of any other person. When force is directed by another, the same policy applies both to the one directing the force and to the person applying the force.

   **NOTE:** An employee cannot defend the use of unlawful or unreasonable force by claiming he or she was directed to use that force by another person. Each employee is responsible for the force he or she uses. Employees have the duty to intervene even when directed by another to use force. See Section VII (A).

C. **Self Defense Force**

   1. **Force** is justified against another when and to the degree the employee reasonably believes the force is immediately necessary to protect the employee, or another, from the other's use, or attempted use, of unlawful force. [*Tex. Pen. Code § 9.31, 9.32, & 9.33*]

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

2. **Deadly force** is justified against another when and to the degree an employee reasonably believes deadly force is immediately necessary to protect him or herself, or another, from the other's use of unlawful deadly force. [*Tex. Pen. Code § 9.32, & 9.33*]

   **NOTE:** A verbal warning should precede the use of deadly force whenever reasonable.

D. **Force Used In A Detention Facility**

   1. Force is justified against a person in custody when and to the degree an employee reasonably believes the force is necessary to:

      a. Maintain the security of a detention facility [*Tex. Pen. Code § 9.53*];

      b. Maintain the safety or security of other persons in custody or employed by the detention facility, or his or her own safety or security [*Tex. Pen. Code § 9.53*];

      c. Protect the inmate from causing self-harm [*Tex. Pen. Code § 9.34(a)*];

      d. Prevent the escape of an inmate, or recapture an escaped inmate [*Tex. Pen. Code § 9.52*]; and

      e. Any other scenario authorized by state or federal law.

   2. When force is necessary to subdue an inmate but does not involve an imminent threat, the use of force will be planned according to *Criminal Justice Command SOP #307*.

      **NOTE**: Deadly force must not be used to prevent self-harm.

E. **Force Used to Arrest or Search**

   1. A peace officer is justified in using force when and to the degree he or she reasonably believes the force is immediately necessary to make or assist in the making of an arrest or search, or to prevent or assist in the preventing of an escape after arrest, if:

      a. The peace officer reasonably believes the arrest or search is lawful, or, if made pursuant to a warrant, he reasonably believes the warrant is valid; and

      b. Before using the force, the deputy announces his or her purpose to arrest or search and identifies him or herself as a peace officer, unless he or she reasonably believes that his or her purpose and identity are

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

      already known or cannot reasonably be made known to the person to be arrested or searched [*Tex. Pen. Code § 9.51(a) (2)*].

2. Deputies may use deadly force to stop a fleeing subject when the deputy has probable cause to believe the subject has committed, or intends to commit: [*Tex. Pen. Code § 9.51*]

   a. A felony involving the infliction or threatened infliction of serious bodily injury or death, **and**

   b. The deputy reasonably believes that there is an imminent risk of serious bodily injury or death to another person if the individual is not immediately apprehended.

F. **Automobiles**

1. An employee must move out of the path of a vehicle rather than discharge a firearm at a vehicle. Shooting at a moving vehicle often presents an unacceptable risk to innocent bystanders.

2. An employee must approach a vehicle from the side, whenever reasonable, and never place him or herself in the path of a vehicle.

3. Discharging a firearm at a moving vehicle is prohibited, unless:

   a. The employee reasonably believes there are no other means to avert the threat of the vehicle, or

   b. If deadly force, or the threat of deadly force other than the vehicle is emanating from the vehicle and directed at the employee or others.

4. Disabling a vehicle by use of a firearm is prohibited except under exigent circumstances.

VI. **Resistance Response Options**

As employees observe conditions and interact with persons on scene, they should continue to gather relevant information and facts. These assessments, along with reasonable inferences, help develop an understanding of the totality of the circumstances of the incident and what type of response may be reasonable.

A. Employees must continuously assess the situation and adjust their de-escalation tactics and force options accordingly. Options employees may consider include, but are not limited to:

1. Physical presence;

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

2. Verbal direction or commands;

3. Empty hand control:

    a. Soft empty hand control (pressure points, joint locks),

    b. Hard empty hand control (strikes);

4. Intermediate options:

    a. Conducted electrical devices (CEDs),

    b. Chemical agents,

    c. Batons and less-lethal munitions,

5. Deadly force.

B. **De-Escalation**

An employee should use de-escalation as an alternative to a higher level of force, consistent with his or her training, whenever reasonable. An employee should allow a subject time and opportunity to submit to verbal commands before force is used, if reasonably possible, and when such delay will not compromise the safety of the employee or another, and will not result in the destruction of evidence, escape of a subject, or commission of a crime.

