# Exhibit E

**SHERIFF ADRIAN GARCIA** 

May 1, 2015

| | | Human Resources Bureau |
|---|---|---|
| **TO:** | Rolando Delgado, Deputy (EIN ▇▇▇) Patrol Bureau, District V | ☒ PEWS ☐ SIRS ☐ IFAS Initials _AM_ Date _5/6/15_ |
| **SUBJECT:** | Disciplinary Action (2-Day Temporary Suspension without Pay) | |
| **RE:** | Rule 12 ("Disciplinary Actions and Appeals"), Harris County Sheriff's Civil Service Regulations. | |

Violations of Section 300, Policy #303, I., Subsections A, B, C. 7, & D. 3, 7 & 17; Policy #305, I., Subsections A, C, D & E; and Policy #308, I., Subsection A, of the *Department Policies*.

Violation of the Criminal Justice Command's *Standard Operating Procedures* (Sections cited below).

You are hereby advised you will be suspended from duty without pay for two (2) workdays, beginning **May 2, 2015**, and ending **May 3, 2015**. Upon return to duty, you will be placed on disciplinary probation for a period of **60** days, beginning on **May 4, 2015**, and ending on **July 2, 2015**. This disciplinary action derives its authority from Rule 12 of the Harris County Sheriff's Civil Service Regulations and is predicated upon a violation of one or more of the provisions of Rule 12, Section 12.02 ("Improper Conduct Defined"). You are further advised in accordance with Section 200, Policy #244, II., Subsection F. 5 ("Extra Employment"), *Department Policies*, you are not eligible to work extra employment while on disciplinary suspension. The reasons for this disciplinary action are set out below.

### Overview

On March 6, 2013, inmate Deterrius "Terry" Goodwin was booked into the Harris County Jail on the class "B" misdemeanor offense of possession of marijuana and booked into the 701 N. San Jacinto Street Jail facility. Inmate Goodwin assaulted another inmate on April 5, 2013, and he was transferred to 1200 Baker Street Jail facility on April 6, 2013, per the request of MHMRA he was housed in cellblock 2P1. On April 7, 2013, Inmate Goodwin assaulted a MHMRA staff member. On April 15, 2013, MHMRA released Inmate Goodwin into General Population and Inmate Goodwin was then housed in 2M2. He was housed at that location because of his aggressive behavior.

Inmate Goodwin continued to have referrals for psychiatric screening, and he continued to display assaultive and aggressive behavior. On June 5, 2013, Inmate Goodwin assaulted a Detention Officer and was charged with the felony offense of Assault on a Public Servant. Due to this assault, the HCSO Inmate Classification transferred Goodwin to 1200 Baker Street Jail's cellblock 2J1. On June 19, 2013 Inmate Goodwin was transferred to a Mental Health Unit cellblock, and on June 20, 2013, Inmate Goodwin was transferred back to 1200 Jail, cellblock 2J1. He was placed in cell 2J1A.[1]

---
[1] At the time, "J" Pod was a 24-hour Separation lockdown cellblock; observation rounds were to be conducted every 20 to 25 minutes.

On September 6, 2013, LPHA Chelsea Ford, while conducting Administration Separation Rounds, witnessed Inmate Goodwin at Cell 2J1A. She made the following observations per her statement, attached hereto as **Exhibit "A"** and incorporated herein for all intents and purposes. She noted there were several food trays inside his cell and a strong odor of urine was emanating from his cell.

On October 9, 2013, the HCSO Compliance and Inspection Team arrived at the Jail, cellblock 2J, to conduct a mock inspection. Deputies M. Hannusch and G. Brush were members of this team which was being commanded by Lieutenant P. Davidson. Upon looking in Inmate Goodwin's cell, Deputy Hannusch was shocked to find the deplorable conditions Inmate Goodwin was living in. There were approximately 60 Styrofoam trays stored throughout the cell. (An inmate is provided 2 Styrofoam trays filled with food every day). On October 9, 2013, many of the Styrofoam trays contained decaying food and feces. The smell in and around the cell was described as horrendous. There were gnats upon gnats throughout the cell. *See* Deputy Hannusch's statement which is attached hereto as **Exhibit "B"** and incorporated herein for all intents and purposes. Inmate Goodwin had taken all of the batting out of his mattress and used the batting and feces to clog up his toilet so that it became inoperable. The drain in his shower was clogged with feces and orange rinds, and different areas of the cell had stuffing and feces on it. Deputy Hannusch notified Lieutenant Davidson who came to the cell and witnessed its condition. *See* Lieutenant Davidson's statement which is attached hereto as **Exhibit "C"** and incorporated herein for all intents and purposes. Lieutenant Davidson then notified Chief Deputy F. Brown, Major S. Jones, *then*-Captain R. Konetzke and Lieutenant L. Rush of the findings. Pictures were taken and shared by Lieutenant Davidson with the above named supervisors. While the Compliance and Inspection Team was on scene Inmate Goodwin was removed from cell 2J1A and placed in another clean cell so staff could begin cleaning and sanitizing cell 2J1A, where he had been housed. The Compliance and Inspection Team left the area of cell 2J1A prior to the completion of the sanitation and clean up.

