## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DEBORAH JONES-MACDONALD, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:23-cv-2871 |
| ROLANDO DELGADO, JR., | § | |
| CHARLES RIBBE | § | |
| (in their individual capacities), | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD SERGEANT STEPHEN WILLIS AS A DEFENDANT</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Deborah Jones-MacDonald moves to amend her Complaint to add Sergeant Stephen Willis as a Defendant. Based on additional facts and testimony, previously unknown to Plaintiff and revealed to her through Sgt. Willis' Deposition, indicating supervisory failures by Sgt. Willis that caused Ms. Jones-MacDonald's injuries, Plaintiff requests leave to amend her complaint to add Sgt. Willie as a Defendant.

Counsel for Plaintiff has conferred with Counsel for Sgt. Willis regarding this motion and Counsel has indicated that they oppose this Motion.

## TABLE OF CONTENTS

I.      Background……………………………………...………………...….….…2

II.     Standard of Review…………….………………………………………...5

III.    Sgt. Willis Caused Plaintiff's Injuries due to His Failure to Understand and Implement that:…………………………………….……….…………..…..6

      **A.      He had a duty to intervene, report, and discipline Defendants Delgado and Ribbe for their wrongful and illegal actions**…………………………………...………………….…7

      **B.      Deputies cannot aid in a repossession like the one involved Here; and,**……….………………….……………….…....22

      **C.      Ms. Jones-MacDonald sitting in her vehicle with her hands on the steering wheel is merely passive resistance, not active resistance.**.......…………………..…....……..………………………25

IV.     Conclusion…………………………………………………….…..27

## I.      BACKGROUND

Plaintiff Deborah Jones-MacDonald filed her First Amended Complaint on December 22, 2023, bringing claims under 42 U.S.C. § 1983, alleging that Defendants Rolando Delgado, Jr. and Charles Ribbe, in their individual capacities, engaged in unreasonable use of force, unreasonable search and seizure, and unlawful arrest, and requesting damages for these violations of Ms. Jones-MacDonald's Constitutional rights. Dkt. 21 at 44-53, 60.

Plaintiff's First Amended Complaint brought further claims under 42 U.S.C. §1983, alleging that Harris County has a policy, procedure, custom, practice, or protocol of:

1) inadequately training, supervising, and/or disciplining its officers;

2) shielding officers from the consequences of illegal and/or improper conduct; and,

3) ratifying officers' illegal and/or improper conduct. Dkt. 21 at 53-60.

On September 2, 2023, Defendants moved to dismiss Plaintiff's claims against Harris County. Dkt. 14. Subsequently, on September 9, 2023, Defendants moved to dismiss Plaintiff's claims against Defendants Delgado and Ribbe. Dkt. 15. On September 30, 2024, the Court granted Defendant's Motion to Dismiss as to the claims against Harris County, but denied the Motion to Dismiss as to the claims against Defendants Delgado and Ribbe in their individual capacities. Dkt. 49.

In its Order, this Court found that Defendants Delgado and Ribbe[1]:

1) illegally seized Ms. Jones-MacDonald's property without due process (Dkt. 49 at 8-12);

2) unreasonably seized Ms. Jones-MacDonald's person (Dkt. 49 at 12-13);

3) used unreasonable and excessive force against Ms. Jones-MacDonald (Dkt. 49 at 14-15); and,

4) unlawfully arrested Ms. Jones-MacDonald (Dkt. 49 at 15-18). Dkt. 49.

For these reasons, this Court denied Defendants Delgado and Ribbe qualified immunity. Dkt. 49 at 1-18.

On April 22, 2025, Sgt. Willis, the on-scene supervisor, was deposed, leading Plaintiff to new information which provides the basis for this Motion.

---

[1] While being supervised by Sgt. Willis.

In addition, a 40-year law enforcement veteran subject matter expert independent of Houston-area agency practices found that the following actions by Willis were outside proper police practices and failed to protect the constitutional rights of all persons:

- Approving the repossession and seizure of Ms. Jones-MacDonald's vehicle;

- Approving of her arrest; and,

- Approving the use of force against her. Ex. 9 at 17-18.

This Motion is brought based on the same events that gave rise to Plaintiff's First Amended Complaint. *See* Dkt. 21. Plaintiff now seeks to amend her Complaint to add Sgt. Willis as a Defendant based on his report of the events that occurred on and subsequent to August 13, 2021, as well as his understanding of the legal constraints on repossession and law enforcement's role in preventing breaches of peace. Plaintiff also seeks to amend her complaint to add Sgt. Willis based on his understanding of what constitutes active vs. passive resistance and the right to use physical force (already found by this Court to be excessive). Dkt. 49 at 16-18. Plaintiff also bases this request upon Sgt. Willis's understanding of the correct action to take in light of an officer filing inaccurate and incomplete reports, as well the appropriate disciplinary actions for Defendant Officers in light of their many illegal and improper actions. Sgt. Willis's (mis)understanding of these issues and actions/inactions both on the day of and subsequent to August 13, 2021, demonstrates his many supervisory failures that led to Plaintiff's injuries, now justifying his inclusion as a Defendant to this case.[2]

---

[2] Sgt. Willis, as the on-scene supervisor, was either testifying and acting on behalf of Harris County, subjecting it to liability, or on behalf of himself, subjecting himself to liability. His misconduct, however, cannot go ignored and it be true that his testimony results in neither Harris County or himself being liable. Granted, Plaintiff is asking for both to be included and believes they both should, but understand that the most likely finding will be either that

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading with the court's leave and the court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Rule 15(a) "severely restricts the judge's freedom… [and] evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). "Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* "The reasons that may justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Id.*

Plaintiff's Amendment would serve justice without substantial or undue prejudice, bad faith, undue delay, or futility. Plaintiff has not failed to cure deficiencies in previous Amendments, as the basis of this Motion arises from information previously unknown to the Plaintiff, obtained in discovery, particularly through Sgt. Willis's deposition. Plaintiff does not bring this motion to create undue delay, nor is this motion futile, as Sgt. Willis's deposition testimony brought to light severe evidence of supervisory failures on his part, which caused the violations of Ms. Jones-MacDonald's rights and her injuries. *See* Ex. 9 at 17-18.[3]

---

Willis's actions/inactions were in line with Harris County policy, or his misconduct was that of a rogue officer. This motion highlights the misconduct of Willis individually, and our simultaneously filed motion to add Harris County non-exclusively covers Willis's testimony as a representative of Harris County.

