# Exhibit 9

Subject Matter Expert Report by Keith Howse, 40-year experience, Texas law enforcement officer independent of Houston-area agency Influence

# Howse & Associates

### PUBLIC SAFETY CONSULTING SERVICES

99 Trophy Club Drive                                        (817) 988-8443
Trophy Club, Texas 76262                                    (817) 488-4901 (Fax)

February 3, 2025

Mr. Drew Willey
Attorney & Counselor at Law
P.O. Box 30317
Houston, Texas 77249

     RE: Deborah Jones-MacDonald Case

Dear Mr. Willey:

Enclosed is my report in the matter of Jones-MacDonald vs. Rolando Delgado, Jr., Charles Ribbe, and Harris County, Texas in the United States District Court for the Southern District of Texas-Houston Division. I have also enclosed my current CV and a case history which is incorporated into the report. Please let me know if you have any questions. I will update the report as necessary.

Respectfully,

*/s/ Keith A. Howse*

Keith A. Howse

**Report in the Matter of**

**Civil Action No. 4:23-cv-2871**

**DEBORAH JONES-MACDONALD,**
**Plaintiff,**

**vs.**

**ROLANDO DELGADO, JR., CHARLES RIBBE, and**
**HARRIS COUNTY, TEXAS,**
**Defendants.**

**United States District Court – Southern District of Texas, Houston Division**

The opinions released in this report are based upon a review of the facts, as thus far presented, along with the sources listed below, concerning the incident involving Ms. Deborah Jones-MacDonald and Harris County Sheriff's Office (HCSO) deputies Rolando Delgado, Jr. and Charles Ribbe. In reaching my opinions, I have relied upon forty-seven years of professional experience in the fields of public safety and law enforcement. My professional opinions expressed within this report are based upon a reasonable degree of certainty with regard to law enforcement professional standards, practices and training.

I have also relied upon seven years of undergraduate and graduate level academic studies in the fields of police science, criminal justice, criminology and law as well as my professional experience and certifications as a police officer, police instructor, field training officer, law enforcement agency training manager, and police executive.

I hold Basic, Intermediate, Advanced and Master peace officer certifications from the Texas Commission on Law Enforcement (TCOLE). Master certification is the senior-most law enforcement certification issued by TCOLE. In addition, I have held certifications as an Emergency Medical Technician, CPR instructor and Defensive Driving Instructor. I have testified and served as a police practices expert in State and Federal courts. Attached and incorporated is a copy of my CV which further outlines my education, training and experience and attests to my qualifications to evaluate the circumstances surrounding the above matter.

Items listed below are consistent with sources and documentation that are commonly and routinely inspected and reviewed as part of a law enforcement procedure or use of force investigation.

## SOURCES & DOCUMENTATION

The following sources and documentation were supplied, reviewed and/or analyzed during the preparation of this report:

- ❏ Plaintiff's First Amended Complaint;
- ❏ Plaintiff's First Set of Interrogatories, Requests for Admission, and Requests for Production;
- ❏ Opinion and Order of the Honorable Andrew M. Edison Signed on 09/30/2024;
- ❏ Body Worn Camera Video for HCSO Deputy Rolando Delgado, Jr.;
- ❏ Body Worn Camera Video for HCSO Deputy Charles Ribbe:
- ❏ HCSO Incident Report Case #2108-04883 by Deputy Rolando Delgado, Jr. dated 08/13/2021;
- ❏ HCSO Supplemental Report Case #2108-04883 by Deputy Charles Ribbe dated 08/13/2021;
- ❏ Personnel and Training Records for Deputy Rolando Delgado, Jr.;
- ❏ Personnel and Training Records for Deputy Charles Ribbe;
- ❏ Photographs of Ms. Deborah Jones-MacDonald's Injuries to Face and Body;
- ❏ Texas Penal Code;
- ❏ Texas Code of Criminal Procedure;
- ❏ Texas Business and Commerce Code;
- ❏ Texas Constitution;
- ❏ United States Constitution;
- ❏ Texas Commission on Law Enforcement (TCOLE) Course-Use of Force-Intermediate Course 2107 (Rev. 4/ 2005 and 4/2019);
- ❏ Texas Commission on Law Enforcement (TCOLE) Course-De-Escalation Techniques-Course 1849 (12/2017, Rev. 01/2018);
- ❏ Texas Commission on Law Enforcement (TCOLE) Basic Peace Officer Course Curriculum;
- ❏ Integrating Communications, Assessment and Tactics; A Training Guide for Defusing Critical Incidents; Police Executive Research Forum (01/2016);
- ❏ Remaining Civil: An Officer's Guide to Responding to Non-Criminal Calls for Service (2012), Texas Young Lawyers Association;
- ❏ International Association of Chiefs of Police (IACP) Law Enforcement Code of Ethics (10/1957).

### *INCIDENT SUMMARY*

On the morning of August 13, 2021 HCSO deputies responded to a disturbance involving a repossession call at the Pinnacle apartment complex, 10451 Huffmeister Road in Houston, Texas. Upon arrival Deputy Delgado, Jr. (Delgado) and Deputy Ribbe, encountered a vehicle repossession in progress. Deputy Delgado was informed by Mr. John Boswell, the repossession agent, that he was in the process of towing Ms. Jones-MacDonald's vehicle when Mr. Rodd MacDonald, the ex-spouse of Ms. Jones-MacDonald, saw what was going on and confronted the repossession agent.

Not wishing that his former spouse's vehicle be towed, Mr. MacDonald climbed on to the tow truck in an attempt to keep the vehicle from being towed away. The repossession agent showed deputies private paperwork from the lender authorizing the repossession.

