# Exhibit 10

Chart of Willis Statements Compared to This Court's Opinion, Fact, and Law

**Chart of Willis Statements Compared to This Court's Opinion, Fact, and Law**

| STATEMENT NUMBER | WILLIS'S STATEMENTS | COURT'S OPINION/CASE LAW |
|---|---|---|
| 1 | Ms. Jones-MacDonald was actively resisting by not complying with verbal commands to exit the vehicle, holding on to the steering wheel of her vehicle, and telling officers to let her go. Willis Dep. at 00:55:16-00:57:02. | "**[Ms. Jones-MacDonald's] resistance was initially passive—leaning away from Ribbe and grasping her own steering wheel**— until the Deputies initiated physical contact." Dkt. 49 at 15<br><br>"[N]o reasonable officer could have believed that Plaintiff was in violation of failing to follow a deputy's instruction because no instruction was given. Ribbe and Delgado both eventually shouted at Plaintiff to get out of her vehicle as they struggled with her. But **Plaintiff was under no obligation to obey those commands because they were not lawful orders.**" Dkt. 49 at 12<br><br>*Hanks v. Rogers*, 853 F.3d 738 at 746 (5th Cir. 2017) ("[F]or approximately the last thirty seconds before [Roger's] blow…Hanks stood facing away from Officer Rogers…Hanks's resistance 'was, at most, passive,' *Deville*, 567 F.3d at 167, and consisted chiefly of remaining on his feet for about twenty seconds after Officer Rogers' first order to |

|  |  |  | kneel, during which time Hanks twice asked whether he was under arrest. We cannot conclude that a reasonable officer would have, under these circumstances, perceived an 'immediate threat' warranting a physical takedown."). In *Hanks*, the Court concluded that ignoring commands of officers to kneel was passive resistance and did not warrant physical takedown. Ms. Jones-MacDonald ignoring commands of officers to get out of her vehicle was passive resistance and did not warrant physical force in removing her from her vehicle. *Deville v. Marcantel*, 567 F.3d 156, 167-168 (5th Cir. 2009) ("According to Deville's version of events, her resistance was, at most, passive in that she merely refused to leave her grandchild and exit the vehicle until Mr. Deville came to get the child -- not that she affirmatively, physically resisted as the officers contend. Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. *See Mecham v. Frazier*, 500 |
|---|---|---|---|

|  |  | F.3d 1200, 1205 (10th Cir. 2007); *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006). However, officers must assess not only the need for force, but also "the relationship between the need and the amount of force used." *See Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Taking the facts in the light most favorable to plaintiffs, a jury could reasonably find that the *degree* of force the officers used in this case was not justifiable under the circumstances…Deville's deposition testimony that Marcantel engaged in very little, if any, negotiation with her -- and find that he instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle."). In *Deville*, the Court concluded that refusing to leave one's car at a traffic stop was passive, not active resistance. Ms. Jones-MacDonald ignoring commands of officers to get out of her vehicle was passive resistance and did not warrant physical force in removing her from her vehicle.<br><br>"A jury could find that Cobbins's response to the officers' orders was, at most, passive: a failure to |
| --- | --- | --- |

| | | | immediately exit the vehicle and a failure to immediately put his hands behind his back while pinned by numerous officers to the ground." *Cobbins v. Sollie*, No. 22-30692, 2023 U.S. App. LEXIS 14807, *12 (5th Cir. June 14, 2023). Similar to Ms. Jones-MacDonald not exiting the vehicle immediately and not putting her hands behind her back/ struggling once on the ground.<br><br>"A reasonable jury could conclude a reasonable officer would have found any use of force unnecessary. Under the totality of the circumstances as alleged by Plaintiff—that is, a mid-day traffic stop where the suspect was a petite woman seated in her vehicle who was not attempting to flee or actively resist—an officer at the scene would have found pulling the woman from her vehicle, swinging her body around in the air so her legs collided with another vehicle, and slamming her to the ground to be objectively unreasonable….Under Plaintiff's version of the facts, Officer Richter stopped Plaintiff for a minor traffic offense, **Plaintiff was seated in** |
|---|---|---|---|

