# Exhibit 2

HCSO Policy #301 "Corrective Actions and Disciplinary Procedures," as on August 13, 2021

*Department Policy*

| SUBJECT: | POLICY #: | NO. OF PAGES: |
|---|---|---|
| CORRECTIVE ACTIONS AND DISCIPLINARY PROCEDURES | 301 | 9 |
| NOTES: | SUPERSEDES: MARCH 28, 2016 | EFFECTIVE DATE: JUNE 15, 2021 |

## I. Purpose

This policy establishes the principles, policies, and procedures supervisors must follow to lead employees to their highest level of performance on behalf of the Harris County Sheriff's Office (HCSO). This policy includes procedures for handling employee training and development opportunities short of disciplinary action and procedures for those occasions when disciplinary action is necessary.

## II. Definitions

**Administrative Disciplinary Committee (ADC):** A committee consisting of the bureau commanders or designees appointed by the Sheriff to review administrative investigations and make recommendations.

**Blue Team:** A module in the IAPro software for recording notes on employee performance and behavior including corrective and disciplinary actions.

**Corrective Action:** Any action by a supervisor *short of disciplinary action* that may include, but is not limited to: a frank conversation, a referral for training or the employee assistance program, a documented counseling (verbal or written), or a written reprimand. Corrective actions may not be appealed or grieved through Civil Service.

**Disciplinary Action:** A personnel order imposing disciplinary sanctions in response to substantiated allegations of employee misconduct that results in loss of monetary benefits or direct compensation. See Harris County Civil Service Regulations, Rule 12.

**Finding:** The recommended disposition of an investigation presented to the ADC for review.

**Suspension:** A form of disciplinary action placing an employee on relief of duty without pay for a stated period of time. A one-day suspension is equal to eight hours of pay.

## III. Policy

Mistakes and good-faith errors in judgment should not be confused with willful acts or omissions that violate HCSO policy and rules. Unprofessional conduct resulting from a mistake or a good-faith error in judgment may be an opportunity for training and employee development rather than the basis for disciplinary action depending on the severity of the mistake or the degree of error in judgment. Each supervisor must determine the point at which repetitive mistakes

cease to be an opportunity for training and employee development and become a problem to be resolved through disciplinary action.

A. Establishment of Corrective Action and Disciplinary Procedures:

The following procedures have been established in order that:

1. Every HCSO employee may have confidence that, while proper performance of duty will be insisted upon, due recognition of rights will be assured.

2. Complaints, grievances, or alleged abuse of authority involving any employee will be fully and fairly considered.

3. Supervisors can take proper steps to enforce HCSO rules and regulations affecting the proper performance of employees under their command and by which they may effectively correct conduct, encourage improved performance in the future, and accomplish suitable training.

B. The Sheriff intends for all disciplinary actions to be administered in an equitable, consistent, and compassionate manner. Disciplinary action may not be initiated except for just cause.

C. Corrective and disciplinary actions have multiple objectives. The underlying purpose of corrective and disciplinary actions are to modify the employee's conduct or behavior so that it complies with the agency's policies and procedures and to ensure:

1. The HCSO work is handled professionally;

2. Unprofessional conduct will not be tolerated;

3. Employees who perform their assignments in a professional manner will not be adversely affected by the few who do not;

4. There exists a mechanism, through termination, to protect the operational integrity and high ideals of the HCSO from those few persons whose actions or omissions show that they should no longer be associated with the HCSO; and

5. The HCSO has an avenue for the exercise of accountability.

IV. Procedure – Corrective Actions

A. Whenever a supervisor observes or hears about an employee who has engaged in relatively minor behavior that is inconsistent with a HCSO policy or that is not in the best interest of the HCSO or the employee's career development, the supervisor should take action. What that specific action will

be is determined based on all of the facts and circumstances surrounding the situation.

1. Supervisors must refer any of the following allegations of misconduct to the Internal Affairs Division (IAD) for its consideration **before** taking any form of corrective or disciplinary action:

    a. *Any* use of force;

    b. Harassment based on race, color, sex, sexual orientation, national origin, age, religion, or disability (including claims of a hostile work environment based on any of those protected categories);

    c. Any violation of the Texas Penal Code; and

    d. Any other matter the supervisor believes may warrant consideration by Internal Affairs.

2. IAD will decide whether it will take on the investigation or refer it back to the bureau for handling.

B. Corrective actions can be as simple as a **conversation** with the employee to note the deficient performance or behavior and to remind the employee what the expected performance or behavior is. These conversations should include two-way communication between the supervisor and the employee to ensure the employee understands clearly, what the expectation is and giving the employee a chance to ask questions, if necessary. Supervisors may choose to record the conversation in the Blue Team application as a way to remember it.

C. If a supervisor has had more than one conversation with an employee on the same performance or behavior problem, the conversation will be documented in Blue Team as a **verbal counseling**. Verbal counseling is an excellent tool to remind an employee of the agency's expectations and to encourage future behavior that meets those expectations.

