Case 4:23-cv-02871   Document 124   Filed on 12/09/25 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
December 09, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEBORAH JONES-MACDONALD, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-02871 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Plaintiff Deborah Jones-MacDonald brings this civil rights action against Defendants, Harris County Sheriff's Office ("HCSO") Deputies Ronaldo Delgado and Charles Ribbe (collectively, "the Deputies"), alleging that she suffered personal injuries as a result of an August 13, 2021 encounter with the Deputies. There are five motions pending that are ripe for ruling. The first two motions are dueling motions for summary judgment. *See* Dkts. 91, 99. In the third motion, Plaintiff seeks leave to file an amended complaint or, alternatively, for reconsideration of my prior dismissal of Harris County ("the County") from this lawsuit. *See* Dkt. 100. In the fourth motion, Plaintiff seeks leave to file an amended complaint to add a new defendant: retired HCSO Sergeant Stephen Willis. *See* Dkt. 101. The fifth motion is Plaintiff's Motion to Exclude Defendants' Expert Michael Dirden. *See* Dkt. 119.

Having considered the briefing, the record, and the applicable law, I deny both motions for summary judgment as to Plaintiff's unreasonable seizure and excessive force claims, finding that a factual dispute exists that only a jury can resolve. I also deny both motions for leave to amend. I grant the Deputies' motion for summary judgment as to Plaintiff's wrongful arrest claim, finding that the Deputies are entitled to qualified immunity on this claim. Finally, I grant Plaintiff's motion to exclude the testimony of Defendants' expert, Michael Dirden.

## PROCEDURAL BACKGROUND

This case stems from the repossession of Plaintiff's vehicle on the morning of August 13, 2021. Plaintiff's First Amended Complaint is the operative pleading. *See* Dkt. 21. In the First Amended Complaint, Plaintiff asserts § 1983 claims against the Deputies and the County for alleged violations of her constitutional rights to be free from unreasonable seizure, excessive force, and wrongful arrest. I have already discussed the factual background of this case extensively in ruling on earlier motions to dismiss. *See* Dkt. 49 at 1–4.

In January 2024, Defendants moved to dismiss. *See* Dkts. 22, 24. On September 30, 2024, I granted the County's motion to dismiss and denied the Deputies' motion to dismiss. *See Jones-MacDonald v. Harris County*, No. 4:23-cv-02871, 2024 WL 4354704, at *1 (S.D. Tex. Sept. 30, 2024). As to the County, I held that Plaintiff failed "to allege a pattern of constitutional violations that would establish the County's municipal liability." *Id.* at *11. Accordingly, I dismissed Plaintiff's claims against the County. The Deputies' motion to dismiss included an assertion of qualified immunity. As to the Deputies' motion, I held that Plaintiff's allegations and the Deputies' bodycam videos made it plausible that the Deputies violated Plaintiff's clearly established constitutional rights to be free from unreasonable seizure, excessive force, and wrongful arrest. In ruling on the Deputies' motion to dismiss, I observed that only a jury could resolve the disputed fact of whether Plaintiff was attempting to drive her vehicle off the tow truck and thus posed a safety risk. *See id.* at *7. The jury's resolution of this disputed fact would determine whether "the Deputies' actions fall within the 'community caretaking' exception to the requirement that officers have reasonable suspicion or a warrant before seizing a person." *Id.* This disputed question of fact affects Plaintiff's excessive force claim, too. *See id.* at *8.

On October 7, 2024, I ordered the parties to submit a proposed Docket Control Order. On October 11, 2024, Plaintiff's counsel filed an "Agreed

2

PROPOSED ORDER" that listed the deadlines to amend pleadings and to add new parties as "N/A." Dkt. 51 at 1.

Plaintiff and the Deputies conducted discovery, which concluded on May 7, 2025. Both Plaintiff and the Deputies now move for summary judgment, with the Deputies reasserting qualified immunity. *See* Dkts. 91, 99. Additionally, Plaintiff seeks leave to amend her complaint to revive her claims against the County—or, alternatively, for me to reconsider my earlier dismissal of Plaintiff's claims against the County—and to add Sergeant Willis as a new defendant. Finally, Plaintiff seeks to exclude the testimony of the Deputies' expert, Michael Dirden. I will address each of these motions in turn, beginning with the dueling motions for summary judgment.