1. **Consider Available Resources**

    a. Employees must consider what risks and benefits may be associated with delaying immediate action, and use resources which may help prevent the use of force whenever reasonable and appropriate.

    b. Options which may eliminate the need for force include:

        i. Waiting for back-up to arrive on scene before engaging a subject;

        ii. Requesting a specialized unit, such as the Crisis Intervention Response Team (CIRT); and

        iii. Summoning the aid of persons whose presence may help calm and de-escalate the situation, such as emergency medical professionals, interpreters, or a subject's family members.

HC_0007

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

2. **Tactical Repositioning**

    a. Employees may use tactical repositioning measures to delay or avoid physical confrontation whenever reasonable, such as:

        i. Maintaining a safe physical distance from the subject;

        ii. Maintaining cover behind existing or assembled physical barriers; or

        iii. Communicating from a location concealed from the subject.

3. **Verbal Direction**

    a. A majority of situations can be resolved with patience and effective communication. Often, the mere presence of an employee and proper verbal direction will be sufficient to persuade most persons to comply.

    b. Employees may use verbal techniques whenever reasonable in an effort to calm a subject and promote rational decision-making. In any verbal confrontation, fear and anger must be defused before a subject will be able to understand an employee's commands.

    c. Verbal techniques may include, but are not limited to:

        i. Introducing yourself and establishing rapport with the subject;

        ii. Listening to the subject's story and permitting them to express frustration;

        iii. Explaining the situation, what the subject can do to comply, and what the different outcomes could be;

        iv. Explaining why a specific action is being taken, permitting the subject to express their views and concerns, and acknowledging their perspective;

        v. Advising the subject of the consequences for noncompliance;

        vi. Offering reasonable, professional advice if it is expected to help; or

        vii. Providing the subject with reasonably sufficient time to respond to directives.

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

C. **Force Options**

1. Actions must be guided by the subject's level of resistance. Subjects may rapidly shift from a lower to a higher level of resistance, or may immediately threaten a high level of resistance, including deadly force.

2. An employee must be able to articulate and document the level of resistance he or she encounters, and the reasoning for selecting a level of control in response. Verbal commands, and other de-escalation techniques, are encouraged first and foremost.

   a. **Empty Hand Control:**

      i. **Soft Empty Hand Control:**

         Soft empty hand includes the use of bare hands to guide, hold, and restrain, and can take the form of pressure points or joint locks.

         Soft empty hand techniques may be used to control passive resistance, such as a subject remaining in a limp, stiff, or prone position, refusing to comply with simple directions, participating in a sit-in, locking arms in a chain, or blocking an entryway.

      ii. **Hard Empty Hand Control:**

         Hard empty hand includes striking and stunning blows, like knee or elbow strikes, and has a possibility of soft or connective tissue damage, skin lacerations, or bone fractures.

   b. **Intermediate Options:**

      Intermediate options are tools which may provide a means for an employee to defend him or herself, or another, from injury and may prevent the need to resort to a higher level of force. If intermediate options are used, it must only be with the intent to temporarily disable a subject and never with the intent of causing serious bodily injury.

      i. **Conducted Electrical Devices:**

         CEDs may be used to control a subject when it reasonably appears necessary and greater force might not be justified. This may include if other tactics have been ineffective, or there is a reasonable expectation it will be unsafe for employees to approach within contact range of the subject, such as if the subject is wielding a weapon.

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

See *Policy #503 – Use of Conducted Electrical Devices (CEDs)* for more information.

 *ii.* **Chemical Agents:**

Chemical agents are typically an oleoresin capsicum (OC) spray, and intended to cause temporary blindness, inflammatory effects, and discomfort without permanent injury. See *Policy #504 – Use of Chemical Agents* for more information.

 *iii.* **Impact Devices:**

Deliberate strikes to the head, neck, throat, clavicle, groin, and joints with impact devices will be considered deadly force, and will only be used in response to deadly force.