On October 12, 2013, Lieutenant Rush arrived at Inmate Goodwin's cellblock to follow up on his condition first hand. Lieutenant Rush discovered that Inmate Goodwin was back in Cell 2J1A and it was still in a deplorable condition. It appeared that when the Compliance and Inspection Team left the 2J1 cellblock to report the finding, the staff in cellblock 2J1 returned Inmate Goodwin back into deplorable conditions in Cell 2J1A, and just disregarded the situation. On October 12, 2013, Inmate Goodwin was removed from Cell 2J1A and placed in Cell 2J1B, a clean cell, under Lieutenant Rush's direction. Lieutenant Rush noted that Cell 2J1A was overcome by an incredible cloud of gnats.

On October 12, 2013, Lieutenant Rush observed the following in Cell 2J1A:

    a.    The overhead cell lights were poorly illuminated;

    b.    Orange strips of cloth, made from Inmate Goodwin's jumpsuit, were hanging from the ceiling;

    c.    50 to 60 Styrofoam trays with feces inside were stacked in the cell; (Note: this was the amount of Styrofoam trays found in Cell 2J1A on October 12, 2013, even though many trays had been removed on October 9, 2013 while the Compliance and Inspection Team was on scene);

      d.    A torn mattress with half of the batting removed;

      e.    The toilet was stacked with layers of the mattress batting several inches above the metal rim;

      f.    The shower drain was clogged with orange peels and feces; and

      g.    The stainless steel shower panel which was secured to the cinder block wall with metal bolts had been torn partially from the wall, and mattress batting (with what appeared to be and produced a strong odor of feces underneath the first layer) was also discovered stuffed behind the panel.

On October 9, 2013, Deputy Hannusch took pictures of Inmate Goodwin's cell; those pictures are attached hereto as **Exhibit "D"** and incorporated herein for all intents and purposes. On October 12, 2013, Lieutenant Rush took pictures of Inmate Goodwin's cell; those pictures are attached hereto as **Exhibit "E"** and incorporated herein for all intents and purposes.

An Internal Affairs Division ("IAD) investigation (**IAD Case No. 14-0686-0904**) reveals you violated Sheriff's Office policies and Bureau procedures by failing to perform your required duties when you were assigned to the Justice Housing Bureau.

Between September 7, 2013 and September 15, 2013, you conducted and recorded a total of twenty-nine (29) observation rounds on cellblock 2J1A, where Inmate Goodwin was housed. Specifically, you performed nine (9) rounds on September 7th, nine (9) rounds on September 11th, and eleven (11) rounds on September 15th, 2013. You stated that you are aware of the HCSO policy regarding cleanliness of the jail (Detention Command Sanitation Plan, Policy #D233). You explained "Yes, I am aware and we make an initial round to ensure the cell is as clean as realistically possible." Seer you sworn statement, dated September 17, 2014, which is attached hereto as **Exhibit "F"** and incorporated herein for all intents and purposes.

You admitted Inmate Goodwin's cell was dirty and "he liked to keep about ten (10) trays", which you physically observed. You stated, "We mostly left him alone because he was only a problem if we approached his door. We did our round and he would scream at us and that was the extent of the interaction." You said you observed gnats inside Inmate Goodwin's cell, but "his cell did not have any more gnats than any other location in the jail." However, you admitted that "out of the inmates in J Pod his cell was the worst." You further stated, "His cell was not that severe. We could have gone in and taken the trays but it is emphasized to us not to get a 'Use of Force'. So I had to weigh if the trays are worth a 'Use of Force'". **(Exhibit "F")**

You admitted you never communicated with a supervisor regarding the conditions of Inmate Goodwin because you "did not think he rose to the level of notifying a supervisor" and you "did not think a stack of trays was worth notifying a supervisor." Further, you declared that you never received an order from a supervisor to not open, enter, or search Inmate Goodwin's cell or any other cell. You stated that you did not generate any reports in reference to Inmate Goodwin. **(Exhibit "F")**

As a result of your inactions, Inmate Goodwin was allowed to live in deplorable conditions. You neglected to take aggressive and corrective measures to resolve a problematic matter which could have been curtailed early on.