[3] "Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Sergeant S.R. Willis by approving the repossession and seizure of Ms. Jones-MacDonald's vehicle and approving of her arrest, and possibly the use of force against her (substantive reports, if any, prepared by Sergeant Willis not yet submitted for review) is inconsistent with the Law Enforcement Code of Ethics, the officer's sworn

## ARGUMENT

### III.    Sgt. Willis caused Plaintiff's injuries due to his failures of understanding and implementing the following things.

Sgt. Willis has demonstrated, through his deposition testimony, a deep misunderstanding of:

1) his duty to intervene, report, or discipline Defendants Delgado and Ribbe for their illegal and improper conduct, including excessive force;

2) the fact that deputies cannot get aid in a repossession like the one here; and,

3) the fact that Ms. Jones-MacDonald sitting in her car with her hands on the steering wheel is merely passive resistance, not active resistance.

Sgt. Willis' approval of the conduct of Defendants Delgado and Ribbe stems from these misunderstandings of constitutional rights and underscores the need to hold him liable for his failures that led to Plaintiff's injuries.

### A.    He had a duty to intervene, report, and discipline Defendants Delgado and Ribbe for their wrongful and illegal actions.[4]

On August 13, 2021, Sgt. Willis arrived as the on-scene supervisory officer and directly observed the aftermath of Defendants' unlawful actions, including the excessive and unreasonable force against Ms. Jones-MacDonald. Sgt. Willis, in his duties as on-scene supervisor, had the responsibility and authority to assess, intervene in, and

---

oath of office, and is contrary to the way peace officers and supervisors are trained. For the reasons discussed within this report, it is my opinion the conduct exhibited by Sergeant Willis was outside the scope of generally accepted law enforcement training, practices and procedures and may be contrary to HCSO policy."

[4] This may additionally or alternatively reflect that Harris County has a policy, procedure, custom, practice, or protocol of: 1) inadequately training, supervising, and/or disciplining its officers; 2) shielding its officers from the consequences of illegal and/or improper conduct; and, 3) ratifying officers' illegal and/or improper conduct. If Sgt. Willis had been properly trained on the law surrounding when an officer can aid in a repossession and the related legal rights, it is possible he would have acted differently on scene and in subsequent failures to correct Defendants Delgado and Ribbe or file additional reports. *See* simultaneous filing, *Motion to Add Harris County*.

address Defendants' conduct. Despite this role, Sgt. Willis at all points failed to both intervene or initiate any corrective measures.

Sgt. Willis has demonstrated, through his deposition testimony, deep misunderstanding of his duty to intervene, report, and discipline surrounding:

1) the legal constraints on repossession;

2) law enforcement's role in preventing breaches of peace;

3) what constitutes active or passive resistance;

4) the right to use physical force, already found by this Court to be excessive; and,

5) the appropriate potential disciplinary actions in light of the actions taken by Defendants Delgado and Ribbe. Dkt. 49 at 16.

Sgt. Willis' approval of the conduct of Defendants Delgado and Ribbe stems from these misunderstandings of Constitutional and state law and underscores the need to hold him liable for his failures that led to Plaintiff's injuries.

### ***Summary of improper supervision***

The many HSCO policy violations of Defendants that Sgt. Willis failed to properly supervise are as follows:

1) Defendants Delgado and Ribbe forcibly removed Ms. Jones-MacDonald from her vehicle without cause before issuing any verbal commands, punching her twice in the face, violently twisting her legs, arms, and right knee, while Defendant Ribbe placed his entire body weight on her right knee, and yanking her hair twice in the process. This Court has already found this use of force to be illegal and excessive. Dkt. 49 at 16;

2) Defendants Delgado and Ribbe unlawfully arrested Ms. Jones-MacDonald and seized her vehicle and person without just cause, as already found by this Court. Dkt. 49 at 16-18;

3) Defendant Delgado lied to the DA Intake Line, asserting Defendants had given verbal commands to Ms. Jones-MacDonald before yanking her vehicle door open and forcibly removing her from her vehicle, despite this Court already finding that no verbal commands were given to her before her forcible removal from her vehicle. Dkt. 15-1, hereinafter "Delgado BWC," at 00:45:45-00:48:46; Dkt. 49 at 12;

4) Defendants Delgado and Ribbe lied in their reports of this incident, stating that Ms. Jones-MacDonald had been given several verbal commands before being forcibly removed from her vehicle, despite this Court already finding that no verbal commands were given beforehand. Ex. 1; Dkt. 49 at 12;

5) Defendants Delgado and Ribbe, aided in the illegal repossession of Ms. Jones-MacDonald's vehicle, which this Court has already found. Dkt 49. at 8-18;

6) Defendants Delgado and Ribbe made light of Ms. Jones-MacDonald's injuries and their unlawful and excessive force while still on scene;

7) Despite Ms. Jones-MacDonald asking to see EMTs at least twice while on scene, Defendants Delgado and Ribbe turned EMTs away without examining her, under the direction of Sgt. Willis. Delgado BWC at 00:49:55-00:1:00:00; Dkt. 49.

### ***Excessive Force***

First, Sgt. Willis should have corrected and disciplined Defendants Delgado and Ribbe for their excessive use of force in punching Ms. Jones-MacDonald twice in the

face, slamming her knee, twisting her arm and leg, and pulling her hair. Instead, Sgt. Willis testified, despite this Court already finding the use of force by Defendants Delgado and Ribbe against Ms. Jones-MacDonald to be unlawful and excessive (Dkt. 49 at 13-14), that he would not have corrected or initiated discipline against either Defendant. Ex. 8, hereinafter "Willis Dep.," at 01:00:57-01:02:23.