Deputy Delgado and Deputy Ribbe told Mr. MacDonald to get off of the tow truck so the repossession agent could tow the vehicle away. When Mr. MacDonald refused, Deputy Delgado grabbed Mr. MacDonald by the arm resulting in Mr. MacDonald falling off of the tow truck and impacting the ground. Mr. MacDonald was then handcuffed and taken into custody by Deputy Ribbe and placed into an HCSO patrol unit.

While this was occurring, Ms. Jones-MacDonald arrived and proceeded toward her vehicle, entered her vehicle, and remained inside so the vehicle could not be towed away. Deputy Ribbe then confronted Ms. MacDonald and ordered her to get out of her vehicle, simultaneously, Deputy Ribbe grabbed her left arm and began pulling her out of her vehicle while Deputy Delgado grabbed her right wrist in efforts to physically remove her from her vehicle. As she was being physically pulled from the vehicle by both deputies, Ms. Jones-MacDonald bit Deputy Delgado on his right wrist to get him to release her. Deputy Delgado then punched Ms. Jones-MacDonald in her face (left side) two times. The deputies then continued to physically pull her from her vehicle forcing her to the ground. Ms. Jones-MacDonald was then handcuffed, arrested and charged with Simple Assault (on a peace officer) and subsequently booked into Harris County Jail. Mr. MacDonald was released from custody and the repossession agent towed the vehicle away.

The criminal charge of assault against Ms. Jones-MacDonald was subsequently dismissed on April 21, 2023.[1]

### SCOPE OF REVIEW

The scope and nature of this report is to provide an independent evaluation of the conduct of HCSO Deputy Delgado and HCSO Deputy Ribbe with regard to their interaction with Ms. Deborah Jones-MacDonald to determine whether their actions were consistent with professional standards and generally accepted practices and procedures of the law enforcement profession. The report is intended to assist the trier of fact with knowledge regarding police training, policies and generally accepted police practices and procedures.

### GENERAL ANALYSES & OBSERVATIONS

Prior to analyzing any use of force or seizure by a peace officer it is important to understand the realm in which peace officers operate. Texas peace officers, including Harris County Sheriff's deputies, are trained in arrest, search and seizure and the use of force while in the police academy and again throughout their careers during continuing education training.

Peace officers are trained that any use of force or deadly force must be reasonable for the circumstances and be immediately necessary. Peace officers are trained their use of force

---

[1] The Incident Summary is taken from documents and/or video thus far reviewed and is solely intended to give the reader a general understanding of the incident under review.

will be evaluated and reviewed based upon their agency's use of force policy and any applicable legal standards. Peace officers are trained in the basic police academy their use of force will be evaluated on an objectively reasonable basis from the position of a similarly trained and situated peace officer and based on information that was known to the officer at the time, considering the totality of the circumstances.[2]

All Texas peace officers are also trained on the Texas Constitution and the United States Constitution, with particular emphasis on the Fourth Amendment of the US Constitution which is stated below.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[3]

Texas peace officers also swear an oath prior to performing official peace officer actions.

> I, (name of officer), do solemnly swear (or affirm), that I will faithfully execute the duties of the office of (name of office, i.e. peace officer) of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.[4]

The law enforcement profession has adopted the Law Enforcement Code of Ethics to further guide peace officers in their duties.

Law Enforcement Code of Ethics

> As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

> I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential

---

[2] Graham v. Connor, 490 U.S. 386 (1989).
[3] U.S. Const., amend. IV.
[4] Example taken from Texas Constitution, Article XVI, Section 1.

nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession… law enforcement.[5]

Though this incident involved multiple HCSO deputies, this review will primarily consider the actions of Deputy Delgado and Deputy Ribbe during their interactions with Ms. Jones-MacDonald.

ANALYSES OF THE SEIZURE/ARREST//USE OF FORCE ACTIONS BY DEPUTY DELGADO AND DEPUTY RIBBE.

This evaluation of the seizure, arrest and use of force is based upon evidence submitted thus far for review, including the HCSO body worn camera videos taken at the scene. With regard to the seizure of, arrest of, and use of force on, Ms. Jones-MacDonald, I offer the following observations and opinions.

When discussing the arrest, seizure or application of force by a police officer against a citizen, it is important to note that peace officers are trained the totality of the circumstances must be considered as well as many other factors such as the applicable law, reasonableness and amount of force used and whether such force was immediately

---

[5] Law Enforcement Code of Ethics as adopted by the International Association of Chiefs of Police, October 1957. The IACP is headquartered at 44 Canal Center Plaza # 200 in Alexandria, Virginia 22314. Telephone 703-836-6767.   The Law Enforcement Code of Ethics has also been adopted by the Texas Commission on Law Enforcement, 6330 East Highway 290, Suite 200 in Austin, Texas78723. Telephone 512-936-7700 and is taught to all peace officers as part of the Texas Basic Peace Officer Course.

necessary, and whether there are any reasonable alternatives available to the use of force, such as attempting de-escalation tactics.

## Seizure of Vehicle

A review of the incident report submitted by Deputy Delgado shows that he was aware that his call for service involved a disturbance taking place as a result of an attempt to repossess a vehicle. Upon arrival, Deputy Delgado reported seeing the repossession in progress with a vehicle hooked up to a tow truck. The deputy also reported that he observed Mr. Rodd MacDonald sitting on the tow truck attempting to stop the towing.

Peace officers are trained they are to remain neutral when handling civil matters and their only role is to ensure the peace is maintained.[6]  Body worn camera video from the scene shows Deputy Delgado and Deputy Ribbe did not remain neutral in their actions despite their dealing with a civil matter (vehicle repossession).  Instead, deputies intervened and aided the repossession agent allowing the agent to tow the vehicle away only after the deputies detained and/or arrested Mr. and Ms. MacDonald.

The Texas Business and Commerce Code specifically cites that a repossession may be made pursuant to judicial process (judicial order) or without judicial process, if it can be done without a breach of the peace.[7]

Based upon a review of the facts as thus far submitted, the repossession agent was not performing the vehicle repossession pursuant to a judicial court order.[8]  In such a situation, peace officers are trained any such actions to repossess a vehicle may only be accomplished in a manner that does not cause a breach of the peace.