| | | |
|---|---|---|
| | | her vehicle posing no immediate flight risk or threat, and she offered only passive resistance. A reasonable officer would have known abruptly resorting to overwhelming physical force rather than continuing verbal negotiations was unlawful in such a situation." *King v. City of Austin*, No. A-16-CA-1020-SS, 2018 U.S. Dist. LEXIS 72976, *19-21 (W.D. Tex. May 1, 2018). Similar to Ms. Jones-MacDonald as she was merely sitting in her car when she was suddenly approached by officers and pulled out of her vehicle, before being slammed to the ground. As well, she was merely ignoring commands of officers. Any resistance was in self defense/protection<br><br>"But viewed in the light most favorable to Garcia, he **exhibited only passive resistance—not offering up his hands and questioning the officers' authority to arrest him…**" *Garcia v. City of Buda*, No. 1:17-CV-377-RP, 2018 U.S. Dist. LEXIS 213172, *18 (W.D. Tex. Dec. 19, 2018). Similar to Ms. Jones-MacDonald not |

|  |  |  |
|---|---|---|
|  |  | exiting the car or providing her hands to officers and questioning their authority. |
| 2 | "Whether you like it or not, you don't have the right to resist a police officer." Willis Dep. at 00:55:16-00:55:57. | "[N]o reasonable officer could have believed that Plaintiff was in violation of failing to follow a deputy's instruction because no instruction was given. Ribbe and Delgado both eventually shouted at Plaintiff to get out of her vehicle as they struggled with her. But **Plaintiff was under no obligation to obey those commands because they were not lawful orders.** It can be assumed . . . that some police commands will subject a citizen to prosecution for disobeying whether or not the citizen knows why the order is given. Illustrative examples include when the police tell a pedestrian not to enter a building and the reason is to avoid impeding a rescue team, or to protect a crime scene, or to secure an area for the protection of a public official. **It does not follow, however, that any unexplained police order must be obeyed without notice of the lawfulness of the order.**" Dkt. 49 at 12-13. |

| | | |
|---|---|---|
| 3 | Since officers were on the scene in question for a disturbance and not a tow, there was no need to verify whether there was a Court Order for repossession of Ms. Jones-MacDonald's vehicle. Willis Dep. at 00:48:56-00:50:03.; and,<br><br>HCSO does not get involved in verifying the legality of a tow, due to that being a civil law matter, and officers are not supposed to verify the legality of a tow. Willis Dep. at 00:48:56-00:50:03. | "It is well settled that police officers who perform civil standbys to keep the peace during a private party's repossession of property when right to possession of that property is disputed are not state actors if they act only to keep the peace, "but they cross the line if they affirmatively intervene to aid the repossessor…. [O]fficers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." Marcus, 394 F.3d at 819. **Here, the repossession of Plaintiff's vehicle would not have occurred but for the Deputies' actions in "stopping [Plaintiff and her ex-husband] from preventing [the Repo Man] from doing his job."** Ribbe Video at 2:39–2:41. Both Deputies put their hands on Plaintiff, physically removing and restraining her from lawfully and peacefully resisting the repossession of her property. "Nothing in the law gives police a . . . right to provide affirmative aid to a [repossessor] who goes onto another's property and removes items to which ownership is disputed." Poteet, 218 S.W.3d at 789. **The Deputies contend they removed Plaintiff from her vehicle "to maintain the** |

| | | |
|---|---|---|
| | | peace." Dkt. 24 at 15. But the peace had already been breached when the Repo Man persisted with his self-help repossession over objection and confrontation. See Chapa v. Traciers & Assocs., 267 S.W.3d 386, 391–95 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (observing that "the creditor who elects to pursue nonjudicial repossession assumes the risk that a breach of the peace might occur" and concluding that the peace is not breached when the repossession is accomplished "without objection or confrontation"). The Repo Man was not ready to tow Plaintiff's vehicle when the Deputies arrived on the scene. Both videos show that the Repo Man necessarily disconnected Plaintiff's vehicle from the tow truck in order to reposition the tow truck so that Plaintiff's vehicle could be towed from the front. During this repositioning, Plaintiff got into her own vehicle to lawfully and peacefully resist the self-help repossession. Plaintiff "asserted her right to object . . . by physically taking control of the [vehicle]. At that point, [the Repo Man's] right to pursue his self-help remedy terminated, and he was required to cease the repossession." Hensley v. Gassman, 693 F.3d 681, 692 (6th Cir. |