D. When an employee's behavior or performance has not improved in response to a lower level of corrective action, or when an employee's initial mistake is serious enough, the supervisor may initiate a **documented counseling**.

   1. Supervisors use the **documented counseling** form attached to this policy and record the event in Blue Team.

   2. Documented Counseling Process:

       a. Prepare the documented counseling letter prior to the documented counseling session with the employee. Use the correct gender and the

      appropriate wording from the options provided or other wording appropriate for the situation.

  b. Do not use the section listed as "optional ending" unless one or more counseling sessions have proved ineffective.

  c. Meet with the employee and be prepared to discuss in detail the problems you have identified and a plan of action for correcting the performance or behavior at issue.

    *i.* Explain that this is not discipline, but a way to make sure that there is no misunderstanding about what is expected of the employee. Also explain that this is another effort to enhance communication and eliminate potential problems.

    *ii.* Explain that if the employee feels that the suggestions are completely unacceptable, he or she can suggest alternate solutions to the problems. Record any changes agreed upon into the document. This is an effective way to get commitment on both parts if the original suggestions are not workable.

    *iii.* Schedule a follow-up meeting for a date and time that gives the employee reasonable opportunity to improve performance or the behavior at issue. Tell the employee that improvement or deterioration of the performance or behavior will be documented at the follow-up meeting and attached to the original counseling documentation.

    *iv.* Explain that the issue will be closed if the expected improvements or changes are made.

    *v.* Explain that while they may make marked improvements in some of the areas, any areas that are still identified as needing additional improvement will be documented further. Additional suggestions or agreements will be made for correcting any remaining problems, and a second follow-up meeting will be scheduled. All follow-up meetings will be documented and attached to the original documentation.

    *vi.* Signatures required:

        a) If all parties concur with the deficiencies identified and the plan of action for improvement, each should sign and date the documented counseling letter.

        b) If changes or additions were made to the original documented counseling letter, those should be initialed along with the letter being signed by the supervisor and the employee.

      c) If the employee agrees with the recommendations or outcome of the meeting but refuses to sign the letter, make that notation under the place for the employee's signature and tell the employee that you will still have the scheduled follow-up meeting on the date and time stipulated in the letter.

      d) Give the employee a copy of the original with the signatures obtained and place the original signed document in their divisional file. Record it in Blue Team.

      e) If, after all the above explanations, the employee does not agree there is a problem or indicates that they do not feel any need for change, it may be necessary to discontinue the documented counseling and move into the disciplinary process.

E. A **written reprimand** is documentation generated in response to a substantiated allegation of unprofessional conduct requiring a stronger response than other forms of corrective action, but a determination has been made not to impose disciplinary action. Such documentation may take the form of a description of the unprofessional conduct and the agency's response to it, if any. The format for a written reprimand may vary, but it is always signed by the supervisor. A copy is placed in the employee's division, bureau, and HCSO personnel file and is always recorded in Blue Team.

  1. Written reprimands shall be originated and prepared in triplicate by the employee's immediate supervisor and forwarded through the chain of command to the bureau commander. If the alleged censurable conduct is reported by another employee or a source outside the HCSO, the incident shall be referred to the employee's immediate supervisor who shall have the responsibility to investigate and prepare the written reprimand.

  2. The signed original written reprimand shall be forwarded to the Human Engagement and Resources Division (H.E.A.R.D) to be placed in the employee's permanent personnel file. One copy shall be given to the employee who is the subject of the report, and one copy shall be retained in the employee's bureau file.

  3. The grievance procedure established under *HCSO Department Policy #232 - Employee Grievance and Complaint Resolution*, does not apply to written reprimands. The employee may appeal through the bureau commander. The bureau commander decision on the matter is final.

V. Procedure – Disciplinary Actions

  A. Disciplinary action may be necessary in response to sustained employee misconduct after reasonable attempts to improve an employee's work performance or inappropriate behavior **when the application of** corrective

actions fails to achieve the desired results. Disciplinary action in response to a serious infraction of HCSO policy or procedure may be imposed without prior attempts at corrective actions.

1. Disciplinary actions include: suspensions, demotions, reductions in rank, terminations, and refusals to rehire at the end of the employee's contractual period.

2. In addition to a loss of monetary benefits or direct compensation, a disciplinary action may include other actions such as, but not limited to: job transfer, shift change, schedule change, or removal of take-home car privileges.

B. Preliminary Incident Reports:

1. Serious violations of any of the rules or regulations set out in the Civil Service regulations, the HCSO department manual, any bureau procedural manual or standard operating procedures, or in any applicable HCSO or bureau memorandum or any violation of a federal, state, county, or municipal statute, regulation, ordinance, or a court order, may be the basis for a **preliminary incident report**.