## SUMMARY JUDGMENT

A. **LEGAL STANDARD**

### *1. Summary Judgment*

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024) (quotation omitted).

"The movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant makes such a showing, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quotation omitted). The nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (quotation omitted). "In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

3

I "may not . . . evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *In re Green*, 968 F.3d 516, 520 (5th Cir. 2020) (quotation omitted). Rather, I "view all facts, and the inferences to be drawn from them, in the light most favorable to the nonmovant." *Brandon*, 808 F.3d at 269 (quotation omitted). I "assign greater weight, even at the summary judgment stage, to the video recording taken at the scene." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (cleaned up). I "need not rely on [a party]'s description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### 2. Qualified Immunity

Government officials sued in their individual capacity under § 1983 are entitled to assert the defense of qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). It is a judicially created doctrine designed to avoid "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). The doctrine arises from "the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Id.* (cleaned up). "Qualified immunity shields a government official from liability based on his performance of discretionary functions." *Mote v. Walthall*, 902 F.3d

4

500, 505 (5th Cir. 2018) (quotation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quotations omitted). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *Id.* at 654 (quotation omitted). "There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The first prong of the qualified immunity inquiry asks whether the facts "show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a plaintiff's evidence, viewed favorably, does not establish a constitutional violation, no further inquiry is necessary. *See id.*

The second prong of the qualified immunity inquiry "asks whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation omitted). Governmental actors are "shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). "[T]he salient question . . . is whether the state of the law" at the time of the incident provided the defendants "fair warning that their alleged [conduct] was unconstitutional." *Id.* at 741. A plaintiff bears a heavy burden on this prong because a right is clearly

5

established only if relevant precedent "ha[s] placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Fifth Circuit "precedent makes clear that [a district court must] examine each individual's entitlement to qualified immunity separately." *Ramirez v. Guadarrama*, 3 F.4th 129, 137 n.4 (5th Cir. 2021) (quotation omitted).

**B.   ANALYSIS**

Both sides move for summary judgment on all claims. I will address each of Plaintiff's claims in turn.

### 1.   *Unreasonable Seizure*

Plaintiff advances two distinct unreasonable seizure claims: the unreasonable seizure of her vehicle and the unreasonable seizure of her person. These claims are inextricably intertwined, however, because the Deputies' seizure of Plaintiff's person is what made the seizure of her vehicle possible.

In ruling on the motion to dismiss, I rejected the Deputies' argument that their seizure of Plaintiff was reasonable due to her failure to follow a deputy's instruction, because Ribbe's video clearly shows that he gave Plaintiff no instructions before removing her from her vehicle. To the extent the Deputies argued for the "community caretaking" exception to the reasonable suspicion requirement, I found that a disputed fact exists that only a jury can resolve: whether Plaintiff was attempting to drive her vehicle off the tow truck when the Deputies seized her. *See Jones-MacDonald*, 2024 WL 4354704, at *7–8.

Because "Plaintiff references both Deputies' bodycam videos throughout her pleading, even attaching images from both bodycams . . . , I consider[ed] the bodycam videos in ruling on the motions to dismiss." *Id.* at *3. The facts depicted in the video have not changed between the motion to dismiss and now. Neither party has introduced anything new into the record to resolve that disputed fact. Accordingly, it should not come as a surprise to Plaintiff that summary judgment on her unreasonable seizure claim is no more appropriate now than dismissal of her claim was then.

Although neither party has introduced any facts changing my analysis, the Deputies have introduced a new argument: Plaintiff's unreasonable seizure claim fails because there was no state action. The Deputies argue that "Plaintiff must show that the Deputies provided the tow truck driver with intervention or aid that goes beyond the peacekeeping actions of the police officers in *Menchaca*." Dkt. 91 at 18; *see also Menchaca v. Chrystler Grp.*, 613 F.2d 507, 511–13 (5th Cir. 1980). *Menchaca* is easily distinguishable from this case.