Strikes should normally be delivered to major muscle mass groups (e.g., forearms, thighs, calves, etc.). These areas are primary targets due to the decreased chance of serious bodily injury. Strikes to these locations normally create severe muscle cramping which may inhibit a subject's ability to continue aggression.

Strikes should normally be delivered to major muscle mass groups (e.g., forearms, thighs, calves, etc.). These areas are primary targets due to the decreased chance of serious bodily injury. Strikes to these locations normally create severe muscle cramping which may inhibit a subject's ability to continue aggression.

 a. **Straight and Expandable Batons**

Batons are versatile tools providing a means by which an employee may defend him or herself, or others, from injury, and control subjects when reasonably believed necessary. Batons may be used to perform strikes, holds, or push back subjects.

 b. **Less-Lethal Munitions**

Less-lethal munitions are tools which require specialized training and will only be used by authorized personnel. By design and application, less-lethal munitions have less potential for causing serious bodily injury or death than standard firearm projectiles.

Examples of less-lethal munitions include, but are not limited to, bean bag rounds and hand-thrown rubber pellet grenades.

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

A deputy with a 40 MM Less-Lethal Launcher must be dispatched to calls involving a person with a weapon other than a firearm. If the call taker is not provided with this information, the on-scene deputy or supervisor will notify dispatch of the situation.

See *Policy #502 – Less Lethal Impact Devices* for more information on batons and less-lethal munitions.

**NOTE**: Employees may find it more effective or practical to improvise their response to rapidly unfolding conditions. In such circumstances, the use of any improvised device or method must still be objectively reasonable and used only as reasonably appears necessary.

c. **Deadly Force:**

The value of human life is immeasurable. Employees are delegated great responsibility to protect life and property, apprehend criminal suspects, and maintain the care, custody, and control of those detained in our facilities.

Apprehension of criminal suspects, and protection of property, must be subservient to the protection of life. While the ultimate objective of every encounter our employees face is to avoid or minimize injury, nothing in this policy requires our employees to retreat or be exposed to possible physical injury before applying any level of force reasonably believed necessary. [*Tex. Pen. Code § 9.32*]

### VII. Duties and Responsibilities

A. **Duty to Intervene**

Employees have a duty to intervene in a situation where unreasonable force is being applied. Employees must stop or prevent another employee, regardless of rank, title, or seniority, from using force against a subject suspected of committing an offense if:

1. The amount of force exceeds that which is reasonable under the circumstances; and

2. The employee knows or should know that the other employee's use of force:

    a. Violates state or federal law;

    b. Puts a person at risk of bodily injury and is not immediately necessary to avoid imminent bodily injury to any other person; and

**HARRIS COUNTY, TEXAS** 11

HC_0011

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

    c. Is not required to apprehend a subject suspected of committing an offense.

3. Employees who witness unreasonable or excessive force must immediately make a detailed report of the incident and submit it to their supervisor.

   **NOTE**: If an employee's supervisor is the one they witnessed using unreasonable or excessive force, the report should be directed to the next ranking supervisor in the chain of command.

B. **Duty to Render Aid**

   Employees must ensure any person who is the subject of a use of force receives appropriate, timely first aid, and professional medical attention.

   1. Ensure the subject is kept upright with a clear airway, if reasonably possible.

   2. Do not kneel or sit on the subject's back or neck unless reasonably believed necessary as this may prevent the person from breathing adequately.

   3. Whenever a subject has or complains of injuries, the employee must:

      a. **Start First Aid**

         Alert the appropriate medical personnel and administer basic first aid or lifesaving procedures until medical personnel arrive.

         These procedures may include:

         i. Pressure to the wound to stop bleeding,

         ii. Applying gauze, bandages, or a tourniquet,

         iii. CPR (cardiopulmonary resuscitation), and continue until either medical personnel arrive or subject regains consciousness, and

         iv. Any other first aid necessary for the treatment of an injury.

      b. **When Medical Personnel Arrive**

         Have the subject evaluated or treated by medical personnel, and follow their directions. Document any refusal of medical treatment or evaluation in writing and, if practicable, both in writing and via audio or video recording.

      c. **If EMS Does Not Transport**

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

If the incident occurred outside of a detention facility, provide transport to an appropriate medical facility if emergency medical services (EMS) does not transport.