Your actions, or lack thereof, during the aforementioned matter, are unacceptable and constitute a gross neglect of duty and a disturbing lack of concern on your part for your work responsibilities. Your conduct in this matter discredits you, the Sheriff's Office, and its employees. As such, you are cautioned that any future misconduct on your part may result in the imposition of further disciplinary action against you.

The disciplinary action being imposed hereby is authorized under provisions of the *Department Policies*, and is further predicated upon your violation of certain sections of the *Department Policies*, and, where applicable, certain Bureau rules and/or regulations, as specified hereinbelow:

**Section 300   Employee Conduct**

**Policy #303   Conduct Prohibited**

I.   A.   **Acts or Omissions Contrary to Good Order:**
No arbitrary rules of conduct can be established which will embrace all cases arising in the general discharge of law enforcement duties or in the personal activities of the individual employee. Therefore, any act or omission contrary to good order and discipline shall be the subject of disciplinary action.

**Policy #303   Conduct Prohibited**

I.   B.   **Violation of Rules and Regulations:**

Each employee of the Sheriff's Office shall be subject to:

1. Reprimand
2. Suspension
3. Reduction in rank, and/or
4. Dismissal from the Sheriff's Office and from service

According to the nature of the offense, for violation of the rules and regulations and the code sections appearing in the Department Policies, or for any of the other rules, regulations, general or special orders of the Harris County Sheriff's Office.

C.   **The following acts or omissions are expressly prohibited conduct for employees of the Harris County Sheriff's Office:**

7. General Behavior:
No employee shall act or behave privately or in any official capacity in such a manner as to bring discredit upon him/herself or the Sheriff's Office.

D.   **Additional Acts of Improper Conduct:**

3. Incompetence

       7.     Neglect of duty.

      17.    Willful violation of any of the rules set forth in the Sheriff's Office policies or any Bureau / Division written order or directive order.

## Policy #305  Performance of Duty

**I.  A.  Attention to Duty:**
During assigned duty hours, employees shall devote their full time and attention to the service of the Sheriff's Office and shall not engage in any other business, occupation, or activity.

**C.  Discharge of Duties:**

Each employee of the Harris County Sheriff's Office shall, at all times, conduct himself/herself responsibly and display proper demeanor, in order to bring credit upon himself/herself and the Sheriff's Office.

Each employee shall perform his/her duties in accordance with the department policies, job description, the policies and procedures maintained by the bureau to which assigned, and all applicable Sheriff's Office or Bureau orders and memoranda.

**D.  Efficiency:**
Employees shall discharge their duties in the most efficient manner possible.

**E.  Failure To Perform Duty:**

An employee who in the performance of official duties displays reluctance to properly perform assigned duties, or who acts in a manner tending to bring discredit upon him/herself or the Sheriff's Office, or who fails to assume responsibility or to exercise diligence, proper demeanor, intelligence, and interest in the discharge of duties, may be deemed negligent or incompetent and shall be subject to disciplinary action, including suspension, demotion, or termination.

## Policy #308  Duty to Safeguard Persons and Property

**I.  Policy:**

    **A.**    Any employee of the Sheriff's Office who has custody of any person or persons, under arrest or in detention, shall be responsible for the proper safeguarding of such person(s) and their personal property.

## Criminal Justice Command's *Standard Operating Procedures*

**Policy #CJC-208      Inmate Conduct**

### III. PROCEDURE

  A. **General Guidelines**

  1. All personnel shall be familiar with, and enforce the rules and regulations of inmate conduct as cited in the Inmate Handbook and HCSO Departmental policy.
  2. All inmates found to have violated inmate rules as defined in the Inmate Handbook shall be subject to disciplinary sanctions, in accordance with due process rights afforded by Criminal Justice Command Policy **CJC-230 ~ Inmate Rights/Due Process**.

**Policy #CJC-219 – Separation Policy**

### II. POLICY

It is the policy of the Harris County Sheriff's Office to establish procedures of accountability for its staff to ensure the safety and security of any inmate in the custody of the Sheriff. It is essential that related records be accurately completed, and serve as a reliable record of HCSO activity.

**Policy #CJC-220 – Inmate Observation**

### II. POLICY

It is the policy of the Harris County Sheriff's Office to establish procedures of accountability for its staff to ensure the safety and security of any inmate in the custody of the Sheriff. It is essential that related records be accurately completed, and serve as a reliable record of Department activity.