Sgt. Willis further testified that he would have merely shown Defendants their reports and reminded them that their body-worn camera footage, reports, and what they told the DA Intake Line should all match, ***without giving any specific correction or guidance whatsoever***. Willis Dep. at 01:00:57-01:02:23. Shockingly, Sgt. Willis testified to this fact *after* already testifying that the force he saw Defendant Ribbe use on his body-worn camera footage was ***not in line with HCSO de-escalation policy***. Willis Dep. at 00:43:28-00:44:21.

Having a general conversation without directly correcting Defendants' illegal behavior is insufficient supervision, training, and discipline, even according to HCSO Policy #301 "Corrective Actions and Disciplinary Procedures" Section V. B. Ex. 2 at HC-Subp_0079 ("serious violations of any of the rules or regulations set out in the Civil Service regulations, the HCSO department manual, any bureau procedural manual or standard operating procedures,… or any violation of a federal, state, county, or municipal statute, regulation, ordinance, or a court order, may be the basis for a preliminary incident report…A preliminary incident report may be initiated by any ranking supervisor who deems it necessary in order to address any violation of HCSO policy.").

Sgt. Willis should have filed a preliminary incident report detailing the actions of Defendants which were in violation of Ms. Jones-MacDonald's constitutional rights. The deployment of unlawful and excessive force against her, and the violations of HSCO written policies, warranted his attention and proper reporting. *See* Dkt. 49 at 13-15 (detailing the seriousness of constitutional violations of excessive force in this case). The actions of Defendants were undeniably serious and reveal multiple constitutional rights violations, also reflecting extremely poorly on HCSO; thus, a preliminary report was required. However, Sgt. Willis did not file a preliminary report or do anything whatsoever to correct either Defendant regarding their actions on August 13, 2021.

### ***Failure to De-escalate***

Second, *Sgt. Willis admitted that Defendant Ribbe failed to properly employ de-escalation tactics pursuant to HCSO Policy #501 "De-Escalation and Response to Resistance," but failed to initiate a conversation, correction, or discipline.* Sgt. Willis testified that if a suspect is not applying force against an officer, HCSO policy requires verbal commands be given before the use of force, also testifying that he did not hear either Defendant Delgado or Ribbe give verbal commands before deploying force against Ms. Jones-MacDonald. Willis Dep. at 00:33:51-00:34:03, 00:34:34-00:34:47. In fact, Sgt. Willis testified that the first words he heard Defendant Ribbe say were, "Now it's your turn." Willis Dep. at 00:34:34-00:34:47. Sgt. Willis even directly testified that the force he saw Defendant Ribbe use on his body-worn camera footage was not in line with HCSO de-escalation policy. Willis Dep. at 00:43:28-00:44:21.

Despite this, and Ms. Jones-MacDonald not being given any verbal commands, passively resisting, using no force against officers initially, and posing no safety risk to herself or others, Sgt. Willis testified that he didn't know whether Defendants Delgado or Ribbe should be disciplined for their actions on August 13, 2021. Willis Dep. at 01:00:56-01:01:05. He said this *while knowing* that Defendant Ribbe deployed force against her which violated HCSO written policy.

Sgt. Willis should have recognized that the actions of Defendants Delgado and Ribbe, specifically in violation of HCSO Policy #501 "De-escalation and Response to Resistance," required correction and/or discipline, yet he failed to initiate any discipline.

HCSO Policy #501, "De-Escalation and Response to Resistance," Section III., which was in effect at the time of this incident, states:

> Employees will only use force when it reasonably appears necessary to protect themselves and others, accomplish a legitimate law enforcement purpose, or maintain the security of our detention facilities. In every situation, the use of force should be avoided whenever it can reasonably be avoided. Employees will be held accountable for any unreasonable force….Employees are expected to de-escalate a situation whenever reasonably possible at all points before, during, and after an encounter… Whenever reasonable, employees should attempt to slow down or stabilize the situation so more time, options, and resources are available for incident resolution. Dkt. 14-1 at HC_0002.

Likewise, effective HCSO Policy #501, Section VI. B. states:

> An employee should use de-escalation as an alternative to a higher level of force, consistent with his or her training, whenever reasonable. An employee should allow a subject time and opportunity to submit to verbal commands before force is used, if reasonably possible, and when such delay will not compromise the safety of the employee or another, and will not result in the destruction of evidence, escape of a subject, or commission of a crime. Dkt. 14-1 at HC_0007.

This failure to correct or discipline is in violation of HCSO Policy #301 "Corrective Actions and Disciplinary Procedures," Section III. A. "Corrective Actions and Disciplinary Procedures." Ex. 2. According to this policy, Sgt. Willis had the power and responsibility to correct the conduct of Defendants Delgado and Ribbe, but failed to

do so, thereby demonstrating a deficiency in his supervisory capacity and duties, that led to Ms. Jones-MacDonald's injuries. Ex. 2. Without proper correction and discipline, Defendants were encouraged to engage in unlawful conduct, as they were without accountability. Defendants were not properly trained or supervised by Sgt. Willis, which empowered them to act unlawfully, resulting in the injuries suffered by Ms. Jones-MacDonald.