Deputy Delgado's body worn camera shows a disturbance is occurring (Mr. MacDonald and Ms. Jones-MacDonald having intervened in the repossession) by Mr. MacDonald sitting on the tow truck and Ms. Jones-MacDonald sitting in the vehicle. Further, Deputy Delgado stated in his incident report that he responded to a "disturbance".[9]  In my opinion, based upon my professional experience and training, a reasonable and similarly trained and situated peace officer would consider a disturbance to be a breach of the peace.

Indeed, it is common for police officers to be called to incidents involving the repossession of a vehicle.  These are often referred to as civil standbys.  Peace officers are trained that such incidents are between the parties and that civil court is the proper

---

[6] Texas County Sheriff Offices and County Constable Offices are charged with handling a multitude of civil matters such as civil process, evictions and asset seizures as opposed to municipal or other traditional police departments.

[7] Texas Business and Commerce Code, Section 9.609, Secured Party's Right to Take Possession After Default, Subsection  (b).

[8] Opinion and Order, Page 1, dated September 30, 2024, issued by the Honorable Andrew M. Edison, United States Magistrate Judge, United States District Court for the Southern District of Texas-Houston Division.

[9] HCSO Incident Report, Case 2108-04883, Page 4.

venue for resolution. Police officers should not assume one side, or the other, in such circumstances as a police officer is not a judicial arbiter.

For instance, a law enforcement training guide on vehicle repossessions, <u>Remaining Civil: An Officer's Guide To Responding To Non-Criminal Calls For Service</u>, states in part:

> The lender may perform a repossession without judicial notice if it is performed without a breach of peace. [10]

In my opinion, based upon the training provided to police officers, a reasonably trained and situated police officer would have recognized the facts that resulted in the initial improper seizure of Ms. MacDonald's vehicle and, absent any court order, would have advised the repossession agent that a vehicle may not be repossessed when there is a breach of the peace involved. The deputies knew, or should have known, to advise the repossession agent to return the vehicle for the time being and seek appropriate redress from either a court, or attempt to repossess the vehicle at such time when a breach of peace would not occur.

In my law enforcement career I responded to dozens of non-judicial vehicle repossession attempts that resulted in disturbances or interventions by interested parties. Based upon my professional training and experience, it is my opinion that the deputies' actions in seizing Ms. Jones-MacDonald, so the vehicle may be seized and towed away, were outside the scope of generally accepted law enforcement practices and procedures and were contrary to how peace officers are trained to deal with civil matters.

Such seizures by law enforcement officers may lead to a deprivation of the civil rights afforded to all citizens under the United States Constitution and Texas Constitution. This presents a fact question as to the reasonableness of the deputies' actions that is solely reserved for the judicial process.

## Arrest/Seizure/Use of Force Against Ms. Jones-MacDonald

As discussed, peace officers are trained they are only to use the amount of force reasonably and immediately necessary to make an arrest and that there are constitutional limits to a peace officer's authority. Officers are also trained they are responsible for the safety and welfare of those in their custody during any detention or arrest.

Texas peace officers are trained they must have reasonable suspicion and/or probable cause to believe a crime is being, has been, or will be committed in order to detain or arrest a citizen. Based upon my professional training and experience, and the evidence submitted thus far, it is my opinion that Deputy Delgado and Deputy Ribbe unquestionably seized Ms. Jones-MacDonald when they physically grabbed her and began pulling her from her vehicle without reasonable suspicion or probable cause that

---

[10] Remaining Civil: An Officer's Guide to Responding to Non-Criminal Calls for Service (2012), Texas Young Lawyers Association.

she committed any criminal offense, which is contrary to how peace officers are trained. Peace officers are trained such actions can lead to the deprivation of constitutionally protected rights against unlawful seizure. However, such determinations are squarely within the province of the judicial process.

When reviewing a use of force incident we must be careful not do so arbitrarily or through what is often referred to as 20/20 hindsight. However, based upon the evidence as submitted thus far, there is sufficient detail and information presented via body-worn camera video to observe Deputy Delgado's actions and Deputy Ribbe's actions and what was known, or should have been known, to the deputies at the time.

Peace officers receive training in the previously cited Graham v. Connor case so they can determine the nature and substance of any potential risk associated with a particular citizen encounter to determine whether force should be used. Commonly known as the Graham Factors, these include the following:

□ What was the severity of the offense that was being committed?

□ Was the suspect in possession of a weapon?

□ Was there an immediate threat to the officer's safety or the safety of others?

□ Was the suspect actively and physically resisting the officer?

□ Was the suspect evading or fleeing from the officer?

In addition, the following considerations are also commonly used to determine the necessity for the use force.

□ How many suspects were there? Was the officer alone and outnumbered, or were there additional officers on scene for back-up?

□ Was the officer outmatched due to the suspect's superior physical size or strength?

□ Did the suspect verbally threaten to harm the officer or another?

Because peace officers receive training on these use of force considerations and because there is body-worn camera video of Deputy Delgado and Deputy Ribbe using force against Ms. Jones-MacDonald, we are able to simply apply these teachings to the evidence, as thus far submitted, to determine if law enforcement training and procedures were followed.

For instance, during the deputies interactions with Ms. Jones-MacDonald, body worn camera videos show she did not pose a flight risk as her vehicle was secured to a tow truck; Ms. Jones-MacDonald did not possess any weapons; She was not initially actively or physically resisting the deputies (passive resistance only); She posed no immediate

threat to Deputy Delgado, Deputy Ribbe, or any other officers or other persons;  Deputies were not outnumbered; Body camera video does not show that Ms. Jones-MacDonald was physically stronger than Deputy Delgado or Deputy Ribbe; Ms. Jones-MacDonald never verbally threatened to harm deputies or any other officers.