| | | |
|---|---|---|
| | | 2012). By "proceed[ing] with the attempted repossession over an objection communicated to him at, near, or incident to the seizure of the property," the Repo Man was the one breaching the peace." Dkt. 49 at 8-10 |
| 4 | Given her vehicle was in the process of being repossessed, the vehicle was no longer owned by Ms. Jones-MacDonald, meaning that she was trespassing in the vehicle. Willis Dep. at 00:51:02-00:53:02. | "The Repo Man was not ready to tow Plaintiff's vehicle when the Deputies arrived on the scene. Both videos show that the Repo Man necessarily disconnected Plaintiff's vehicle from the tow truck in order to reposition the tow truck so that Plaintiff's vehicle could be towed from the front. During this repositioning, Plaintiff got into her own vehicle to lawfully and peacefully resist the self-help repossession. **Plaintiff "asserted her right to object . . . by physically taking control of the [vehicle]. At that point, [the Repo Man's] right to pursue his self-help remedy terminated, and he was required to cease the repossession."** Hensley v. Gassman, 693 F.3d 681, 692 (6th Cir. 2012). By "proceed[ing] with the attempted |

| | | |
|---|---|---|
| | | **repossession over an objection communicated to him at, near, or incident to the seizure of the property,"** the Repo Man was the one breaching the peace." Dkt. 49 at 9-10 |
| 5 | If she didn't get out of her vehicle when asked, Defendants: 1) Should have put their hands on her (Willis Dep. at 00:58:00-00:58:15); 2) Had the legal right to punch her twice in the face (Willis Dep. at 01:00:09-01:00:50); and, 3) Were appropriate in their use of force when Defendant Ribbe slammed his knees on her legs, causing injury (Willis Dep. at 01:02:25-01:02:58). | "[I]t has long been the law that **a debtor may lawfully obstruct a self-help repossession by sitting in her vehicle to prevent it from being towed.** See Hensley, 693 F.3d at 689–90. Plaintiff—a female senior citizen resisting the unlawful efforts of two men trying to prevent her from lawfully protecting her property by physically obstructing the Repo Man's self-help repossession—could have reasonably believed that biting Delgado's hand was the degree of force 'immediately necessary to protect [herself] against [the Deputies'] use or attempted use of unlawful force.' TEX. PENAL CODE § 9.31(a). In this circumstance, Plaintiff's use of force is justified by Texas law." Dkt. 49 at 16<br><br>"**Plaintiff 'had a clearly** |

|  |  |  | established right to be free from excessive force' and 'a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances.' Id. at 169." Dkt. 49 at 15<br><br>"[E]ven if a jury determines that Plaintiff posed a safety risk by trying to drive her vehicle while it was lifted by the tow truck, **Plaintiff has still alleged force that was clearly excessive to that need. Once Plaintiff was removed from her vehicle, any purported safety risk was eliminated. Yet, the Deputies continued to physically restrain Plaintiff once she was out of her vehicle—as she protested that she was only trying to stand up—including forcing her to straighten her bent legs and turn over on her stomach as each placed a knee on her back or legs to hold her down.**" Dkt. 49 pg. 14-15.<br><br>"[W]e have found that a police officer uses **excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest.**" *Darden v. City of Fort Worth,* |

|  |  | *Tex.*, 880 F.3d 722, 732 (5th Cir. 2018). "Although Plaintiff resisted the Deputies, she was not under arrest when they first started to remove her from her vehicle, and she certainly was not attempting to flee by trying to remain in her vehicle (Dkt. 49 at 15)... [T]he Deputies should have known they did not have probable cause to arrest Plaintiff for resisting arrest or disorderly conduct (Dkt. 49 at 18)." Ms. Jones-MacDonald was punched and violently slammed despite not trying to flee or resist arrest. |