   A **preliminary incident report** may be initiated by any ranking supervisor who deems it necessary in order to address any violation of HCSO policy.

2. Additionally, any of the allegations described in Section IV (A)(1) herein (list of allegations that must be referred to IAD) will be the basis for a preliminary incident report.
3. Procedures to follow in completing a preliminary incident report will be as follows:

   a. Preliminary incident reports arising from alleged censurable conduct shall be originated and prepared in triplicate immediately by the employee's supervisor who bears witness to the alleged violation or who is advised of the alleged violation by another employee or a source outside the HCSO. The report shall be entered in Blue Team and forwarded to the bureau commander or ranking supervisor in his or her absence.

   b. The division commander (or ranking supervisor in his or her absence) shall confer with the bureau commander promptly to determine whether immediate action is needed regarding the employee. The bureau commander (or ranking supervisor in his or her absence) may relieve an employee from duty promptly for any act or omission that would justify the preparation of a preliminary incident report.

   c. A written order relieving the employee from duty shall be issued to the employee with a signed copy to the Sheriff or his or her designee. An

       employee relieved from duty shall surrender his or her badge and identification card to the relieving supervisor, who shall forward it immediately to the division commander.

    d. With the exception in Section V (B)(2) (allegations that must be referred to IAD), the bureau commander shall determine whether the incidents described in the preliminary incident report should require disciplinary action. If so, the incident will be forwarded to the Office of Inspector General (OIG) bureau commander. The OIG bureau commander will determine if the incident will be investigated by the bureau or the Internal Affairs Division.

    e. If the bureau conducts the investigation into the preliminary incident, the supervisor conducting the investigation will present the completed investigation to the Administrative Disciplinary Committee (ADC) for disciplinary action. The final disciplinary decision will rest with the Sheriff or his or her designee.

C. The Administrative Disciplinary Committee reviews all completed investigations not resolved at the bureau level.
  1. The ADC shall be composed of a quorum of at least four bureau commanders appointed by the Sheriff. A division commander may represent a bureau commander at the ADC chairperson's discretion.

  2. In most instances, the investigator will present the case for review. The OIG shall authorize any alternative investigative representative. Bureau commanders may attend the "investigator presentation" portion of the ADC.

  3. All investigation violations will be identified separately with individual findings using the following dispositions:

     a. **Unfounded:** The allegation is false or not factual.

     b. **Exonerated:** The incident occurred but was lawful and proper.

     c. **Not Sustained:** There is insufficient evidence to prove or disprove the allegation.

     d. **Sustained:** The evidence is sufficient to prove the allegation.

     e. **Withdrawn:** The complainant withdraws the complaint before the investigation is complete.

     f. **Referred:** The investigation of the complaint is forwarded to an external entity or law enforcement agency.

     g. **Reviewed:**

       *i.* No action required

       *ii.* Policy violation

   h. **Administratively Closed:** When an OIG commander determines the investigation may be closed for administrative reasons.

4. If a violation is sustained, the ADC will recommend appropriate disciplinary action. The ADC may recommend other appropriate measures such as, but not limited to: employee corrective actions, Employee Assistance Program (EAP) referrals, fitness for duty evaluations, and additional training. Such referrals or corrective actions shall be referred to the bureau level with the authority to administer it.

5. An employee has the right to appeal a disciplinary action. Refer to the *Sheriff's Civil Service Regulations, Rule 12.04*.

## VI. Additional Considerations

A. Supervisors shall avoid censuring an employee in the presence of others as far as circumstances permit.

B. Employees will not be subject to disciplinary action except for just cause.

  1. The cause for disciplinary action shall be in writing and shall particularly state the reason or reasons for which the Sheriff has determined that disciplinary action is necessary.

  2. Every employee receiving disciplinary action shall have presented to him or her a copy of just cause which shall include the effective date of the disciplinary action.

  3. Every employee receiving disciplinary action that results in termination of employment shall receive notice of the cessation of benefits, be referred to the Harris County personnel regulations, and contact the Harris County Office of Human Resources and Risk Management to determine the status of fringe or retirement benefits.

C. At the completion of the disciplinary action process, whether completed at the bureau level or by the ADC, a copy of all reports and investigations shall become a part of the employee's personnel file.

**NOTE:** The HCSO retention policy for corrective action shall comply with state law.

D. The employee being disciplined is entitled to representation at any meeting between the employee and supervisors, but only after a determination has

    been made to impose disciplinary action. This policy does not interfere with the employee's right to legal counsel.

   E. Lateral and upward movement within the HCSO may be affected by disciplinary histories.

**Revision**

This policy has been revised on the below listed dates:

| | |
|---|---|
| April 21, 2009 | June 15, 2021 |
| April 23, 2013 | |
| April 21, 2014 | |
| October 16, 2015 | |
| October 28, 2015 | |
| March 28, 2016 | |

HC-Subp_0082