In *Menchaca*, "two men arrived in a pickup truck equipped with a winch and proceeded to ready the Menchacas' car for towing" off a public street in Laredo, Texas. 613 F.2d at 510. "Mr. Menchaca rushed out to try and prevent the repossession," using "some rather loud and abusive language . . . , which eventually resulted in the defendant police officers being summoned to check out the disturbance." *Id*. The officers informed the Menchacas "that repossession was a civil matter and that the only reason the police were there was to quiet a reported disturbance. Mr. Menchaca was informed that he could be arrested if he continued to use loud and abusive language and create a breach of the peace." *Id*. The officers left after everyone calmed down. No one was arrested. Only after the officers left— and after the repo men allowed Mr. Menchaca to remove some belongings from the car—was the repossession finally completed. Afterwards, the Menchacas sued their creditor, the creditor's agent, the city of Laredo, and the police officers under § 1983. After hearing testimony and taking evidence, the trial court dismissed the case for lack of subject matter jurisdiction because the Menchacas failed to show "that the defendant police officers had acted in concert with defendant Chrysler's agents." *Id*. at 512. Hence, there was no state action—a requirement for any § 1983 action. The Fifth Circuit affirmed the trial court's dismissal of the case.

*Menchaca* bears little resemblance to this case. In this case, the vehicle in question was parked in a private apartment complex, not on a public street. The Deputies here responded to a call *from the repo man* seeking assistance from law enforcement. *See* Dkt. 91-1 at 5 (showing that the Deputies "responded to a

7

disturbance call" from a "Reportee" who "is doing a repo . . . and the owner of the vehicle is on top of his tow- truck"). Unlike *Menchaca*, the Deputies here did much more than merely *threaten* an arrest to prevent a disturbance—they forcefully arrested both Plaintiff and her ex-husband. I will assume, for the sake of argument, that the Deputies were simply exercising their peacekeeping duties when they removed Plaintiff's ex-husband from the tow truck and arrested him. The same cannot be said, however, for Plaintiff, who was arrested while sitting in her own vehicle in a private parking lot.

Construing the evidence in Plaintiff's favor, as I must, the video suggests that Plaintiff entered her own vehicle in a private parking lot while it was disconnected from the tow truck—an entirely lawful action.[1] *Jones-MacDonald*, 2024 WL 4354704, at *2 & n.2. Both Deputies admit that they observed Plaintiff enter her vehicle.[2] *See* Dkt. 91-1 at 5, 8. The Deputies then physically removed Plaintiff from her vehicle, making completion of the repossession possible. That chain of events is intervention and aid constituting state action. *See Richard v. City of Harahan*, 6 F. Supp. 2d 565, 572 (E.D. La. 1998) (finding state action where an officer "acted in a more significant way than merely 'standing-by'" because the officer "abruptly reached in and pulled [the plaintiff] out of his house" without warning or discussion).

The Deputies' newfound "state action" argument is the only difference in this case from the motion to dismiss stage until now. Having found that the Deputies' actions constitute state action, I deny both motions for summary judgment on

---

[1] Whether Plaintiff's vehicle was connected to the tow truck when Plaintiff entered it and whether Plaintiff attempted to drive her vehicle while it was connected to the tow truck are fact issues for a jury to decide.

[2] Both Deputies also claim that Ribbe "repeatedly told [Plaintiff] to get out of the vehicle." Dkt. 91-1 at 5; *see also id*. at 8 ("I approached [Plaintiff] while giving verbal commands to exit the vehicle."). In the video, however, Ribbe said nothing to Plaintiff as he approached her sitting in her vehicle, and Ribbe's first words to Plaintiff were not an instruction but simply a statement: "Now it's your turn." *Jones-MacDonald*, 2024 WL 4354704, at *2. The fact that the Deputies' statements are so at odds with the video calls into question nearly every fact about their encounter with Plaintiff.

Plaintiff's unreasonable seizure claims. Summary judgment is denied now for the same reason that I denied the Deputies' motion to dismiss: only a jury can determine the disputed fact that would answer whether "the Deputies' actions fall within the 'community caretaking' exception to the requirement that officers have reasonable suspicion or a warrant before seizing a person." *Jones-MacDonald*, 2024 WL 4354704, at *7.

### 2. *Excessive Force*

Plaintiff claims that the Deputies used excessive force in physically removing her from her vehicle. The Deputies argue that they "are entitled to qualified immunity on this conduct because it certainly can't be said on these facts that 'every reasonable offic[ial] would have understood' that the pertinent actions were unlawful." Dkt. 91 at 22 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In making this argument, the Deputies curiously neglect to address the analogous and precedential case of *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), which I cited in denying the Deputies' motion to dismiss, *see Jones-MacDonald*, 2024 WL 4354704, at *8, and which Plaintiff cited in her response to the Deputies' motion for summary judgment.