An appropriate medical facility may be the nearest county hospital (e.g., Ben Taub or Lyndon B. Johnson Hospital), another medical facility depending on the condition of the subject, or the Joint Processing Center (JPC) to be examined by medical staff on-duty. Injured subjects will not be transported to an outlying jail facility.

Upon arrival at the JPC, the employee must:

  i. Inform the receiving JPC personnel the subject was involved in a use of force incident and of the nature and extent of the complaint of injury, or possible injury, so the subject can be examined by JPC medical staff; and

  ii. Ensure an on-duty supervisor has been informed EMS did not transport the subject and document this in the incident report.

C. **Reporting the Use of Force:**

Employees involved in a use of force must immediately report the use of force to any on-duty supervisor. The employee who was primarily involved will be responsible for completing an incident report and other employees must complete a supplement report.

1. Failure to report the use of force may lead to disciplinary action, loss of employment, and referral for possible prosecution.

2. Incident reports regarding use of force must include a description of:

    a. Circumstances leading to the incident;

    b. De-escalation techniques attempted by the employee;

    c. The threat perceived by the employee;

    d. The level of resistance faced;

    e. Any force used in response to resistance faced;

    f. Any injuries, possible injuries, and treatment administered;

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

  g. Medical provider who responded, including names, agency, job titles, and unit number if any;

  h. Whether any photos or videos are available from before, during, or after the incident; and

  i. Any other pertinent information, to include other requirements of the Department Manual and applicable standard operating procedures.

D. **Reporting the Observed Use of Force:**

Employees who have observed the use of force by another employee must promptly report the observed use of force to an on-duty supervisor, and complete a supplement report to the involved employee's report of what was observed. Failure to report an observed use of force may lead to disciplinary action, loss of employment, and referral for possible prosecution.

E. **Further Reporting of Use of Force Incidents:**

1. **Supervisory Personnel:**

When notified of a use of force incident that resulted in serious bodily injury or death, the supervisor must ensure the Office of Inspector General (OIG) is notified. The supervisor must also notify the chain of command immediately. Notifying the immediate supervisor will be sufficient as he or she will continue the notification up the chain of command.

  a. Supervisors will be responsible for entering the use of force in the BlueTeam online application. The supervisor will enter one report per incident and include all personnel involved in the incident.

  b. Use of force incidents involving an in-custody inmate will require supervisors to follow the reporting requirements in *Criminal Justice Command SOP #307*.

  c. Prior to accepting the report of the incident from the reporting party, the supervisor is responsible for conducting a review of the report for accuracy and thoroughness, and will also ensure:

    i. Relevant documents including, but not limited to, incident reports, MFR reports, photos, videos, CED downloads, E-1 injury reports, inmate statements, inmate medical receipts, and Inmate Service confirmations, are gathered and uploaded into BlueTeam; and

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

      *ii.* The use of force documentation is received by the Watch Commander within 24 hours of the use of force incident.

    **NOTE:** Supervisors are unable to upload video to BlueTeam as a result of file size limitations. Supervisors are required to transfer videos to optical discs, and forward discs to the OIG Use of Force Review Section.

  d. Discrepancies identified by the OIG will be assigned to the supervisor who completed the use of force report in BlueTeam.

      *i.* The supervisor will be responsible for addressing the discrepancy and returning the report to the OIG Use of Force Review supervisor in a timely manner.

      *ii.* Supervisors are responsible for logging into BlueTeam daily to check for incident assignments due to discrepancies.

    **NOTE:** A BlueTeam tutorial is available on the HCSO Intranet.

2. **Watch Commanders:**

   Watch Commanders are responsible for reviewing use of force documentation to ensure accuracy and thoroughness. They must forward the documents to the Division Commander within 24 hours of receipt.

F. **Incidents Involving the Use of Force**

   1. The OIG will review incidents wherein employees have applied force to ensure each event is properly documented and independently reviewed or investigated for the following reasons:

      a. To ensure proper and accurate documentation of the incident in the event of legal action brought against the HCSO or employee, and

      b. To evaluate the training needs of the HCSO.