### III. PROCEDURE

A. Definitions

  1. **Close Observation** — Reserved for the inmate who is not actively suicidal, but expresses suicidal ideation and/or has a recent prior history of self-destructive behavior and would be considered a low risk for suicide. In addition, an inmate who denies suicidal ideation or does not threaten suicide, but demonstrates other concerning behavior (through actions, current circumstances, or recent history) indicating the potential for self-injury, should be placed under close observation. This inmate should be observed by staff at staggered intervals not to exceed every fifteen (15) minutes, and shall be documented as it occurs.

  5. **Observation** – (TCJS 275.1) Regular Observation by Jailers. Every facility shall have the appropriate number of jailers at the facility twenty-four (24) hours each

day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every thirty (30) minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. There shall be a two-way voice communication capability between inmates and jailers, licensed peace officers, bailiffs, and designated staff at all times. Closed circuit television may be used, but not in lieu of the required personal observation. **Note: Harris County Sheriff's Office requirements may exceed TCJS Minimum Standards.**

C. Observation Instructions – Include, but are not limited to:

1. Obtain a firsthand evaluation of the inmates' attitudes and temperament.
2. Observe the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medical, psychological or other special services.
3. Inspect all windows, screens and walls in the cellblocks and individual cells for any signs of tampering.
4. Ensure all security doors, pan-holes, storage room doors, etc. are properly secured, locked and functional.
5. Ensure sanitary conditions and inspection requirements as delineated by **Criminal Justice Command Policy CJC-233 ~ Sanitation Plan**, are followed and adhered.
6. Ensure inmates are not being subjected to harassment, intimidation, abuse, threats, or assaults by other inmates.
7. Ensure all lights, toilets, showers, telephones, etc., are mechanically sound and in good working order.
8. Remove anything obscuring or covering lights, windows, doorways, vents, or view of the inmates.
9. Remove any clotheslines and/or items glued or attached to any wall.
10. Ensure all inmates have proper bedding, clothing, a functional armband and a permanent or temporary bunk.

D. Observation of Inmate Living Areas

1. It shall be the duty and responsibility of the PCC personnel to continually observe inmates in their housing areas at regular and irregular intervals as prescribed by Departmental policy.

2. Documented observations shall be noted no less than every **thirty (30)** minutes in the Criminal Justice Command Form **CJCF-220d ~ Pod Control Center Visual Jail Check Log.**

3. Day Watch staff members shall populate all fields of the **CJCF-220d** form, indicating the:
    a. Employee Assigned (Printed Name)/EIN:
    b. Day: (Mon, Tues, Wed, etc);
    c. Date: (ex. 02/14/13):
    d. Jail/Cellblock (For example: 701/7B1 or 1200/2K1)

E. Observation of Separation Cells

1. All inmates either classified or temporarily housed in any separation cell or detoxification cell shall have detailed records kept of their daily activities.

2. Inmates housed or placed in a separation or detoxification cell shall be observed at irregular intervals not to exceed every twenty-five (25) minutes. Inmates shall not be allowed to prevent staff members from observing the interior of the cell by any means, to include obscuring the window(s), doors, or other observation areas with paper, cardboard, clothing, etc.

3. Documentation shall be made on the applicable form.

4. *Note: All rounds shall be made in varying routes in order to maintain an irregular schedule and lessen predictability.*

5. Criminal Justice Command Form CJCF-219a ~ **Daily Observation Log** shall be used to document all observations of inmates housed in separation cells or detoxification cells.

**Section 700   Post Orders**

**Policy #CJC-701   General Post Orders (Daily Plan) ~ All Personnel**

**The following Post Orders are in addition to all duties and responsibilities as outlined by Criminal Justice Command Policy.**

II. **POLICY**
It is the policy of the Harris County Sheriff's Office to ensure compliance of established procedures and consistency in performance by its personnel.

B. Attention to Duty

1. Complete psychiatric referrals when necessary (when an inmate exhibits behavior that is a danger to himself, staff, or other inmates, or if an inmate expresses a need for treatment). Personnel are reminded to frequently review **Criminal Justice Command Policies CJC-301 ~ Addressing Inmates w-Mental Health Issues/CIRT Call-Out & CJC-235 ~ Suicide Prevention Plan.**

2. If an inmate appears to be ill, injured or in need of immediate medical attention, notify the jail clinic immediately, and follow the **Criminal Justice Command Policies CJC-212 ~ Inmate Health Care Access Emergency.**

5. Generate written reports of all offenses, incidents, and injuries as required by Bureau or Departmental Policy. All reports shall be completed and properly disseminated prior to the end of the watch, or tour of duty.