### *Illegal Seizure & Arrest*

Third, Sgt. Willis should have known that the illegal seizure and arrest of Ms. Jones-MacDonald violated both her constitutional rights and HCSO written policies. "When the Deputies physically removed Plaintiff from her vehicle, it had been clearly established for more than 50 years that officers cannot seize a person without reasonable suspicion of a crime. *See Terry v. Ohio*, 392 U.S. 1 (1968)." Dkt. 49 at 12. There was no reasonable suspicion or probable cause that she had committed or was committing a crime by sitting in her vehicle, lawfully resisting a repossession. *See* Dkt. 49 at 12-18. Instead, Sgt. Willis testified, despite this Court already finding her detention without reasonable suspicion (Dkt. 49 at 12-13) and her arrest without probable cause (Dkt. 49 at 15-18), that he would not have corrected or initiated discipline against either Defendant. Willis Dep. at 01:00:57-01:02:23. Sgt. Willis also testified that he would have merely shown them the reports and reminded them that their body-worn camera footage, reports, and what they told the DA Intake Line should all match, without giving any specific correction or guidance at all. Willis Dep. at 01:00:57-01:02:23. Having a general conversation without directly correcting illegal behavior is insufficient supervision,

training, and discipline according to HCSO Policy #301 "Corrective Actions and Disciplinary Procedures," Section V. B. Ex. 2 at HC-Subp_0079 ("serious violations of any of the rules or regulations set out in the Civil Service regulations, the HCSO department manual, any bureau procedural manual or standard operating procedures,… or any violation of a federal, state, county, or municipal statute, regulation, ordinance, or a court order, may be the basis for a preliminary incident report…A preliminary incident report may be initiated by any ranking supervisor who deems it necessary in order to address any violation of HCSO policy.").

### *Accurate and Truthful Reporting*

Fourth, even if we take Sgt. Willis at his word that he was not able to discipline Defendants Delgado or Ribbe directly, he still had the duty to ensure that their reports were accurate, and to initiate correction/discipline if they were not. Furthermore, Sgt. Willis had a duty, according to HCSO Policies #302 "Professional Conduct Required" and #501 "De-escalation and Response to Resistance," to ensure that a sufficient use of force incident and supplement report were filed by Defendants and all other officers on scene who witnessed the use of force. HCSO Policy #302, Section II. E, Subsection 2. reads, "In every arrest or incident where force is used, the facts surrounding the arrest and the use of force shall be fully included in a written report submitted by the employee to the appropriate supervisor by the end of the employee's duty shift." Ex. 3 at HC-Subp_0085. Similarly, HCSO Policy #501, Section VII. C. states:

> Employees involved in a use of force must immediately report the use of force to any on-duty supervisor. The employee who was primarily involved will be responsible for completing an incident report and other employees must complete a supplement report…1. Failure to report the use of force may lead to disciplinary action, loss of employment, and referral for possible prosecution. 2. Incident reports regarding use of force must include a

description of: a. Circumstances leading to the incident; b. De-escalation techniques attempted by the employee; c. The threat perceived by the employee; d. The level of resistance faced; e. Any force used in response to resistance faced; f. Any injuries, possible injuries, and treatment administered; g. Medical provider who responded, including names, agency, job titles, and unit number if any; h. Whether any photos or videos are available from before, during, or after the incident; and i. Any other pertinent information, to include other requirements of the Department Manual and applicable standard operating procedures. Dkt. 14-1 at HC_ 0013-0014.

Contrary to these policies, Sgt. Willis failed to ensure Defendants Delgado and Ribbe filed accurate incident and supplement reports with this required information and failed to ensure that such reports were accurate and sufficient. He admitted himself that an on-scene supervisor has the duty to give guidance on what next steps will be needed, get information gathered from deputies on scene, and ensure that HCSO policies are being followed and deputies are telling the truth. Willis Dep. at 00:02:26-00:04:36, 00:07:30-00:07:58. Sgt. Willis thus failed his duties as a supervising officer, did not properly train or correct the officers under his command, and instead empowered Defendants to act unlawfully and disorderly.

More specifically, Defendant Delgado's incident report dated August 13, 2021 contained no description of attempted de-escalation techniques or any opinion on whether de-escalation techniques were used, did not explain why Ms. Jones-MacDonald was considered a threat, whether her resistance was active or passive, and did not detail any actual or possible injuries suffered by Ms. Jones-MacDonald.[5] Ex. 1 at HC-Subp_0150-0155. Defendant Delgado also fabricated events, asserting in his report that Ms. Jones-MacDonald was repeatedly told to exit her vehicle but refused to do so, which this Court has already found to be untrue. Ex. 1 at HC-Subp_0153-0154; Dkt. 49 at 12.

---

[5] Despite the obvious, serious, and long-lasting injuries she sustained.

Defendant Ribbe's supplement report also contains fabrications regarding Ms. Jones-MacDonald's vehicle being on or his issuance of verbal commands to Ms. Jones-MacDonald before forcibly removing her from her vehicle. Ex. 1 at HC-Subp_0156. His supplement report fails to properly explain the full extent of force used against Ms. Jones-MacDonald, only detailing that he and Defendant Delgado attempted to remove her from her vehicle by her hands and feet, and that there was a brief struggle on the ground. Ex. 1 at HC-Subp_0156. This is clearly an insufficient report given that Ms. Jones-MacDonald suffered two punches to the face, blows to the breast, twisting of her arms, legs, right knee, and right wrist, and pulled hair. Dkt. 15-2 ,hereinafter "Ribbe BWC," at 00:07:57-00:10:10; Delgado BWC at 00:08:52-00:09:43.

These reports, as well as the actions of Defendants Delgado and Ribbe on August 13, 2021, also violate HCSO Policy #303 "Conduct Prohibited," Section III. A. and B. which states:

A. Employees are prohibited from the following acts or omissions...6. General Behavior: Employees must not act, privately or in an official capacity, in a manner that would bring discredit upon themselves or the HCSO...10. Threatening, Abusive, Vulgar, or Insulting Language: Employees must not use threatening, abusive, vulgar, or insulting language, or behave in an arrogant manner toward any other HCSO employee, the public, or detainees in HCSO custody. 11. Inaccurate Communications: Negligent communications that an employee should know contains incorrect information are prohibited. 12. Intentionally Making a False Statement: Employees must not knowingly make false or inaccurate statements to supervisors regarding their duties, or when submitting payroll or attendance records. 13. Intentionally Making a False Official Statement Employees must not knowingly provide false information in an official document, report, or investigation. It is prohibited to knowingly record false or inaccurate information as though it were true or accurate. Ex. 4 at HC-Subp_0087-0089.