However, Ms. Jones-MacDonald, an elderly female, verbally warned deputies to quit grabbing and pulling her out of the vehicle. As both deputies continued to physically pull her out of the vehicle, she bit Deputy Delgado's wrist (teeth marks only, no breakage of skin).  Based upon the body worn camera videos, Ms. Jones-MacDonald had not offered any immediate threat to the deputies until they physically grabbed her and began pulling her from her car.  Ms. Jones-MacDonald does not appear to commit any crimes prior to the deputies pulling her from her vehicle. She is only sitting in the vehicle. Based upon my professional training and experience, it is my opinion that Ms. Jones-MacDonald, more likely than not, was acting in her own self-defense to protect herself from the deputies' unwarranted and unnecessary physical manhandling of her.

Deputy Delgado admits he struck Ms. Jones-MacDonald in her face with his closed fist-twice. The deputy has asserted he did this for officer safety reasons and to protect himself.  However, alternatives to his use of force were available such as simply closing the vehicle door and creating distance between himself and Ms. Jones-MacDonald, or attempting to de-escalate the incident by using de-escalation and calming tactics to mitigate or eliminate the need to use force. Instead, Deputy Delgado chose to punch Ms. Jones-MacDonald in the face and head.

De-escalation training is a mandatory requirement for all Texas peace officers.[11] HCSO policy also requires deputies to use de-escalation tactics whenever possible, prior to using force. Policy 501-De-escalation and Response to Resistance states in part:

> Any use of force must be objectively reasonable. Employees are responsible for effectively articulating the need for force based on the totality of the situation. In every situation, the use of force should be avoided whenever it can reasonably be avoided. Employees will be held accountable for any unreasonable force.
>
> Employees are expected to de-escalate a situation whenever reasonably possible at all points before, during, and after an encounter without compromising their safety or law enforcement priorities.

Because alternatives to the use of force against Ms. Jones-MacDonald were available and there was no immediate threat to deputies prior to them grabbing and physically removing her from the vehicle, based upon my professional training and experience, it is my opinion that Deputy Ribbe's physical manhandling and grabbing of Ms. Jones-MacDonald was not immediately necessary and Deputy Delgado's strikes to her

---

[11] Texas Commission on Law Enforcement Course-De-Escalation Techniques -Course 1849 (12/2017, Rev. 01/2018); .

face/head were also unnecessary and retaliatory in nature and outside the scope of generally accepted law enforcement practices and procedures and were contrary to the way peace officers are trained.[12]

Peace officers are trained that unnecessary, retaliatory and excessive use of force can lead to the deprivation of civil rights afforded to all citizens under the United States Constitution and Texas Constitution. This presents a fact question that is solely reserved for the judicial process.

<u>ADDITIONAL CONSIDERATIONS/OBSERVATIONS</u>

First, during the course of the investigation, Deputy Ribbe's body worn camera video shows him talking to a possible witness and taking notes. However, the deputy's body camera video is on but the audio is off. Therefore we are unable to determine what the witness said. The offense report submitted for review does list a witness as Katherine Jeane Porter. However, there is no witness statement or content included in the report and, at this time, no way to determine if the witness statement supports or refutes the deputies' versions of events in their reports.  HCSO Policy 618-Body Worn Cameras states in part:

> VIII.    Required Recordings
>
> A.        Body worn cameras should be activated for a law enforcement purpose only. In general, a law enforcement purpose must fall into at least one of the following categories to mandate recording –
>
> 1.         Enforcement action(s),
>
> 2.         Use of law-enforcement authority,
>
> 3.         Liability protection,
>
> 4.         Active participation in an investigation, or
>
> 5.  Any other event, particularly one that occurs in Detention Command in a secure facility, that taken by itself could result in significant harm to and/or legal liability for the department, employee, or another person, that is not or cannot be adequately documented by other means. Routine operations in a secure facility not meeting these criteria will not require BWC activation.

---

[12] Photographs of Ms. Jones-Macdonald show significant bruising to the left side of her head as well as significant swelling to her legs and knees

B.  Employees issued a BWC must begin recording before making contact with any public member for a law enforcement purpose, including any incident or interaction that may result in a report, enforcement action, or serve as evidence in a criminal or civil investigation.

Based upon the evidence as thus far presented, Deputy Ribbe did not appear to comply with the HCSO policy on body worn cameras when conducting his investigation and interviewing a witness. This is problematic as witness interviews can contain potentially exculpatory details. Based upon my professional training and experience, failing to record or otherwise obtain available witness statements is outside the scope of generally accepted law enforcement practices.

Second, during the course of the investigation Deputy Ribbe submitted a supplemental report on the incident. However, based upon the evidence as thus far submitted, there is no mention in Deputy Ribbe's supplemental report of Deputy Delgado punching Ms. Jones-MacDonald in the face. Peace officers are trained they are to report any observed use of force. HCSO Policy 501-De-escalation and Response to Resistance states in part:

VII: Duties and Responsibilities

D. Reporting the Observed Use of Force:

Employees who have observed the use of force by another employee must promptly report the observed use of force to an on-duty supervisor, and complete a supplement report to the involved employee's report of what was observed. Failure to report an observed use of force may lead to disciplinary action, loss of employment, and referral for possible prosecution.

Third, during the course of the investigation Deputy Delgado's body worn camera video shows a decal affixed to the mobile data computer in his patrol vehicle. The decal depicts RoboCop pointing a large, somewhat futuristic looking handgun in a threatening manner.[13]  While this may appear to be unrelated to this matter, it should not be dismissed as it is important to note the RoboCop character famously served as Judge, Jury and Executioner in the futuristic world of law enforcement.  It is not lost that Deputy Delgado acted as Judge and Jury in this matter for the reasons previously discussed.