In *Deville*, the Fifth Circuit denied qualified immunity to officers who removed a grandmother from her vehicle after she passively resisted an unlawful arrest. Here, as in *Deville*, "[a] reasonable jury could infer from [the video] that [Ribbe] engaged in very little, if any, negotiation with [Plaintiff]—and find that he instead quickly resorted to [grabbing her wrist] and dragging her out of the vehicle." *Deville*, 567 F.3d at 168. The Deputies are no more entitled to qualified immunity now than they were at the motion to dismiss stage.[3]

---

[3] I am cognizant of the need to conduct an individualized inquiry as to each Deputy's assertion of qualified immunity. *See Ramirez*, 3 F.4th at 137 n.4. If Delgado had used force on Plaintiff only after seeing her engaged in a struggle with Ribbe, then I might find Delgado entitled to qualified immunity. According to Delgado's own report, however, he observed the entirety of Ribbe's interaction with Plaintiff, including her passive resistance. *See* Dkt. 91-1 at 5 (stating that he heard Ribbe tell Plaintiff to exit her vehicle,

9

As for whether summary judgment is proper, there remains a genuine dispute of material fact affecting Plaintiff's claims. Specifically, the Deputies' seizure, use of force, and arrest of Plaintiff begin to look reasonable *if* Plaintiff was attempting to drive her vehicle off the tow truck. And if Plaintiff attempted to drive her vehicle off the tow truck, then the Deputies' actions *may* fall within the "community caretaking" exception to the requirement that officers have reasonable suspicion before seizing a person. *See Jones-MacDonald*, 2024 WL 4354704, at *7. Because only a jury can determine this fact, both motions for summary judgment must be denied.

### 3. *Wrongful Arrest*

Plaintiff contends that the Deputies' arrest of her was unlawful. As I noted in ruling on the motions to dismiss, "facts supporting probable cause for *any* crime—not just the crime for which Plaintiff was arrested—would entitle the Deputies to qualified immunity." *Jones-MacDonald*, 2024 WL 4354704, at *10. The Deputies argue, among other things, that "a reasonable officer could have believed that the Plaintiff resisted arrest" when she bit Delgado. Dkt. 91 at 23. In ruling on the Deputies' motion to dismiss, I held that the Deputies were not entitled to qualified immunity on Plaintiff's wrongful arrest claim because "Plaintiff's use of force was justified" and therefore, "the Deputies should have known they did not have probable cause to arrest Plaintiff for resisting arrest." *Jones-MacDonald*, 2024 WL 4354704, at *10. Upon further consideration, however, I find that ruling was in error.

In Texas, "[a] person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor . . . by using force against the peace officer." Tex. Pen. Code Ann. § 38.03(a). Crucially, as the Deputies highlight in their motion for summary judgment, "[i]t is no defense to prosecution under this section that the

---

in contradiction to the video, and acknowledging that Plaintiff passively resisted by holding on to her steering wheel). Thus, Delgado is not entitled to qualified immunity.

arrest or search was unlawful." *Id.* § 38.03(b). Thus, under Texas law, even if I assume *arguendo* that the Deputies used excessive force in causing the unreasonable seizure of Plaintiff and her vehicle, those unreasonable seizures and excessive force still would not affect the analysis of whether the Deputies had probable cause to arrest Plaintiff for resisting arrest. Considering § 38.03(b), and in the absence of any analogous case law clearly establishing that Plaintiff's arrest was wrongful, I am compelled to hold that the Deputies are entitled to qualified immunity on the wrongful arrest claim.

If Plaintiff can establish unreasonable seizure and excessive force at trial, then her arrest was almost certainly wrongful in the literal sense. But even if the Deputies violated Plaintiff's constitutional right to be free from wrongful arrest, they are still entitled to qualified immunity unless existing precedent places that "constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Existing precedent places statutory or constitutional questions beyond debate "*only* when [the district court] can 'identify a case where an [official] acting under similar circumstances was held to have violated'" a constitutional right. *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017) (emphasis added) (cleaned up) (citing *Pauly*, 580 U.S. at 552). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass*, 814 F.3d at 732–33). Plaintiff has offered no such case law. Accordingly, the Deputies are entitled to qualified immunity on Plaintiff's wrongful arrest claim.