   2. The OIG is responsible for approving and ensuring the reported use of force is entered into the Personnel Early Warning System (PEWS) in accordance with *Policy #233 – Personnel Early Warning System (PEWS).*

   3. Incidents involving an employee's use of force in the following categories must be documented by the employee as required in Section VII (C). These incidents will also be reported to the employee's immediate supervisor in addition to other required reporting. These incidents include:

      a. When a subject is struck with an open or closed hand or any other object,

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| DE-ESCALATION & RESPONSE TO RESISTANCE | 501 | 18 |

    b. When a subject is forcibly taken down and has incurred a possible injury,

    c. When a subject is forcibly restrained, struck, or jabbed with a baton or other impact or restraint device,

    d. Deployment of any CED,

    e. Use of any chemical agent,

    f. When a subject is injured or alleges injury by an HCSO canine unit,

    g. When a firearm is discharged,

    h. When a subject is struck with a motor vehicle,

    i. When any object or instrument is used to forcibly stop a person or a motor vehicle,

    j. Any application of physical force against another that has an imminent potential for injury or death to another person, or

    k. Any application of physical force against another resulting in, or is alleged to have resulted in, the death or injury of another person.

G. **Analysis of Use of Force Reports:**

  1. Use of force reports are meant to be tools for supervisors to:

    a. Know and understand the facts of use of force incidents;

    b. Prepare for litigation that might arise;

    c. Ascertain where problem areas exist;

    d. Use as aids in determining what supervision is required; and

    e. Determine necessary training patterns that should be utilized or developed to lessen future use of force incidents.

  2. Each Division Commander must submit an annual report, not later than March 1 of each year, to his or her respective Bureau Commander detailing patterns or trends involving the use of force which he or she believes may require additional training, equipment, or policy modifications. The analysis should identify:

    a. Date and time of incidents,

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

    b. Types of encounters resulting in the use of force,

    c. Trends or patterns related to race, age, and gender of subjects involved,

    d. Trends or patterns resulting in injury to any person, including employees, and

    e. Impact of findings on policies, practices, equipment, and training.

3. Nothing herein is meant to limit the time at which commanders may report use of force trends they believe warrant immediate care and concern in order for these problems to be rectified at the earliest possible time.

H. **Administrative Leave or Duty Status:**

1. Immediately following an employee's involvement in a use of force resulting in death or serious bodily injury, the Behavioral Health Division will assign the employee to administrative leave or duty status for a minimum of three days.

    a. If the employee will be placed on administrative leave, the employee's Bureau Commander must prepare the appropriate documents for submission as required by current payroll procedures.

    b. If the employee will be placed on administrative duty, the employee's Division Commander will assign such administrative duties.

    c. Within five days of assigning an employee to administrative leave or duty status, the Behavioral Health Division will complete a preliminary review of the incident and may:

        i. Extend the administrative leave or duty assignment for a set time, or

        ii. Return the employee to regular duty.

    **NOTE**: Administrative leave or duty status may be extended until the OIG investigation has been completed.

2. While on administrative leave or duty status, the employee must attend a post-incident debriefing with a Behavioral Health Division counselor.

3. Assignment to administrative leave or duty status is non-disciplinary and will not result in the loss of any pay or employment benefits. Administrative duty is designed to:

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| **DE-ESCALATION & RESPONSE TO RESISTANCE** | **501** | **18** |

      a. Address the personal and emotional needs of the employee involved in the use of force incident, and

      b. Assure the community the facts are fully and professionally investigated, and no rush to judgement has been made.

**NOTE:** If an allegation of misconduct is sustained against an employee, he or she may receive disciplinary action, up to and including termination, while on administrative leave or duty status. See *Policy #301 – Corrective Action and Disciplinary Procedures.*

**VIII. Training**

Employees will receive annual training on this policy and demonstrate their knowledge and understanding thereof.

A. A copy of this policy will be issued to each employee during the training.

B. Training will be documented, and records maintained by the HCSO Academy.

**Revision**

This policy has been revised on the below listed dates:

| | | |
|---|---|---|
| April 21, 2009 | June 20, 2018 | August 26, 2021 |
| April 8, 2013 | October 31, 2018 | |
| May 1, 2013 | March 9, 2020 | |
| May 5, 2015 | December 22, 2020 | |
| October 14, 2016 | February 19, 2021 | |

HC_0018