    6. Ensure inmate movement is monitored, tracked, and recorded.

    7. Ensure all required documentation, to include observation logs; pass-on books, separation records, etc. are completed in accordance with policy.

  G. Security

    1. Immediately notify the Floor Supervisor of all incidents involving physical altercations or injury to staff or inmates.

  J. Miscellaneous

    7. Maintain, update and be familiar with the rules and regulations of the Departmental Manual and other books (i.e., Post Orders).

  K. Post Orders

    1. Each "Post" or Position has a corresponding description of the duties and responsibilities associated with it.

    2. All staff members shall thoroughly read such orders when assuming a new post and consult their supervisor for clarification if needed.

**Policy #CJC-712 – Pod Control Center (PCC)**

**II. POLICY**
It is the policy of the Harris County Sheriff's Office that inmate movement is monitored, tracked, and recoded by Pod Control Center (PCC) personnel to facilitate the safety and security of HCSO detention facilities. In addition, personnel assigned to the PCC are responsible for monitoring inmate activity, electronic security devices, and coordinating emergency activities.

**III. PROCEDURES**

  B. Responsibilities
    *Duties of the PCC personnel shall include, but are not limited to the following:*

    **8. The Inmate Housing Area (Cellblock)**

      a. Maintain order, control, security and supervision of inmates during daily activities.

    **11. Inmate Observation**
    Ensure all rounds and observations are performed and documented in accordance with Departmental policy – (Refer to Criminal Command Policy **CJC-220 ~ Inmate Observation).**

C. Communication
*It is the duty of PCC Personnel to communicate with the appropriate staff as necessary.*

   1. **Floor Supervisor**
      *Communicate with the Floor Supervisor regarding:*

      b. Instances of emergencies, unusual, or irregular activities on the floor.

D. General Duties

   2. **Inmate Housing Area Inspection**

   *It is the duty of the PCC personnel to perform a detailed interior inspection of the inmate housing area (cellblock) as outlined in this section.*

   a. Inspection Timeframe
      i. An inspection inside each cellblock must be conducted at the beginning of each watch.
      ii. Frequently perform random inspections throughout the shift
      iii. a minimum of three (3) times per watch is required.

   b. Collection of Information
      *Information gathered is to include, but not limited to:*
      i. Obtain a firsthand evaluation of the inmates' attitudes and temperament.
      ii. Observe the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medical, psychological or other special services.
      iii. Inspect all windows, screens and walls in the cellblocks and individual cells for any signs of tampering.
      iv. Ensure all security doors, pan-holes, storage room doors, etc. are properly secured, locked and functional.
      v. Ensure sanitary conditions.
      vi. Ensure inmates are not being subjected to harassment, intimidation, abuse, threats, or assaults by other inmates.
      vii. Ensure all lights, toilets, showers, telephones, etc., are mechanically sound and in good working order.
      viii. Remove anything obscuring or covering lights, windows, doorways, vents, or view of the inmates.
      ix. Remove any clotheslines and/or items glued or attached to any wall.
      x. Ensure all inmates have proper bedding, clothing, a functional armband and a permanent or temporary bunk.

Personnel Order – Rolando Delgado, Deputy
Page 12 of 12

Effective immediately, this document will be placed in your permanent personnel file. If you so desire, you have fifteen (15) days in which to file a written response. Your response will also be placed in your permanent file.

You are further advised that your dependent medical benefits, if any, may cease during your suspension period. You may refer to the Harris County Personnel Regulations or contact Harris County Human Resources and Risk Management at 713.274.5500 (Ms. Robin Vincent) for information on continuation of dependent coverage.

You may refer to the Harris County Sheriff's Department Civil Service Regulations, Rule 12, Section 12.04, concerning your right to appeal this action to the Sheriff within ten (10) days.

REVIEWED: _____
Mottie Cato, Director
Human Resources Bureau

REVIEWED: _____
Disciplinary Review Board Chairman

For Sheriff Adrian Garcia,
D.A. Schmidt, Major
Justice Management Bureau

My signature affixed below acknowledges that I have received and read this personnel order which sets out disciplinary action, and have been offered an opportunity to respond to the allegations set out herein above.

_____
Rolando Delgado

5-1-2015
Date

cc:   Human Resources Personnel File
      Bureau Personnel File
      PEWS
      Civil Service Commission

WITNESSED: _____   DATE: 05.01.2015