B. Additional Acts of Improper Conduct: 1. Incompetence...8. Dishonesty... 12. Physical abuse of a detainee... 15. Willful violation of any of the rules set forth in the Department Manual or any applicable written directive of a bureau or division Ex. 4 HC-Subp_0092- 0093.

And HCSO Policy #303, Section IV.:

Sanctions: Employees may be subject to reprimand, suspension, reduction in rank, or dismissal from the HCSO for violation of the Department Manual. A. An employee may be reassigned or relieved of duty (with or

without pay) by the Sheriff, or his or her designee, for any serious allegation of misconduct, criminal conduct, or pending the outcome of criminal prosecution… Ex. 4 at HC-Subp_0093.

Defendants Delgado and Ribbe have faced no discipline or sanctions for failing to put adequate and sufficient information in their reports, nor for falsely stating in their reports that Ms. Jones-MacDonald was given verbal warnings before being unlawfully seized and arrested. Defendants Delgado and Ribbe also faced no discipline or sanctions for their use of abusive and threatening language, such as, "Now it's your turn," nor did they face discipline or sanctions for physically abusing Ms. Jones-MacDonald, both of which violate HCSO Policy #303. Additionally, Defendant Delgado has faced no discipline or sanctions for lying to the DA Intake Line when seeking charges against Ms. Jones-MacDonald, despite this being clearly violative of HCSO Policy #303. Sgt. Willis also faced no discipline or correction for his supervisory failures, meaning that Harris County has approved of his supervisory failures.

Due to Sgt. Willis' supervisory failure to understand both the law and HCSO written policy, Defendants Delgado and Ribbe have faced no discipline for their actions on August 13, 2021 or subsequent failure to file accurate and sufficient reports. Sgt. Willis' failure to properly train and supervise those under his supervision, including Defendants, has allowed those under his supervision to submit inaccurate, and dishonest reports which violate HCSO written policy and the law. Sgt. Willis allowed Defendants to submit their inaccurate reports without correction or discipline, thus encouraging them and others under his supervision to repeat such behavior. This naturally results in officers being enabled to hide evidence of their illegal actions, rather than face accountability or

correction for them. Sgt. Willis' approval of the unlawful and disorderly conduct of Defendants Delgado and Ribbe underscores his liability in this case, due to the injuries against Ms. Jones-MacDonald.

### *Timely Medical Attention for Injuries*

Fifth, Sgt. Willis himself violated HCSO Policy #501 "De-Escalation and Response to Resistance," Section VII. B.[6] when he failed to ensure that Ms. Jones-MacDonald received either appropriate and timely first-aid or professional medical attention by allowing the EMTs on scene to depart before examining her. Delgado BWC at 00:49:55-00:1:00:00; Dkt. 14-1 at HC_0012-0013. Sgt. Willis permitted EMTs to tend to a minor bite wound on Defendant Delgado's arm, which did not break skin, before EMTs could attempt to attend to the injuries of Ms. Jones-MacDonald. Delgado BWC at 00:49:55-00:1:00:00. Ms. Jones-MacDonald, a sixty-five year old woman, unlawfully suffered two punches to the face which caused a hematoma, as well as a badly twisted and bruised knee, wrist, arms, and legs resulting in lasting injuries, yet was made a second priority to the minor bite experienced by Defendant Delgado.[7]

---

[6] "Employees must ensure any person who is the subject of a use of force receives appropriate, timely first aid, and professional medical attention… Have the subject evaluated or treated by medical personnel, and follow their directions." Dkt. 14-1 at HC_0012.

[7] This course of events reflects negatively on HCSO as a whole, and instances such as these risk the degradation of the relationship between citizens of Harris County and HCSO. If HCSO continues to portray itself as negligent towards the wellbeing of its citizens and those in its care, the streets of Harris County will face continuing and escalating unrest, and Harris County will face the destruction of its relationship with its citizens.

Sgt. Willis's failure to ensure Ms. Jones-MacDonald was medically examined on-scene also violates HCSO Policy #308 "Duty to Safeguard Persons and Property," Section I.[8]

Despite Defendants informing Sgt. Willis that Ms. Jones-MacDonald wanted to see EMTs, and had suffered injuries from an illegal use of force, Sgt. Willis allowed EMTs to leave the scene without examining her. It was claimed they refused medical care for her because she reasonably wanted her son, who was on scene and witness to the incident, to take pictures of her injuries. Delgado BWC at 00:49:55-00:1:00:00; Dkt. 21 at 18-19. This demonstrates a severe disregard or misunderstanding of HCSO written policy. Because of Sgt. Willis' lack of care for those in his custody, not understanding constitutionally required provision of medical care, and for not adhering to HCSO written policy, Ms. Jones-MacDonald suffered physical and mental pain from her unattended injuries caused by the Officers on **his** scene.

### *Unprofessional Conduct*

Sixth, Sgt. Willis permitted Defendants Delgado and Ribbe to make light of Ms. Jones-MacDonald's injuries and the situation at hand, without correcting their conduct or lack of professionality. He actively took part in the lack of professionalism and encouraged it, as shown by the body-worn cameras. In fact, Defendant Ribbe directly joked with Sgt. Willis about having a "booboo," while the two were still on scene with Ms. Jones-MacDonald. Ribbe BWC at 00:36:09-00:37:02. Defendants Delgado and

---

[8] "A. Any Harris County Sheriff's Office employee who has custody of any person or persons under arrest or detention shall be responsible for the proper safeguarding of such persons and their personal property." Ex. 6 at HC-Subp_0098.