Based upon my professional experience and training such an expression is unprofessional at least, but may also serve to express Deputy Delgado's philosophy of how he performs his law enforcement duties for the HCSO. This may also be an indicator of Deputy Delgado's interpretation of HCSO law enforcement and use of force philosophy and policies, which may serve to ratify the existence of an excessive use of force or aggressive policing strategy by HCSO and their deputies. While perhaps it is a whimsical

---

[13] RoboCop is a science-fiction movie portraying the future of policing (Orion Pictures 1987).

expression, having it placed on the official HCSO mobile data terminal may consciously, or sub-consciously, have an effect on the behavior of Deputy Delgado, as well as other HCSO deputies in the field.

Fourth, during the course of the investigation body worn camera video shows HCSO Supervisor, Sergeant S.R. Willis arrive on scene. Sergeant Willis is seen talking to Deputy Delgado and Deputy Ribbe, yet despite the concerns illustrated in this report, the actions of the deputies appear to be approved and ratified by the HCSO supervisor. However, as of the writing of this report, no supplemental or use of force report documentation completed by Sergeant Willis, if any, has been submitted for review. HCSO Policy 501 states in part:

E.    Further Reporting of Use of Force Incidents:

1.    Supervisory Personnel:

When notified of a use of force incident that resulted in serious bodily injury or death, the supervisor must ensure the Internal Affairs Division (IAD) is notified. The supervisor must also notify the chain of command immediately. Notifying the immediate supervisor will be sufficient as he or she will continue the notification up the chain of command.

a. Supervisors will be responsible for entering the use of force in the Blue Team online application. The supervisor will enter one report per incident and include all personnel involved in the incident.

b. Use of force incidents involving an in-custody inmate will require supervisors to follow the reporting requirements in Detention Command SOP #307.

c. Prior to accepting the report of the incident from the reporting party, the supervisor is responsible for conducting a review of the report for accuracy and thoroughness, and will also ensure:

d. Relevant documents including, but not limited to, incident reports, MFR reports, photos, videos, CED downloads, E-1 injury reports, inmate statements, inmate medical receipts, and Inmate Service confirmations, are gathered and uploaded into Blue Team; and

e. The completed use of force documentation is received by the Watch Commander within 14 days of the use of force incident. The offense report and any supplements will be completed in timely fashion per HCSO Policy #601 (Reports). The Watch Commander will be notified of a use of force on their watch as soon as possible by the first line supervisor.

A Division Commander may extend this time as needed to ensure a complete investigation and review.

2. A first line supervisor completing or assisting in the completion of a Blue Team will review the video of deputies who were involved in or who witnessed the use of force. This will be done by viewing the video on the employee's body worn camera or vehicle tablet, or through the Polaris digital evidence system. The file numbers of the videos reviewed along with the unit numbers and names of the employee (s) will be included in the Blue Team narrative.

Based upon the evidence thus far submitted, there is no HCSO Internal Affairs Division case file or other documentation showing if this use of force incident was properly investigated and reviewed by HCSO.

Fifth, Deputy Delgado's body worn camera shows he contacted the Harris County District Attorney's Office Intake Attorney (IA) in an effort to see if he could file charges against Ms. Jones-MacDonald. Based upon my professional training and experience, Deputy Delgado provided misleading information during the conversation that, more likely than not, provided the IA with an incorrect characterization of the scene and events.

For instance, Deputy Delgado told the IA that Ms. Jones-MacDonald was in the vehicle being belligerent and that the deputies "talked to her a little bit" and told her she had to get out of the vehicle before the deputies physically pulled her from the vehicle.[14] However, Deputy Ribbe's body worn camera contradicts Deputy Delgado's statements to the IA because Deputy Ribbe's video clearly shows Deputy Ribbe open the driver's side door and immediately grab Ms. Jones-MacDonald and start to pull her out of her vehicle without telling her she needed to get out of the vehicle or otherwise talking to her a little bit. To be clear, Deputy Ribbe only ordered Ms. Jones-MacDonald out of the vehicle after he had already grabbed Ms. Jones-MacDonald and began pulling her out.[15]

Peace officers are trained to be truthful in their official actions and official reports. Reporting events in a light that is most favorable to the peace officer can result in unnecessary or incorrect criminal charges. Based upon my professional training and experience, Deputy Delgado's lack of truthfulness is outside the scope of generally accepted law enforcement practices and procedures and is contrary to how peace officers are trained.

Sixth, though not a party to this legal action, it must be noted that prior to Deputy Delgado and Deputy Ribbe using force against Ms. Jones-MacDonald, they initially encountered Mr. Rodd MacDonald when they arrived on scene. He was sitting on the boom of the tow truck preventing the vehicle from being towed away. Body worn camera

---

[14] Deputy Delgado's body worn camera video at 07:25 (approximate mark).
[15] Deputy Ribbe's body worn camera video at 06:46 (approximate mark).

video shows Deputy Delgado telling Mr. MacDonald to get off of the tow truck because the repossession agent is legally entitled to tow the vehicle away. When Mr. MacDonald challenges the deputies that a breach of peace is occurring and the vehicle cannot be repossessed under those circumstances, Deputy Delgado grabs Mr. MacDonald in an effort to physically remove him from the tow truck so the repossession may continue. This caused Mr. MacDonald to fall from the tow truck onto the ground. He was then handcuffed and placed in detention in an HCSO patrol vehicle, though he was subsequently released from custody without charges.

Body worn camera video shows Mr. MacDonald became verbally upset after being forced off of the tow truck. However, applying the same Graham factors as discussed with the use of force against Ms. Jones-MacDonald, it is clear that Mr. MacDonald, an elderly male, did not pose a flight risk and never attempted to flee from deputies; Mr. MacDonald did not possess any weapons; He was not actively or physically resisting the deputies (passive resistance only); He posed no immediate threat to Deputy Delgado, Deputy Ribbe, or any other officers or other persons;  Deputies  were not outnumbered; Body camera video does not show that Mr. MacDonald  was physically stronger than Deputy Delgado or Deputy Ribbe; Mr. MacDonald never verbally threatened to harm deputies or any other officers or persons.