* * *

Having established that this case will proceed to a jury trial on Plaintiff's unreasonable seizure and excessive force claims, I turn to Plaintiff's remaining motions for leave to amend and her motion to exclude the Deputies' expert.

## MOTION FOR LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint or, alternatively, for reconsideration of my prior dismissal of the County. *See* Dkt. 100. Plaintiff also

seeks leave to file an amended complaint to add a new defendant: retired HCSO Sergeant Stephen Willis. *See* Dkt. 101. Because it would be futile to add the County back into this lawsuit or to name Willis as a defendant, both motions are denied.

**A.    THE COUNTY**

Plaintiff argues that she has "uncovered previously unavailable evidence—including testimony and internal communications—indicating that Harris County's policies, procedures, customs, practices, or protocols expressly permitted the conduct that proximately caused the violation of Plaintiff's constitutional rights." Dkt. 100 at 1.

As I noted in granting the County's earlier motion to dismiss, "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Jones-MacDonald*, 2024 WL 4354704, at *10 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Official policy exists in two forms: "a policy statement formally announced by an official policymaker" or "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Jones-MacDonald*, 2024 WL 4354704, at *10 (quotations omitted). Plaintiff's theory of her case rests on the latter of these forms of official policy—practice or custom.

"Proof of a custom or policy can be shown by a pattern of unconstitutional conduct on the part of municipal actors or employees, or where a final policymaker took a single unconstitutional action." *Id.* at 11 (quotation omitted). "It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990). Plaintiff does not allege a single unconstitutional action by Harris County Sheriff Ed Gonzalez. Rather, Plaintiff has staked her case on a establishing a pattern or practice of unconstitutional conduct.

In granting the County's earlier motion to dismiss, I held that Plaintiff had not alleged a pattern of unconstitutional conduct. All Plaintiff offered was "an

amalgamation of bad and unwise acts totally divorced from the constitutional violations that she alleges the Deputies committed against her." *Jones-MacDonald*, 2024 WL 4354704, at *11. In moving for leave to amend (or for reconsideration), Plaintiff has mostly abandoned these unrelated allegations.[4] Rather, Plaintiff primarily focuses on newly discovered evidence concerning the August 13, 2021 incident. For example, Plaintiff argues that "Harris County [Internal Affairs Department] should have found at least 26 policy violations" when it evaluated the August 13, 2021 incident. Dkt. 100 at 10. That may very well be true, but as I explained before, "proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Jones-MacDonald*, 2024 WL 4354704, at *11 (quotation omitted).

The one "new" unwritten policy that Plaintiff identifies that is not entirely about the August 13, 2021 incident, is her contention that the County has a policy of providing no supervision or correction for officer misconduct. *See* Dkt. 100 at 23. Specifically, Plaintiff claims that the County's unwritten policy of (non)supervision "consists merely of silent, self-reflection" without any review, much less meaningful review. *Id.* In other words, Plaintiff claims that the County's unwritten policy is to let the foxes guard the henhouse. I will assume, without deciding, that Plaintiff can identify a sufficient pattern or practice to establish a policy that rises to the level of custom. I will also assume, without deciding, that this custom was a moving force behind the alleged violations of Plaintiff's constitutional rights. Even so, Plaintiff must "identify a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy that caused [her] injuries." *Piotrowski*, 237 F.3d at 578–79.

---

[4] Plaintiff could not help but "remind this Court of County-wide patterns previously pled that support *Monell* liability." Dkt. 100 at 18. As I told Plaintiff already, allegations about death rates in Harris County jails and general use of force statistics are too attenuated to constitute a custom or policy that was the moving force behind the alleged violation of Plaintiff's constitutional rights.

13

Plaintiff has not identified a policymaker in her motion for leave to amend,[5] much less shown how that policymaker had notice of an unwritten policy of letting officers supervise themselves.

Plaintiff uses the word "policymaker" only twice in her motion for leave, both times in conclusory fashion. First, Plaintiff says that "[t]he policymaker has long been aware of these deficiencies yet has taken no corrective action." Dkt. 100 at 5 (citing Dkt. 21 at 44). In making this conclusory statement, Plaintiff cites to her amended complaint, where she states that "the policymaker, Sheriff Ed Gonzalez has extensively claimed the HCSO's lack of funding has caused understaffing issues preventing his ability to change the culture of violence." Dkt. 21 at 44. Yet, Plaintiff offers no facts that would establish Sheriff Gonzalez's actual or constructive knowledge of an unwritten policy of providing no supervision or correction for officer misconduct.