Ribbe also joked about Defendant Delgado's punches being pathetic. Ribbe BWC at 00:36:09-00:37:02. This behavior is clearly violative of HCSO Policy #305 "Performance of Duty," which states:

> Discharge of Duties: Each HCSO employee shall, at all times, conduct him- or herself responsibly and display proper demeanor in order to bring credit upon him- or herself and the agency. Each employee shall perform his or her duties in accordance with the department policies, job description, the policies and procedures maintained by the assigned bureau, and all applicable HCSO or bureau orders and memoranda. Each employee is required to discharge duties in a calm and firm manner. He or she shall exercise due diligence and shall discharge duties in accordance with local, state, and federal law. Ex. 5 at HC-Subp_0047.

> An employee who, in the performance of official duties, displays reluctance to perform assigned duties properly, or who acts in a manner tending to bring discredit upon him- or herself or the agency, or who fails to assume responsibility or to exercise diligence, proper demeanor, intelligence, and interest in the discharge of duties, may be deemed negligent or incompetent and shall be subject to disciplinary action including suspension, demotion, or termination. Ex. 5 at HC-Subp_0047.

Also condemning this behavior is HCSO Policy #308 "Duty to Safeguard Persons and Property," Section I., which states:

> B. No employee shall use offensive, demeaning, or uncomplimentary terms of speech or threatening or vulgar language when speaking or referring to a prisoner or an inmate. Ex. 6.

It is clear that Defendants Delgado and Ribbe violated HCSO Policies #302 "Professional Conduct Required," #303 "Conduct Prohibited," #305 "Performance of Duty," #308 "Duty to Safeguard Persons and Property," and #501 "De-Escalation and Response to Resistance," both individually and collectively on multiple counts, in a manner to bring discredit upon themselves and the agency. Defendants failed to assume responsibility, exercise diligence, proper demeanor, intelligence, and interest in the discharge of their duties. Despite this clarity, and testifying to conduct that violates HCSO codified policy, Sgt. Willis failed to intervene as supervisor at any point on-scene or after the incident. Instead, Sgt. Willis' incompetence as a supervisor and failure to train

and supervise those under his care allowed Defendants to repeatedly break both the law and HCSO policy without correction or discipline.

### *Supervisory Requirements and Failures*

Undeterred by any of this Court's findings, Sgt. Willis testified in his deposition that the unlawful actions of Defendants Delgado and Ribbe on August 13, 2021 did not reflect anything wrong with Harris County policies or with HCSO supervision or training of its deputies. Willis Dep. at 01:02:25-01:03:05. If Harris County's unconstitutional policies are not the cause of the violations and injuries against Ms. Jones-MacDonald, Sgt. Willis was acting as a rogue bad-acting supervisory officer. He failed to report or correct any actions by Defendant Officers. In that case, Sgt. Willis must be held individually liable for his supervisory failures which caused the injuries suffered by Ms. Jones-MacDonald.[9]

A supervisor who was acting appropriately and within HCSO policy would have known that Defendants Delgado and Ribbe violated numerous of Ms. Jones-MacDonald's civil rights as well as HCSO policies. Knowing this, a supervisor who was acting appropriately and within HSCO policy would have taken proper action to intervene and ensure that the proper channels were notified, and that any omissions, misstatements, or fabrications in reports or made to officials were remedied. HCSO Policy #301 "Corrective Actions and Disciplinary Procedures," IV. states:

---

[9] If Sgt. Willis is correct in his belief that the actions of Defendants Delgado and Ribbe were within HCSO policy, this may additionally or alternatively reflect that Harris County has a policy, procedure, custom, practice, or protocol of: 1) inadequately training, supervising, and/or disciplining its officers; 2) shielding officers from the consequences of illegal and/or improper conduct; and 3) ratifying officers' illegal and/or improper conduct.

1. Supervisors must refer any of the following allegations of misconduct to the Internal Affairs Division (IAD) for its consideration **before** taking any form of corrective or disciplinary action: a. *Any* use of force… c. Any violation of the Texas Penal Code; and d. Any other matter the supervisor believes may warrant consideration by Internal Affairs. Dkt. 14-3 at HC_0042.

Similarly, HCSO Policy #302 "Professional Conduct Required," Section II. E. Subsection 4. states, "Each employee shall promptly report any information given to him or her in good faith by any citizen that indicates the need for action by the HCSO." Ex. 3 at HC-Subp_0085.

HCSO Policy #307 "Supervisory Responsibility," Section I. also states, "As the supervisor is held accountable for the completion of a given task by the personnel under his or her command, so are those personnel to be held accountable for the performance of their jobs." Ex. 7 at HC-Subp_0095.

HCSO Policy #307 "Supervisory Responsibility," Section II. states:

B. The supervisor should provide accurate and timely feedback at all stages of an assigned task to ensure that: 1. The personnel under his or her command know that the supervisor is aware of what they are doing, 2. The personnel under his or her command know that the supervisor is aware of how the task is being performed, 3. Mistakes are corrected immediately…5. Modifications to task performance or task objectives may be made as required. Ex. 7 at HC-Subp_0095-0096.

I. A supervisor shall ensure that all applicable rules, regulations, policies, and procedures of the HCSO and its bureaus are followed by all personnel…1. While on duty, a supervisor shall take action to prevent or correct any violation of the department policies that is observed or that comes to his or her attention whether the employee committing such violation is under his or her command or not. 2. A supervisor shall take action to prevent or correct any violation of bureau policies or procedures committed by personnel assigned to his or her bureau whether the employee is under his or her command or not. Ex. 7 at HC-Subp_0096-0097.

K. All supervisors shall conduct themselves in accordance with the standards set by these policies. Ex. 7 at HC-Subp_0097.

Sgt. Willis' disregard for, misunderstanding of, or incompetence to these supervisory HCSO written policies show that he failed in his duties as a supervisor. That failure to supervise are constitutional violations and claims to be upheld and brought in this case.