Based upon the evidence as thus far submitted, and based upon my professional training and experience, it is my professional opinion the use of force against Mr. MacDonald was a precursor to the use of force against Ms. Jones-MacDonald. It is also my professional opinion that force used against Mr. MacDonald was contrary to how peace officers are trained and was outside the scope of generally accepted law enforcement practices and procedures.

*SUMMARY*

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on the use of force against individuals with regard to protecting the constitutional rights of all persons.  For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained with regard to the use of de-escalation tactics and protecting the constitutional rights of all persons.  For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures and contrary to HCSO policy.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on arrest and seizure procedures of individuals with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on how to handle civil disputes and repossession of vehicles and property with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and his actions are contrary to the way peace officers are trained, that is, to be truthful in any official proceedings with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Delgado are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained with regard to professional conduct by placing a RoboCop decal on an official HCSO device suggesting a Judge, Jury and Executioner philosophy approach to law enforcement with regard to the protection of the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Delgado was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on the use of force with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained with regard to the use of de-escalation tactics and protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures and contrary to HCSO policy.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on arrest and seizure procedures of individuals with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe are inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on how to handle civil disputes and repossession of vehicles and property with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe omitting, from his official report, any mention that Deputy Delgado punched Ms. Jones-MacDonald in the face is inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained and contrary to HCSO policy. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures.

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Deputy Ribbe muting his body-worn camera when contacting a witness to a law enforcement investigation is contrary to HCSO policy. For the reasons discussed within this report, it is my opinion the conduct exhibited by Deputy Ribbe was outside the scope of generally accepted law enforcement training, practices and procedures

Based upon my professional training and experience, and on the evidence thus far submitted for review, the actions of Sergeant S.R. Willis by approving the repossession and seizure of Ms. Jones-MacDonald's vehicle and approving of her arrest, and possibly the use of force against her (substantive reports, if any, prepared by Sergeant Willis not

yet submitted for review) is inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers and supervisors are trained. For the reasons discussed within this report, it is my opinion the conduct exhibited by Sergeant Willis was outside the scope of generally accepted law enforcement training, practices and procedures and may be contrary to HCSO policy.

Based upon my professional training and experience, and on the evidence thus far submitted for review, HCSO failed to adequately train and supervise HCSO deputies on the proper handling of civil vehicle repossessions. It is my professional opinion this served to be the catalyst of Ms. Jones-MacDonald being arrested and injured, as at least three deputies (Deputy Delgado, Deputy Ribbe, and Sergeant Willis) were either unaware of proper procedure regarding civil vehicle repossessions, or intentionally disregarded the proper procedures. This is inconsistent with the Law Enforcement Code of Ethics, the officer's sworn oath of office, and is contrary to the way peace officers are trained on how to handle civil disputes and repossession of vehicles and property with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion that such failure to train and supervise was outside the scope of generally accepted law enforcement training, practices and procedures.

My aforementioned opinions are based on a reasonable degree of certainty, having reviewed the evidence as thus far submitted, and are based upon my forty-seven years of law enforcement and public safety experience and training and what was known to officers at the time and how a reasonable, similarly trained and similarly situated peace officer would react given generally accepted training and law enforcement procedures when considering the totality of the circumstances. However, questions of fact and determinations of reasonableness are left to be evaluated by a fair and impartial civil justice system.

I reserve the right to review, modify or update my opinions based upon the introduction or withdrawal of any developed information relevant to the facts presented in this case.

Respectfully submitted on February 3, 2025.


/s/ *Keith A. Howse*
Keith A. Howse

STATEMENT OF COMPENSATION

I have charged professional consulting fees to review this case and to prepare this report. Consulting fees are charged at the rate of $175 per hour. Deposition and trial testimony fees are charged at the rate of $300 per hour.

DECLARATION

My name is Keith A. Howse, my date of birth is 05-09-1960 and my address is 99 Trophy Club Drive Trophy Club, Texas, United States of America. I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Tarrant County, State of Texas, on the 3rd day of February, 2025.

*/s/Keith A. Howse*
Keith A. Howse

# Keith A. Howse
99 Trophy Club Drive
Trophy Club, Texas 76262
(817) 988-8443

| | |
|---|---|
| **Education** | Texas Wesleyan University School of Law – Fort Worth, Texas
(Now Texas A & M University School of Law)
Doctor of Jurisprudence – 1998 |

University of Texas at Arlington – Arlington, Texas
Bachelor of Arts in Criminology and Criminal Justice – 1995

Del Mar College – Corpus Christi, Texas
Associate of Applied Sciences in Police Science - 1980

Center for American and International Law
Institute for Law Enforcement Administration – Plano, Texas
School of Police Supervision – 1990

**Professional Experience**

Howse & Associates
99 Trophy Club Drive
Trophy Club, Texas 76262

**Principal Consultant & Investigator (2000 – Present)**
Provide professional criminal and civil investigative services for private and government clients throughout Texas. Conduct national security and public trust related background investigations on behalf of the United States Government. Provide public safety consulting services in matters of security and police practices, use of force, arrest, search and seizure, premises liability, inadequate security, and crime foreseeability. Serve as subject matter expert in State and Federal courts on issues involving law enforcement and security practices.