Plaintiff's only other mention of a "policymaker" is to state—again, in conclusory fashion—that the County has "a policymaker condoned policy, practice, custom, procedure, and protocol that falls grossly below constitutional muster that led to [Plaintiff]'s injuries." Dkt. 100 at 10. This allegation does not give rise to a claim. Because Plaintiff has not identified a policymaker who can be held responsible for enforcing a policy of (non)supervision, allowing her to amend her complaint to add the County back as a defendant—or reconsidering my dismissal of the County—would be futile. For this reason, Plaintiff's motion for leave to amend, or for reconsideration, is denied.

**B.   WILLIS**

Plaintiff seeks leave to add Willis as a defendant in this lawsuit, claiming that "additional facts and testimony, previously unknown to Plaintiff and revealed to her through Sgt. Willis' Deposition, indicat[e] supervisory failures by Sgt. Willis that caused [Plaintiff]'s injuries." Dkt. 101 at 1. The Deputies argue that I should

---

[5] Ideally, I would cite Plaintiff's proposed amended complaint, but Plaintiff did not provide a proposed amended complaint in connection with her motion for leave to amend.

deny Plaintiff's motion as futile because "Plaintiff's claims against Willis are barred by the statute of limitations." Dkt. 103 at 6. I agree with the Deputies.

The statute of limitations on Plaintiff's § 1983 claims expired two years after the incident in question, on August 13, 2023. *See Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (holding that Texas's two-year statute of limitations for personal injury claims governs § 1983 actions). Plaintiff seeks to add Willis more than two years *after* the limitations period expired. Unless an exception to the limitations period (estoppel, equitable tolling, or the relation back doctrine) applies, an amendment adding Willis as a defendant would be futile. *See Crostley v. Lamar County*, 717 F.3d 410, 422 (5th Cir. 2013). None of these exceptions are available to Plaintiff.

The relation back doctrine allows a claim against a newly added defendant to "relate back" to the date the complaint was originally filed. The doctrine applies only if two conditions are met: (1) the new party must have "received such notice of the action that it will not be prejudiced in defending on the merits," *and* (2) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Plaintiff makes "make no claim that there was ever any confusion as to [Willis]'s identity; indeed, [Plaintiff] clearly knew [Willis]'s identity as early as the [amended] pleadings, as he is included in that complaint's factual allegations." *Crostley*, 717 F.3d at 421; *see also* Dkt. 21 at 18–19, 25 (referencing Willis's role as Delgado and Ribbe's supervisor). Accordingly, the relation back doctrine could not save Plaintiff's claims against Willis from the statute of limitations.

"Similarly, estoppel only applies if the party in question misrepresents his identity to the plaintiff, which [Willis] did not do." *Crostley*, 717 F.3d at 421.

Finally, equitable tolling is not justified in this case. Equitable tolling requires a showing "(1) that [Plaintiff] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Plaintiff's "having

15

been unaware of certain information before [Willis]'s deposition d[oes] not amount to an extraordinary circumstance as the doctrine requires." *Crostley*, 717 F.3d at 421 (holding that the district court did not abuse its discretion when it denied plaintiffs' leave to amend their § 1983 complaint to add a defendant to the litigation based on futility because the statute of limitations had expired). Thus, Plaintiff's motion for leave to amend to add Willis as a defendant is denied.[6]

## MOTION TO EXCLUDE

Plaintiff seeks to exclude the report of the Deputies' expert, Michael Dirden, as "methodologically unsound, legally improper, and factually unreliable." Dkt. 119 at 3. I need not address the soundness or reliability of Dirden's opinion because most of his opinions are plainly inadmissible as opinions that are either unhelpful or invade the province of the jury and the court.