He violated HCSO policy when failing to report or correct Defendants Delgado and Ribbe both on-scene and after the fact. This incompetence caused Ms. Jones-MacDonald's injuries, as it allowed Defendants to illegally arrest Ms. Jones-MacDonald and seize her vehicle. Sgt. Willis's failure to discipline, correct, or report Defendants Delgado and Ribbe for any of their illegal, unlawful, and inappropriate actions, and brazenly testifying that he would not pursue any supervision, shows a blatant disregard for Ms. Jones-MacDonald's constitutional rights.

For these reasons, it is possible that Sgt. Willis should be held liable for his supervisory failures, and Plaintiff respectfully requests this Court grant Plaintiff leave to amend her complaint to add him as a Defendant to explore his liability further.

**B.    Sgt. Willis should have known that Deputies cannot aid in a repossession like the one involved here.**

In his deposition, Sgt. Willis testified that officers on the scene in this case were *not there for a repossession*, but rather a ***disturbance***, ***admitting that a breach of peace had occurred*** because HSCO was called. Willis Dep. at 00:48:56-00:50:03; *see* Ex. 10 at Statement 3. Sgt. Willis testified that since officers were on the scene in question for a disturbance and not a tow, there was no need to verify whether there was a Court Order for repossession of Ms. Jones-MacDonald's vehicle.[10] Willis Dep. at 00:48:56-00:50:03.

---

[10] This testimony is clearly contrary to both the findings of this Court and relevant case law. "Here, the repossession of Plaintiff's vehicle would not have occurred but for the Deputies' actions in 'stopping [Plaintiff and her ex-husband] from preventing [the Repo Man] from doing his job.' Ribbe Video at 2:39–2:41…**The Deputies contend they removed Plaintiff from her vehicle 'to maintain the peace.' Dkt. 24 at 15. But the peace had already been breached when the Repo Man persisted with his self-help repossession over objection and confrontation)…The Repo Man was not ready to tow Plaintiff's vehicle when the Deputies arrived on the scene. Both videos show that the Repo Man necessarily disconnected Plaintiff's vehicle from the tow truck in order to reposition the tow truck so that Plaintiff's vehicle could be towed from the front…the video shows that the Repo Man disconnected the tow truck from Plaintiff's vehicle and then proceeded to reconnect and tow Plaintiff's vehicle, despite the obvious verbal and physical resistance from both Plaintiff and her ex-husband. The Repo Man's reconnection to and ultimate tow of Plaintiff's vehicle would not have been**

Furthermore, Sgt. Willis testified that HCSO does not get involved in verifying the legality of a tow, due to that being a civil law matter, and that officers are not supposed to verify the legality of a tow.[11] Willis Dep. at 00:48:56-00:50:03. This testimony reflects a severe misunderstanding of the policies, laws, and constitutional rights when an officer is involved in the repossession of a vehicle. It is also in contradiction with this Court's previous finding that the illegal repossession of Ms. Jones-MacDonald's vehicle would not have occurred without the help of the officers on-scene, including Sgt. Willis as the on-scene supervisor. Dkt. 49 at 12, 16.

Sgt. Willis, based on his false legal understandings, further testified that, given her vehicle was in the process of being repossessed, the vehicle was no longer owned by Ms. Jones-MacDonald, meaning that she was trespassing in the vehicle. Willis Dep. at 00:51:02-00:53:02. This is contrary to the facts, which show that Ms. Jones-MacDonald

---

possible but for the aid and intervention of the Deputies, who unilaterally 'resolved the stalemate in favor of [the Repo Man]—the party neither factually nor legally entitled to the [vehicle].' *Id.* at 692. For decades now it has been clearly established that the Deputies' actions violated Plaintiff's Fourth and Fourteenth Amendment rights. *See Poteet*, 218 S.W.3d at 793." Dkt. 49 at 9-10 (emphasis added).

[11] This testimony is clearly contrary to both the findings of this Court and relevant case law. **Self-help repossession is a repossession which occurs without the lender obtaining a court order.** TEX. BUS. & COM. CODE ANN. § 9.609(b)(2). *See also* **Dkt. 49 at 1-2 ("Texas law permits private, self-help repossessions 'without judicial process' only 'if it proceeds without breach of the peace.' TEX. BUS. & COM. CODE ANN. § 9.609(b)(2).").** "The result here should be no different from the result in *Poteet*, in which the officers were denied qualified immunity, because '[f]ederal law recognizing that an unlawful taking of property during a civil standby can amount to state action and a § 1983 violation is clearly established.' 218 S.W.3d at 793; *see also Marcus*, 394 F.3d at 824 ('State law limiting self-help to those situations where a breach of the peace is avoided, and federal law recognizing that an unlawful repossession can amount to state action and a deprivation of property actionable under § 1983, are both clearly established.')...***Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) ('We conclude that there may be a deprivation within the meaning of [§] 1983 . . . when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession.');** ***Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 513 (5th Cir. 1980) (observing that 'police intervention and aid in [a] repossession by [a private party without a court order] would constitute state action');** *McLinn v. Thomas Cnty. Sheriff's Dep't*, 535 F. Supp. 3d 1087, 1104 (D. Kan. 2021) ('*Marcus* found the law was clearly established and denied qualified immunity under similar circumstances, focusing on the officers' unfounded assumption that the repossessor was entitled to possession of the vehicle and their use of police authority to aid the repossessor.'). Thus, at this initial pleading stage, Plaintiff's allegations and the bodycam videos more than overcome the Deputies' assertion of qualified immunity as to the seizure of Plaintiff's vehicle." Dkt. 49 at 10-12 (emphasis added).

was entering her own vehicle and was never charged with trespass. *See* Ex. 10 at Statement 4. This Court already found that Ms. Jones-MacDonald was asserting her legal right to her vehicle and had no obligation to obey orders to exit her vehicle. Dkt. 49 at 16.

Sgt. Willis testified that he was not trained by HCSO on the policies, laws, and Constitutional rights surrounding when an officer is allowed to assist in the repossession of a vehicle. Willis Dep. 00:45:55-00:46:58. Because Sgt. Willis did not understand these legal concepts, he failed to properly train or supervise the Defendant officers. The supervisory failures of Sgt. Willis thus allowed Defendants to act unlawfully and without fear of consequence or correction, as Sgt. Willis *himself* did and still does not understand the legal rights of Ms. Jones-MacDonald and her ex-husband. If he had been competent in his supervisory duties, he would have intervened in the unlawful arrest of Ms. Jones-MacDonald. If he had intervened, Ms. Jones-MacDonald would not have been wrongfully arrested and many of the egregious injuries she suffered could have been prevented or mitigated.

**C.    Sgt. Willis should have known that Ms. Jones-MacDonald sitting in her vehicle with her hands on the steering wheel is merely passive resistance, not active resistance.**

Sgt. Willis shockingly misunderstood the legal differences between passive and active resistance. He repeatedly confirmed his belief that Ms. Jones-MacDonald was *actively* resisting despite her conduct clearly being *passive*. He relied on this mistaken belief, and his aforementioned misunderstandings of the legal rights surrounding repossession, to justify the use of force deployed by Defendants Delgado and Ribbe

against Ms. Jones-MacDonald. He said that if Ms. Jones-MacDonald didn't get out of her vehicle when asked, Defendants:

1) should have put their hands on her (Willis Dep. at 00:58:00-00:58:15; Ex. 10 at Statement 5);

2) had the legal right to punch her twice in the face (Willis Dep. at 01:00:09-01:00:50; Ex. 10 at Statement 5); and,

3) were appropriate in their use of force when Defendant Ribbe slammed his knees on her legs, causing injury (Willis Dep. at 01:02:25-01:02:58; Ex. 10 at Statement 5).

Sgt. Willis went so far as to testify that Ms. Jones-MacDonald was *actively* resisting by not complying with verbal commands to exit the vehicle, holding on to the steering wheel of her vehicle, and telling officers to let her go. Willis Dep. at 00:55:16-00:57:02; Ex. 10 at Statement 1. Sgt. Willis also stated that, "whether you think it is right or wrong, you don't have the right to resist a police officer." Willis Dep. at 00:55:16-00:55:57; Ex. 10 at Statement 2; Dkt. 49 at 16.

This testimony is contrary to this Court already finding that Ms. Jones-MacDonald's resistance was merely *passive*, that she had no obligation to obey orders to exit her vehicle, and that she had a right to physically object to the repossession by sitting in her vehicle. Dkt. 49 at 12. It is also contrary to this Court also finding that Defendant Officers, which surely includes the on-scene supervisor Sgt. Willis should have determined that she was acting in self-defense when biting Delgado (Dkt. 49 at 16-18) and that Defendants had no probable cause to arrest her (Dkt. 49 at 8-18). Sgt. Willis should have corrected these mistakes and prevented her arrest. *See* Dkt. 49 at

15-18. If he has, she would not have been arrested and not suffered further injury and trauma from this incident.

Sgt. Willis's stated understanding, under oath, of active vs. passive resistance is in stark contradiction with well-established case law that any reasonable officer in his shoes is trained on. *See Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017) ("[F]or approximately the last thirty seconds before [Roger's] blow…Hanks stood facing away from Officer Rogers…Hanks's resistance 'was, at most, passive,' *Deville*, 567 F.3d at 167, and consisted chiefly of remaining on his feet for about twenty seconds after Officer Rogers' first order to kneel, during which time Hanks twice asked whether he was under arrest. We cannot conclude that a reasonable officer would have, under these circumstances, perceived an 'immediate threat' warranting a physical takedown.")[12]; *Deville v. Marcantel*, 567 F.3d 156, 167-168 (5th Cir. 2009) ("According to Deville's version of events, her resistance was, at most, passive in that she merely refused to leave her grandchild and exit the vehicle until Mr. Deville came to get the child -- not that she affirmatively, physically resisted as the officers contend.)[13].

Had Sgt. Willis been reasonably knowledgeable to the laws and rights surrounding active vs. passive resistance, he would have known that Defendants Delgado and Ribbe had no legal right to remove Ms. Jones-MacDonald from her vehicle or use force against

---

[12] Given that in *Hanks*, the Court concluded that ignoring commands of officers to kneel was passive resistance and did not warrant physical takedown, Sgt. Willis should have known that Ms. Jones-MacDonald ignoring commands of officers to get out of her vehicle was passive resistance and did not warrant physical force in removing her from her vehicle, yet he testified the opposite. *Hanks*, 853 F.3d at 746; Willis Dep. at 00:55:16-00:57:02.

[13] Given that in *Deville*, the Court concluded that refusing to leave one's car at a traffic stop was passive, not active resistance, Sgt. Willis should have known that Ms. Jones-MacDonald ignoring commands of officers to get out of her vehicle was passive resistance and did not warrant physical force in removing her from her vehicle, yet he testified the opposite. *Deville*, 567 F.3d at 167-168; Willis Dep. at 00:58:00-00:58:15, 01:00:09-01:00:50, 01:02:25-01:02:58.

her. He would have intervened in the situation before Ms. Jones-MacDonald was unlawfully arrested. This makes it clear that Sgt. Willis' supervisory failures caused Ms. Jones-MacDonald harm and injuries. This Court should at least permit Plaintiff to amend her complaint to include Sgt. Willis as a defendant.

## IV.    CONCLUSION

Plaintiff Deborah Jones-MacDonald respectfully requests this Court grant her Motion for Leave to File an Amended Complaint, and allow her to amend her complaint, adding Sgt. Willis as a Defendant for his individual actions and supervisory failures which caused Ms. Jones-MacDonald's injuries.

Respectfully submitted,

By: **_/s/ Drew Willey_**
Drew Willey
SBN: 24093371
P.O. Box 30317
Houston, Texas 77249
713-739-9455 (p)
713-510-1950 (f)
drew@law-dw.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, Drew Willey, certify by my signature below that the foregoing document was electronically filed with this Court on July 18, 2025, which constitutes service on Filing Users.

**_/s/ Drew Willey_**