Baylor Department of Public Safety
3500 Gaston Avenue
Dallas, Texas (1982 - 2007)

**Director - Public Safety/Assistant Chief of Police (1997 - 2007)**
Provided direction and leadership to the 249 personnel of the Baylor Health Care System Department of Public Safety (BDPS), a special district police agency serving two urban planned development districts in Dallas, Texas known as Baylor University Medical Center, consisting of healthcare, academic, commercial, high-rise office, retail, multi-family residential, hotel, private/public parking, and special use properties. Managed comprehensive public safety program responsible for law enforcement, security, parking/traffic management, traffic safety, and emergency/fire safety planning programs. Provided senior management and budget accountability for all aspects of police and security services for 57 armed police officers and 140 unarmed security officers, plus support staff. Served as BDPS legal advisor for police and security matters. Reviewed all arrest and offense reports for accuracy and legality. Chaired Department Use of Force Review Committee. Testified before various state commissions on law enforcement related matters and monitored state legislative sessions to review proposed legislation impacting law enforcement operations.

20

**Captain of Police (1991 - 1997)**
Directed and managed personnel in the Support Services Division, including Training and Personnel, Firearms, Crime Prevention and Fire Prevention, and Security Technology Applications. Additional duties included planning and research, quality assurance and defensive driving coordinator, and community services programs. Instructed basic and in-service public safety related training programs to all DPS personnel. Served as training manager for the department and emergency management coordinator for natural and civil disasters. Approved all arrests and criminal offense reports as they related to the use of force by police and security officers.

**Lieutenant of Police (1986 - 1991)**
Managed the crime prevention and fire prevention unit as well as Parking & Traffic Division. Conducted fire/life safety inspections and educational programming. Managed recruiting and applicant testing to establish a qualified and diverse public safety workforce and conducted criminal investigations as assigned. Served as a patrol commander supervising one watch of police and public service officers. Performed as Field Training Officer for new recruits. Provided patrol services and approved all arrests and criminal offense reports.

**Corporal/Emergency Medical Technician - Field Training Officer (1985 - 1986)** Provided field training to new officers and functioned as weekend patrol supervisor. Prepared and reviewed daily incident reports and handled citizen complaints and inquiries. Performed routine patrol and first response emergency medical duties and criminal investigations as needed.

**Public Service Officer (1982 - 1985)**
Patrolled designated areas on foot and in marked patrol vehicles to deter and respond to criminal activity. Prepared detailed written reports concerning arrests and testified in court as necessary. Provided customer service such as motorist assistance, safety escorts and general assistance to members of the campus community. Served as relief dispatcher as needed.


Braniff International Airways, Inc.
Dallas-Fort Worth Airport, Texas (1981 - 1982)

Note: The company was declared bankrupt and dissolved in late 1980s.

**Lead Trainer  (December 1981- March 1982)**
Provided FAA approved security training to security screeners on the recognition and detection of weapons and explosives concealed on passengers and in passenger luggage.

**Security Screener  ( January 1981- December 1981)**
Screened passenger baggage for dangerous items, weapons, explosives and other prohibited materials at terminal security checkpoints.

**Current & Past Licenses and Certifications**

| | |
|---|---|
| Attorney & Counselor at Law | State Bar of Texas |
| Master Peace Officer Certification | Texas Commission on Law Enforcement |
| Advanced Peace Officer Certification | Texas Commission on Law Enforcement |
| Intermediate Peace Officer Certification | Texas Commission on Law Enforcement |
| Basic Peace Officer Certification | Texas Commission on Law Enforcement |
| Police Instructor | Texas Commission on Law Enforcement |
| Crime Prevention Inspector | Texas Commission on Law Enforcement |
| Security Manager | Texas DPS Private Security Bureau |
| Private Investigator | Texas DPS Private Security Bureau |
| Certified Protection Professional (CPP) | American Society for Industrial Security (ASIS) International |

**Professional Awards & Recognition**

Live-Saving Award
Meritorious Conduct Award
Academic Achievement Award
Director's Award
IACP National Civil Rights Recognition


**Current & Past Professional Affiliations**

American Bar Association
American Society for Industrial Security (ASIS) International
International Association of Chiefs of Police
International Association of Campus Law Enforcement Administrators
Institute for Law Enforcement Administration – Center for Law Enforcement Ethics
Texas Association of Licensed Investigators
Boy Scouts of America


**Government Security Clearances**

Top Secret (United States Department of Defense)

## Specialized Training & Continuing Education

Basic Police Academy
        North Central Texas Council of Governments Regional Police Academy-Arlington, Texas

Crime Prevention Inspector School (Commercial Business and Residential Security Assessments)
        Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Advanced Crime Prevention School
        Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Crime Prevention Through Environmental Design
        University of Louisville – Louisville, Kentucky

School of Police Supervision
        Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Advanced Management College
        Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Instructor School
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Field Training Officer School
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Sex Crimes Investigation School
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Crime Scene Investigation
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Use of Force
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Child Abuse Investigation
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Presidential Protection Detail Training Program
        United States Secret Service – Austin, Texas

Arrest, Search & Seizure
        North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Management of Aggression, Violence, & Intoxication Instructor Program
        Texas Hospital Association – Austin, Texas

Emergency Medical Technician – Basic School
        Baylor University Medical Center – Dallas, Texas

Defensive Driving Instructor Course
        National Safety Council – Dallas, Texas

CPR Instructor Course
        American Heart Association – Dallas, Texas

Explosives Recognition & Structural Firefighting Course
  Texas Engineering Extension Service, Texas A&M – College Station, Texas

Sixth Annual International Terrorism Seminar
  North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Police Personnel Recruitment & Selection Course
  North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Healthcare Security & Safety Management
  American Society of Hospital Engineering – Manhattan Beach, California

NCIC/TCIC Policy and Procedures
  Texas Department of Public Safety – Austin, Texas

Family Violence Investigation
  Baylor Health Care System Police – Dallas, Texas

Police Cultural Diversity
  Baylor Health Care System – Dallas, Texas

Police Contemporary Issues Conference – Use of Force/Police Pursuit
  Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Contemporary Issues Conference – Quality Management
  Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Compstat Crime Statistics Course
  Los Angeles Police Department – Los Angeles, California

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – Orlando, Florida

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – San Diego, California

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – New Orleans, Louisiana

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – San Antonio, Texas

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – Dallas, Texas

International Association of Chiefs of Police Annual Conference
  Police Continuing Education – Los Angeles, California

International Association of Chiefs of Police Annual Conference
  Police Continuing Education – Salt Lake City, Utah

International Association of Chiefs of Police Annual Conference
  Police Continuing Education – Charlotte, North Carolina

International Association of Chiefs of Police Annual Conference
  Police Continuing Education – Philadelphia, Pennsylvania

International Parking Institute Annual Conference
  Parking Management Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – Los Angeles, California

Warrantless Searches
  State Bar of Texas – Dallas, Texas

The Right of Police to Investigate
  State Bar of Texas – Dallas, Texas

Police Excessive Force/Police Pursuit
  State Bar of Texas – Dallas, Texas

USA Patriot Act
  State Bar of Texas – Dallas, Texas

Consequence of Illegal Immigration/Guns, Drugs, Illegal Aliens
  State Bar of Texas – Dallas, Texas

White Collar Crime Within the Healthcare Industry
  State Bar of Texas – Dallas, Texas

White Collar Crime and Federal Investigations
  State Bar of Texas – Dallas, Texas

Internet and Computer Crimes
  State Bar of Texas – Dallas, Texas

Police Training & Governmental Liability
  State Bar of Texas – Dallas, Texas

DWI & Breath and Blood Testing
  State Bar of Texas – Dallas, Texas

Police Practices – Arrest, Search & Seizure
  State Bar of Texas – Dallas, Texas

Immigration Law Enforcement
  State Bar of Texas – Dallas, Texas

Prosecution of Criminal Cases in a Corporate Environment
  State Bar of Texas – Dallas, Texas

Crime Scenes & Prosecutions
  State Bar of Texas – Dallas, Texas

Arrest, Search & Seizure – US Supreme Court Update
  State Bar of Texas

National Training Standards for Federal Background Investigators

Keypoint Government Solutions – Loveland, Colorado

Human Trafficking
Texas Commission on Law Enforcement – Austin, Texas

Advanced Human Trafficking
OSS Academy – Austin, Texas

Legal Update
Texas Commission on Law Enforcement – Austin, Texas

Open Carry Law Update
Texas Commission on Law Enforcement – Austin, Texas

Civil Disturbance & Riot Control
OSS Academy – Austin, Texas

Recording Law Enforcement Actions
OSS Academy – Austin, Texas

Eyewitness Evidence
OSS Academy – Austin, Texas

De-Escalation of Force
OSS Academy – Austin, Texas

Negotiator Tactics
OSS Academy – Austin, Texas

Psychological Evaluations in Criminal & Civil Cases
State Bar of Texas – Austin, Texas

Use of Deadly Force in Texas
State Bar of Texas – Austin, Texas

Fourth Amendment Legislative Update
State Bar of Texas – Austin, Texas

Use of Force: Police Perspective
State Bar of Texas – Austin, Texas

Human Trafficking & the Criminal Justice System
State Bar of Texas – Austin, Texas

Illegal Evidence: Wiretapping/Hacking & Data Interception
State Bar of Texas – Austin, Texas

Electronic Control Device-Basics
OSS Academy-Austin, Texas

Recent Case History – Keith A. Howse

The following represents the cases in which I have testified in court or by deposition as an expert in the last five years.

Barbara Coats, et al. v. Harris County, et al. Houston, Texas (2017) – 61st Judicial District Court – Harris County, Texas – Cause No. 2012-55551 – Police Procedure - Police Training –Use of Deadly Force

Parker v. Briggs of De Gaulle, Inc., New Orleans, Louisiana (2017) – Civil District Court for the Parish of Orleans – Cause 2011-4030 – Security Procedure

Flowers v. JKS Security, et al. Dallas, Texas (2018) – 162nd Judicial District Court – Dallas County, Texas – Cause No. DC-16-09855 – Police Procedure-Security Procedure

Ruda v. State of New Jersey, et al. – Superior Court of New Jersey-Somerset County Division, New Jersey, (2020) - Docket No. SOM-L-533-17 – Security Practice & Procedure

Holman v. Harris County, et al. – Houston, Texas (2019) – United States District Court, Southern District of Texas-Houston Division-Civil Action 4:17-CV-01745 – Police Procedure-Use of Force

Ida Renae Nobles, et al. v. Sergeant Richard Egal, et al. – Austin, Texas (2021) United States District Court, Western District of Texas-Austin Division – Civil Action 1:19-CV-00389 – Police Procedure-Use of Deadly Force

Stephen Bryant III v. Galveston County, Texas, et al. – Galveston, Texas (2022) United States District Court, Southern District of Texas, Galveston Division – Civil Action No.:3:20-CV-374 – Police Procedure-Use of Force

Brian King v. Village of Potsdam, New York, et al. – Potsdam, New York (2022) United States District Court – Northern District of New York – Civil Action No. 8:2020CV-00849 – Police Procedure-Use of Force

Blanca Gomez v. City of Lyford, Texas, et al. – Lyford, Texas (2023) United States District Court – Southern District of Texas-Brownsville Division – Civil Action 1:22-CV-00036 – Police Procedure-Use of Deadly Force

Jessica Arellano v. City of Austin, et al. – Austin, Texas (2023) United States District Court – Western District of Texas – Austin Division – Civil Action Cause of Action No. 1:23-cv-8 – Police Procedure-Use of Deadly Force


Rene Trevino v. Joel Avalos, et al. – Harlingen, Texas (2024) United States District Court – Southern District of Texas – Brownsville Division – Civil Action No. 1:24-cv-46 – Police Procedure-Use of Force