### A. LEGAL STANDARD

For expert testimony to be admissible, its proponent must demonstrate to the court by a preponderance that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[6] Plaintiff argues in her reply brief that "[t]he statute of limitations is a defense for Willis, and is not properly asserted by Ribbe or Delgado in opposition to amendment." Dkt. 105 at 3. In support of this argument, Plaintiff cites a single, out-of-district opinion that never so much as discusses the statute of limitations. *See id.* (citing *Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369 (W.D. Tex. 2013)). *Crostley*—a precedential opinion that is perfectly analogous to Plaintiff's request to add Willis—demonstrates that Plaintiff's argument is wholly lacking in merit. *See Crostley*, 717 F.3d at 421 (holding that the district court did not abuse its discretion when it denied plaintiffs' leave to amend their § 1983 complaint to add a defendant to the litigation based on futility because the statute of limitations had expired).

Fed. R. Evid. 702. Trial courts act as the "gatekeeper" in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The decision to admit or exclude expert testimony is committed to the trial court's discretion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

**B.  ANALYSIS**

Experts cannot "render conclusions of law" or provide opinions on legal issues. *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). "Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003). "It is therefore error to allow expert testimony on whether an officer used unreasonable force." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). Many of Dirden's opinions impermissibly embrace the ultimate issue of reasonableness.

For example, Dirden opines that "Delgado's action could be determined to be reasonable." Dkt. 91-9 at 12. "Whether [Delgado] was 'acting reasonably' [i]s, for all practical purposes, the only issue for the jury in this case to decide." *Est. of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999). So, Dirden's opinion on this point is inadmissible. Similarly, Dirden's opinion that "[a]nother reasonable and prudent officer could have acted in the same manner under the same or similar circumstances" is just another way of saying that Dirden believes the Deputies' actions were reasonable. Dkt. 91-9 at 10. That is, however, another question for the jury to answer. Dirden's other inadmissible opinions include:

- "Further, even if the Defendants mistakenly relied on their understanding of the law regarding []self-help repossession, the misunderstanding could be considered reasonable." *Id.* at 10.
- "Similarly, for purpose of repossession, it would not be unreasonable for a peace officer to believe that the repossession process was completed once the vehicle was hooked." *Id.* at 13.
- "[T]he Defendants used minimal force." *Id.*
- "The Defendants' use of force was prudent." *Id.* at 14 (cleaned up).

17

All the above opinions are inadmissible because they invade the jury's province. But that is not all. Dirden's other opinions are inadmissible because they invade *the Court's* province.

There can be "only one spokesman of the law, who of course is the judge." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quotation omitted). "There is a certain mystique about the word 'expert' and once the jury hears of the [expert]'s experience and expertise, it might think the witness even more reliable than the judge." *Id.* Here, Dirden opines "[t]he fact that the use of force result in injury, as alleged in this lawsuit, does not mean that the force was unreasonable or excessive. Nor does the age or race of the subject play a role in determining the reasonableness of the force." Dkt. 91-9 at 15. Dirden continues: "Even if it is subsequently determined that the Defendants' reason for attempting to detain the Plaintiff was in error, it still does not give the Plaintiff the right to resist the detention by assaulting Deputy Delgado." *Id.* at 15–16. Finally, Dirden "opines" that "the fact that an officer could have made a different decision does not mean the decision/activity he did make amounts to a violation of the injured person's rights or the expected standards in the profession." *Id.* at 16–17. These are not merely Dirden's opinions. These are instructions on the law. Such instructions may come only from the trial court. Dirden will not be allowed to instruct the jury on the law through his "expert opinion."

Finally, some of Dirden's opinions are unhelpful and speculative. For example, Dirden opines that "Plaintiff was not willing to comply with the Defendants[] and in fact, escalated the situation." Dkt. 91-9 at 16. This is not a subject that requires expert testimony. It is for the jury—and *only* the jury—to assess the Plaintiff's and the Deputies' actions and, to the extent it is necessary, determine any of the parties' intentions. Experts "may not speculate about a party's intent." *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492, 2017 WL 4173468, at *5 (E.D. Tex. Sept. 21, 2017).

For all these reasons, Plaintiff's motion to exclude is granted.

## CONCLUSION

For the reasons discussed above, I grant the Deputies' motion for summary judgment as to Plaintiff's wrongful arrest claim but deny the motion as to Plaintiff's unreasonable seizure and excessive force claims. *See* Dkt. 91. I deny Plaintiff's motion for summary judgment and both of Plaintiff's motions for leave to amend. *See* Dkts. 99–101. I grant Plaintiff's motion to exclude. *See* Dkt. 119.

I will set a trial date by separate order.

SIGNED this 9th day of December 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE